UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP,
INC. SECURITIES LITIGATION

**PLAINTIFFS' MOTION TO REMOVE CONFIDENTIAL DESIGNATIONS FROM
RECORDS AND INCORPORATED MEMORANDUM OF LAW**

LABATON SUCHAROW LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives
and the Class and Lead Counsel for Lead
Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Benjamin J. Hinerfeld, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
Michelle M. Newcomer, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives
and the Class*

Ronald Shindler, Esq.
Fla. Bar No. 781703
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and
the Class and for Lead Plaintiff State-Boston
Retirement System*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 3

III. ARGUMENT ................................................................................................................... 6

    A. Defendants' Indiscriminate Confidentiality Designations Violate the Protective Order ................................................................................................................... 6

    B. The Burden Rests on Defendants to Ensure that the Materials Designated as Confidential are Protected Under the Protective Order, Not on Plaintiffs ............. 8

    C. Plaintiffs Are Burdened by Defendants' Abuse of Confidential Designations ...... 9

IV. CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(A)(3) ........................... 11

V. CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Advantage Eng'g, Inc.,*
  960 F.2d 1013 (11th Cir. 1992) ..................................................................................2

*Greater Miami Baseball Club Ltd. P'ship v. Selig,*
  955 F. Supp. 37 (S.D.N.Y. 1997) ...........................................................................8, 11

*In re Air Crash at Lexington, Ky., August 27, 2006,*
  No. 5:06-CV-316-KSF, 2009 WL 1683629 (E.D. Ky. June 16, 2009) ......................3

*In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.,*
  184 F. Supp. 2d 1353 (N.D. Ga. 2002)......................................................................10

*In re ULLICO Inc.,*
  237 F.R.D. 314 (D.D.C. 2006)..........................................................................6, 7, 12

*In re Vitamins Antitrust Litig.,*
  No. Misc. 99-197 (TFH), 2001 WL 34088808 (D.D.C. Mar. 19, 2001) ....................7

*Mitchell v. Ford Motor Credit Co.,*
  No. 96-cv-447-J-32HTS, 2009 WL 4350037 (M.D. Fla. Nov. 24, 2009) ..................9

*Procter & Gamble Co. v. Nabisco Brands, Inc.,*
  111 F.R.D. 326 (D. Del. 1986) ..................................................................................9

*Quotron Sys., Inc. v. Automatic Data Processing, Inc.,*
  141 F.R.D. 37 (S.D.N.Y. 1992) .................................................................................8

*Romero v. Drummond Co., Inc.,*
  480 F.3d 1234 (11th Cir. 2007) .................................................................................2

*Rossbach v. Rundle,*
  128 F. Supp. 2d 1348 (S.D. Fla. 2000) ......................................................................6

*Salomon Smith Barney, Inc. v. HBO & Co.,*
  No. 98CIV8721 (LAK), 2001 WL 225040 (S.D.N.Y. Mar. 7, 2001) ........................9

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.,*
  No. 02-12102-RWZ, 2003 WL 21975102 (D. Mass. Aug. 19, 2003) ........................8

*THK America, Inc. v. NSK Co.,*
  157 F.R.D. 637 (N.D. Ill. 1993)......................................................................7, 8, 12

Class Representatives, State-Boston Retirement System and Erie County Employees Retirement System, (collectively, "Plaintiffs") hereby move this Court to remove Defendants' designation of "confidential" placed on the documents produced by Defendants in this matter.[1]

## I. INTRODUCTION

On August 3, 2009, the Court entered a Confidentiality Stipulation and Order (the "Protective Order") [Dkt. No. 106],[2] which allows the parties to designate certain limited categories of documents in their discovery productions as "confidential," thereby precluding their publication and distribution. Plaintiffs contend that Defendants have violated the Protective Order by placing a blanket "confidential" designation over virtually all of the more than 1.7 million pages that they have produced to date.[3] In fact, Defendants ignore the express language of the Protective Order by disregarding the explicit condition that designations of confidentiality be made in "good faith" and by ignoring the restrictions on the type of documents that may so be designated. *See* Mustokoff Decl., Ex. A ¶ 1(b)).

Defendants tacitly conceded violating the terms of the Protective Order during one of the parties' meet and confer communications, stating that they never performed a confidentiality review of the documents – opting instead to cast a blanket designation over their entire production and to shift the burden of determining the propriety of those designations to Plaintiffs. *See* Mustokoff Decl., ¶ 11 and Ex. F. This blanket confidentiality designation covers thousands, if not hundreds of thousands, of pages of obviously public or otherwise non-confidential documents, including newspaper articles, SEC filings, press releases and other publicly available documents. *Id.*, ¶¶ 3-4. Furthermore, Defendants' blanket designation covers all of the deposition testimony given in this matter and every internal e-mail correspondence that Plaintiffs have reviewed to date. *Id.*, ¶ 5. It should go without saying, but just because deposition

---

[1] "Defendants" refers to BankAtlantic Bancorp, Inc. ("BankAtlantic" or the "Company"), Alan B. Levan, Jarett S. Levan, John E. Abdo, Valerie C. Toalson and James A. White.

[2] *See* Declaration of Matthew L. Mustokoff in Support of Plaintiffs' Motion to Remove Confidential Designations from Records ("Mustokoff Decl."), Exhibit A.

[3] It bears mentioning that Plaintiffs were unable to locate any documents produced by Defendants that did not bear the "confidential" stamp. Accordingly, it is quite possible that Defendants' improperly designated their entire document production "confidential."

1

testimony or emails between corporate executives – including the Individual Defendants in this case – are embarrassing or even incriminating, does not mean it qualifies as "confidential" material that should be hidden from public view.

Defendants' lack of good faith and discretion not only contravenes the express language of the Protective Order, but also places a tremendous burden on Plaintiffs. Pursuant to the Protective Order, every motion, brief or other filing that includes one of these purportedly "confidential" documents must be filed under seal. Mustokoff Decl., Ex. A ¶¶ 12-13. Because Defendants designated virtually every document as "confidential," Plaintiffs cannot publicly file anything with the Court that references the discovery obtained from Defendants. This was not the intent of the Protective Order as it undermines this Court's preference for open judicial proceedings. *See, e.g., Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) ("The operations of the courts and the judicial conduct of judges are matters of utmost public concern … and … [t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process") (internal quotations and citations omitted); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."). Indeed, Defendants' indiscriminate designation campaign has forced Plaintiffs to file under seal their Proposed Second Amended Consolidated Complaint ("SACC") as it incorporates the plethora of evidence Plaintiffs have obtained during discovery corroborating Plaintiffs' fraud claims under the Securities Exchange Act of 1934. In addition, if Defendants' blanket designation is allowed to stand, Plaintiffs will be required to file *all* future motions and other memoranda of law that incorporate evidence produced by Defendants in discovery – including the filings associated with the impending motions *in limine*, motions for summary judgment and *Daubert* motions – under seal.

Accordingly, Plaintiffs request that this Court strike Defendants' "confidential" designations and order Defendants to review their document production and the deposition testimony from this case for materials that are genuinely "confidential" under the terms of the

2

Protective Order and re-designate each document appropriately.

## II.   BACKGROUND

Pursuant to Fed. R. Civ. P. 26(c), the Protective Order purports to govern all documents and discovery materials that are designated "confidential." *See* Mustokoff Decl., Ex. A ¶1. Under its express terms, the Protective Order provides that only the following may qualify as confidential information: "[1] commercially sensitive information, [2] individual personal information, or [3] legally protected information." *Id.,* ¶ 1(b). Only documents or testimony containing such information may be designated "confidential." *Id.,* ¶ 3. The Protective Order also provides that the party designating discovery material as "confidential" must do so "in good faith." *Id.,* ¶ 1(b). A designation process cannot be said to be undertaken in good faith where the producing party makes no effort whatsoever to determine whether the documents it has designated fit into protected categories. *See, e.g., In re Air Crash at Lexington, Ky., August 27, 2006,* No. 5:06-CV-316-KSF, 2009 WL 1683629, at *6 (E.D. Ky. June 16, 2009) ("Comair's claim of confidentiality for every document produced and, thereby, for every deposition transcript in which a witness is questioned about Comair's documents, likewise cannot be considered good faith compliance with the Protective Order. ... Comair's designation could not possibly be based on a good faith belief of entitlement to protection when documents such as press releases and documents publicly available online are included in the designation.").

Defendants' document production began in August 2009 and, to date, consists of approximately 1.7 million pages of documents.[4] *See* Mustokoff Decl., ¶ 3.  As noted above, Defendants have stamped virtually every produced document as "confidential," *id.,* ¶ 4, going far beyond the three limited categories of protected information that the Protective Order recognizes. For example, Defendants broadly designated as confidential nearly every newspaper article they produced, including clips from the *Miami Herald,* the *South Florida Sun-Sentinel,* the *Tampa Bay Business Journal,* and the *Sarasota Herald Tribune,* among others. *Id.,* ¶¶ 3-4. Defendants

---

[4] Defendants' production of documents is not complete, as they are still producing documents responsive to Plaintiffs' sixth set of requests for the production of documents. In fact, as recently as May 11, 2010, Defendants advised Plaintiffs that they intend to produce several thousand pages of additional documents on May 17, 2010 – just 4 days before the close of discovery.

3

also marked as confidential BankAtlantic's own press releases, conference call transcripts and information publicly available on its website – documents that have been publicly disseminated in the same or similar form or otherwise made available to third parties.[5] *Id.* In addition, Defendants designated as confidential every single deposition taken in this case and every piece of e-mail correspondence that Plaintiffs have reviewed to date. *Id.,* ¶ 5.

As a result of Defendants' abuse of the "confidential" designation and violation of the Protective Order, counsel for Plaintiffs notified counsel for Defendants via email on April 20, 2010 that they found Defendants' blanket confidential designation to be in violation of the Protective Order. *See* Mustokoff Decl., ¶ 6 and Ex. B (April 20, 2010 email from Mark Arisohn, Esq. to Adam Schachter, Esq.). Several days later, on April 22, 2010, Plaintiffs filed a Motion for Leave to Amend the Complaint to Shorten the Class Period, Conform the Pleadings to the Evidence Obtained During Discovery and Simplify and Streamline the Case for Trial ("Motion to Amend"), which attached the SACC. *See* Dkt. Nos. 206-208 (filed under seal). The SACC contained references to excerpts of deposition testimony and a host of documents that Defendants had designated as confidential. Prior to filing the Motion to Amend, Plaintiffs requested Defendants' consent to filing the SACC in the public record, recognizing the absurdity of filing a proposed operative pleading under seal. *See* Mustokoff Decl., ¶ 7 and Ex. C (April 20, 2010 e-mail from Mark Danek, Esq. to Adam Schachter, Esq. and Grey Mead, Esq.). The parties met and conferred on the issue and Defendants flatly denied Plaintiffs' request. *See id.,* ¶¶ 8-9 and Ex. D (April 20, 2010 email from Adam Schachter, Esq. to Serena Hallowell, Esq.). Indeed, Defendants threatened Plaintiffs that if they did not file the SACC under seal, Defendants would ***"seek to hold the filers in contempt of court and will seek sanctions."*** *Id.,* ¶ 9 and Ex. D.

On April 26, 2010, Plaintiffs again provided notice to Defendants that their overly broad confidential designations ran afoul of the Protective Order. *See* Mustokoff Decl., ¶ 10 and Ex. E

---

[5] Plaintiffs have not attached the aforementioned documents to this motion because the Protective Order would require Plaintiffs to file this motion under seal. This demonstrates the absurdity of Defendants' blanket designation and the prejudice it imposes on Plaintiffs. In the event the Court would like to see a sampling of the public documents Defendants have incorrectly categorized as confidential, Plaintiffs will provide them to the Court for inspection.

4

(April 26, 2010 letter from Matthew Mustokoff, Esq. to Adam Schachter, Esq.). Defendants again refused to review or modify their blanket confidentiality designations. *Id.,* ¶ 11 and Ex. F (April 26, 2010 email from Adam Schachter, Esq. to Matthew L. Mustokoff, Esq.). Moreover, Defendants *conceded* that they had not performed a "confidentiality" analysis of the documents in the first instance, opting instead to place a blanket protection over the entire production in contradiction of the Protective Order. *Id.,* ¶ 11 and Ex. F ("The overwhelming volume of document production in this case has simply precluded a separate and contemporaneous analysis of each and every document."). Defendants then baldly claimed that it was Plaintiffs' burden to cull through the documents they believed were incorrectly designated as confidential, and the parties could meet and confer on a document by document basis. *Id.*

Notwithstanding that applicable case law required Defendants to determine whether each and every document they produced warranted a confidentiality designation prior to production, *see infra.,* on May 3, 2010, Plaintiffs, reserving all of their rights, proposed that Defendants review a limited universe of documents and let Plaintiffs know by May 10, 2010 whether they would continue to deem them confidential. *See* Mustokoff Decl., ¶ 12 and Ex. G (May 3, 2010 letter from Matthew Mustokoff, Esq. to Adam Schachter, Esq.). The documents included: (1) all documents marked as exhibits during depositions in this matter; (2) all deposition testimony in this action; (3) all documents identified in Plaintiffs' Second Set of Requests for Admission (the "RFAs"); and (4) all documents identified in the proposed SACC. *Id.*

On May 10, 2010, Defendants emailed Plaintiffs advising that they had completed only their review of the documents identified in the RFAs and gave no timetable for when they would complete their review of the other documents despite the fact that the discovery is set to close on May 21, 2010. *See* Mustokoff Decl., ¶ 13 and Ex. H (May 10, 2010 email from Adam Schachter, Esq. to Matthew Mustokoff, Esq.). Defendants also refused to lift any of the confidentiality designations they applied to the documents identified in the RFAs, claiming that "each and every one of those documents references one or more borrowers or customers of BankAtlantic, requiring that the confidentiality designations stand." *Id.* Notwithstanding

5

Defendants' unequivocal representation, a cursory review of the RFAs shows that many of the documents identified therein (1) are public documents, including press releases, and SEC filings, *e.g.*, Forms 10-K, 10-Q and 4, and (2) do not reference customer names. In fact, ***26 of the first 50 deposition exhibits identified in the RFAs make no reference to BankAtlantic customers***. *See id.*, ¶ 14 and Ex. I, Ex. A at 2, 4-5, 9-10.

As Defendants, *inter alia*, (1) admittedly violated the express language of the Protective Order by placing a blanket confidentiality designation over their entire production; (2) showed no interest in properly designating their document production when given the chance to do so on a limited universe of documents; and (3) threatened to move for sanctions against Plaintiffs when Plaintiffs broached the possibility of filing the SACC in the public domain, Plaintiffs had no choice but to file the instant motion in advance of the May 21, 2010 discovery cutoff.

## III. ARGUMENT

### A. Defendants' Indiscriminate Confidentiality Designations Violate the Protective Order

There exists a strong presumption in favor of the openness of court records. *See Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000); *In re ULLICO Inc.*, 237 F.R.D. 314 (D.D.C. 2006). As the Court recognized, there is a public interest component to our judicial system, which includes the widely cited proposition that "pretrial discovery must take place in the public unless ***compelling reasons*** exist for denying the public access to proceedings." *In re Vitamins Antitrust Litig.*, No. Misc. 99-197 (TFH), 2001 WL 34088808, at *6 n.19 (D.D.C. Mar. 19, 2001) (internal correction, quotations and citation omitted). While the Protective Order sets forth that certain personal and commercial information is sensitive enough to warrant confidential treatment in spite of the public's interest in this litigation, Defendants' indiscriminate use of the confidentiality designation disregards the above precedent and goes well beyond the limited protections intended by the Protective Order.

*ULLICO* involved facts strikingly similar to the instant case. In *ULLICO*, the court entered a protective order covering "sensitive or otherwise confidential personal and financial information; and [] trade secrets, customer information or other confidential research,

6

developmental or commercial information." 237 F.R.D. at 317 (alteration in original, quotations and citation omitted). Like Defendants here, ULLICO designated almost all of the documents that it produced as "confidential" pursuant to the protective order, "including newspaper clips from the Washington Post, Business Week and Wall Street Journal articles; ULLICO press releases, its own annual reports and ERISA plan documents, blank income tax forms, CLE brochures, blank pages, tabs and folders, fax cover sheets and newsletters available on its website." *Id.* at 317-18 (quotations and citation omitted). The Court found that ULLICO had acted in bad faith in designating most documents as confidential and held that:

> The improper designation of thousands of documents as "confidential" would create unnecessary logistical restraints on Counterclaim Defendants' filing these documents with the court, including their inability to use the ECF system and having to file all of these documents under seal. ... The large quantity of documents that have been labeled "confidential" multiplies the obstacle for the Counterclaim Defendants, who are forced to adhere to these restraints for the majority of documents produced by ULLICO.

*Id.* at 318. The Court then ordered ULLICO to reproduce all documents improperly designated confidential without the label of "confidential" and for ULLICO to pay the opposing party's attorneys' fees and costs in bringing the motion. *See also, THK America, Inc. v. NSK Co.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) (holding that a party's designation of public information as confidential suggested misuse of the confidential designation and that the confidential designation of 79% of the documents produced was "absurdly high").[6]

Defendants here have similarly abused the limited protections afforded by the Protective Order, stamping virtually the entire production of documents and every single deposition

---

[6] In *THK America*, the court ordered the defendant to pay plaintiff's attorney's fees for drafting the discovery-relating motions, noting that:

> Courts are too overburdened with heavy caseloads and backlogs to police [defendant's] every classification decision[] when [defendant] has demonstrated unwillingness to adhere to the guidelines provided in the protective order [which defendant negotiated and agreed to].
>
> * * *
>
> [I]t is [defendant's] place and their responsibility to ensure that the proper confidential designations are assigned to the documents produced. ...

*Id.* at 639, 644.

transcript as "confidential," including publicly available documents such as newspaper articles and press releases.[7] As the court in *THK America* held, this "blatant misuse" of the confidential designation "stands the Protective Order on its head." 157 F.R.D. at 645. Moreover, the *THK America* court aptly noted that "*every* public document designated [for treatment under the Protective Order] constitutes a flagrant violation of the Protective Order." *Id.* at 646 (emphasis in original).

In situations, like the instant case, "the burden is properly on [the designating party] to fix the problem" of improperly designating documents as confidential. *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, No. 02-12102-RWZ, 2003 WL 21975102, at *1 (D. Mass. Aug. 19, 2003). *See also Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (imposing a short deadline for a party to reclassify its document production as a result of its initial improper classification). Accordingly, Plaintiffs respectfully request that the Court order Defendants to abide by the good faith provision of the Protective Order and reconsider their improper blanket confidentiality designations at their expense.

### B.  The Burden Rests on Defendants to Ensure that the Materials Designated as Confidential are Protected Under the Protective Order, Not on Plaintiffs

Courts uniformly have recognized that the burden of designating a document confidential in the first instance (and throughout the litigation) resides with the party claiming confidentiality, and that such a principle is consistent with Fed. R. Civ. P. 26(c)(1). *See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 328 (D. Del. 1986) ("The producing party has the burden to establish the confidentiality of each contested document."). The placement of that burden on the party seeking confidential treatment reflects the basic presumption that documents are not confidential and should only be shielded from public view upon an affirmative showing that they contain particularly sensitive information. *See, e.g., Mitchell v. Ford Motor Credit Co.,*

---

[7] Defendants' designation of every deposition transcript as confidential is a blatant misuse of the confidentiality designation. *See, e.g., Greater Miami Baseball Club Ltd. P'ship v. Selig*, 955 F. Supp. 37, 39 (S.D.N.Y. 1997) ("Nor is the fact that the deposition was designated confidential under the protective order entitled to any weight. If courts were obliged to make determinations, item by item, as to the justification for confidentiality of every piece of evidence as to which any party or witness made such a claim during the conduct of discovery, there would be little time in which to do anything else.").

8

No. 96-cv-447-J-32HTS, 2009 WL 4350037 (M.D. Fla. Nov. 24, 2009); *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98CIV8721 (LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("What is required is some showing that the disclosure of the information in question would cause some harm, either to the disclosing party or to someone else."). That presumption is reflected in the Protective Order, which expressly states that "the burden rests upon the party seeking confidentiality to demonstrate that such designation is proper." Mustokoff Decl., Ex. A ¶ 11. That presumption would be wholly undermined if a party could, as Defendants attempt to do here, abuse the confidentiality stamp and then charge its opponent with the impracticable task of challenging each and every improper designation on a document-by-document basis.

It was Defendants' responsibility to review their production in good faith at the outset of discovery and to designate as confidential only those documents that fell within the narrow confines of the three categories of protected materials set forth in the Protective Order. Defendants have admitted that they never undertook that review. *See* Mustokoff Decl., ¶ 11 and Ex. F ("The overwhelming volume of document production in this case has simply precluded a separate and contemporaneous analysis of each and every document."). Having failed to fulfill that responsibility in the first instance, Defendants should be required to do so now.

### C. Plaintiffs Are Burdened by Defendants' Abuse of Confidential Designations

Defendants' practice of indiscriminately designating all documents as "confidential" places an enormous undue burden on Plaintiffs at this stage of the litigation as the parties are about to embark on extensive motion practice, including motions *in limine* and summary judgment motions, prior to proceeding to trial. It is well-settled that filing under seal is a burdensome process for both the non-designating party and the Court. *See generally, In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1360 (N.D. Ga. 2002) (discussing the "administrative headache caused by litigants who stipulate to blanket protective orders [and] arbitrarily file boxes of documents under seal"). Indeed, filing a document under seal requires a party to hand-file the motion with the clerk, move for leave to file the document under seal, follow additional labeling and packaging requirements, and mail service to all

counsel on the service list.[8]

In this matter, for every motion, brief or other filing that Plaintiffs will make in the next three months that attaches or references a purportedly "confidential" document (which effectively means *all* filings given the evidentiary stage of the litigation), Plaintiffs must meet and confer with Defendants on the propriety of the designations. If Defendants do not agree to lift the designations, Plaintiffs will be forced to either contest the designations on a document-by-document basis or hand-file the document under seal and file a motion to seal the document. Mustokoff Decl., Ex. A ¶¶ 11-12. In fact, the terms of the Protective Order require Plaintiffs to meet and confer with Defendants in advance, wait for Defendants' response, then write a motion requesting that the designated documents be filed under seal – an obvious burden and impediment to Plaintiffs' and the Court's cost-effective and timely prosecution of this matter. *Id.*, ¶ 12.

As noted above, because Plaintiffs will expect to engage in extensive motion practice and proceed to trial over the next few months, Defendants' blanket confidentiality designation will have a profound impact on Plaintiffs and the Court. Plaintiffs' court filings and presentation at trial will incorporate documents and deposition testimony that Defendants have incorrectly designated as "confidential." Rather than clog the record with sealed documents and force the Court to hold a closed door trial, Defendants should be required to review their production and determine which documents are in fact confidential so that Plaintiffs and the Court will know how to proceed with the impending motion practice and trial.

Allowing Defendants to maintain their current wholesale confidentiality designations, or for that matter requiring Plaintiffs to disprove them on a document-by-document basis, and then have the Court rule on a document-by-document basis, would impose on Plaintiffs and the Court an unfair burden and expense. *See Selig*, 955 F. Supp. at 39. This is especially the case as the Defendants had the obligation, but admittedly ignored it, in the first instance to properly

---

[8] Parties filing documents under seal are precluded from using the Court's ECF system, thus requiring service by mail and filing by hand. *See* L.R. 5.4.

designate their document production.[9] Plaintiffs respectfully submit that Defendants should be forced to abide by the Protective Order.

## IV. CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(A)(3)

As evidenced by the communications referenced in and attached to the Mustokoff Declaration, the undersigned hereby certifies that he has made a good-faith effort to resolve the matters referred to in the preceding motion in the advance of next week's May 21, 2010 discovery cutoff. Indeed, counsel for Plaintiffs have conferred in writing and telephonically with opposing counsel on multiple occasions in an attempt to resolve this dispute informally, as detailed above. All efforts to resolve the matters contained in this motion have failed and Defendants have threatened to move for sanctions if Plaintiffs were to file anything with the Court referencing the improperly designated documents.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court order that Defendants review their document production in good faith and only designate as "confidential" documents that fall within the three narrow categories of protected materials set forth in the Protective Order. Defendants should be given a limited period of time in which to redesignate their documents and bear the full expense of having the parties' database corrected. In addition, Plaintiffs request that the Court enter an Order, pursuant to Fed. R. Civ. P. 37(a)(5), requiring Defendants to pay Plaintiffs their reasonable expenses incurred in making this motion, including attorney's fees.[10]

---

[9] The parties negotiated the Protective Order which placed a "good faith" obligation on the producing party to designate documents as "confidential" only when they contain (1) commercially sensitive information; (2) individual personal information; or (3) legally protected information. Mustokoff Decl., Ex. A ¶ 1(b).

[10] *See, e.g., ULLICO*, 237 F.R.D. at 319 (requiring Defendants to pay reasonable attorney's fees and expenses after court found improper designation of thousands of documents as "confidential" would create unnecessary logistical restraints on moving party); *THK America*, 157 F.R.D. at 645 (same).

11

Dated: May 13, 2010

Respectfully submitted,

s/ Ronald D. Shindler
RONALD D. SHINDLER # 781703
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and the Class and for Lead Plaintiff State-Boston Retirement System*

LABATON SUCHAROW LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives and the Class and Lead Counsel for Lead Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Benjamin J. Hinerfeld, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
Michelle M. Newcomer, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives and the Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Ronald D. Shindler<br>
RONALD D. SHINDLER

## SERVICE LIST

Adam M. Schachter
Eugene E. Stearns
Gordon M. Mead, Jr.
**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**
150 W. Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305)789-3400
Facsimile: (305) 789-3395
aschachter@stearnsweaver.com
estearns@stearnsweaver.com
gmead@sternsweaver.com

David Reich Chase
**DAVID R. CHASE, P.A.**
1700 E. Las Olas Boulevard, Penthouse 2
Fort Lauderdale, FL 33301
Telephone: (954) 920-7779
Facsimile: (954) 923-5622
david@davidchaselaw.com

Jules Brody
**STULL STULL & BRODY**
6 E. 45th Street, Suite 500
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022
ssbny@aol.com

Julie Prag Vianale
Kenneth J. Vianale
**VIANALE & VIANALE**
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone: (561) 392-4750
Facsimile: (561) 392-4775
jvianale@vianalelaw.com
kvianale@vianalelaw.com

3