## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP,
INC. SECURITIES LITIGATION

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE FALSITY OF CERTAIN CLASS PERIOD STATEMENTS AND INCORPORATED MEMORANDUM OF LAW
### ***REDACTED FOR PUBLIC FILING***

LABATON SUCHAROW LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives and the Class and Lead Counsel for Lead-Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives and the Class*

FOWLER WHITE BURNETT P.A.
Ronald Shindler, Esq.
Fla. Bar No. 781703
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and the Class and for Lead Plaintiff State-Boston Retirement System*

## **Table of Contents**

Page

I.    PRELIMINARY STATEMENT ................................................................................1

II.   STATEMENT OF FACTS ....................................................................................7

    A.   The Asset Classes Within BankAtlantic's Land Loan Portfolio ............................7

    B.   BankAtlantic Had Concerns with the Entire Land Loan Portfolio Leading Up to
        and At the Time of the July 25, 2007 Earnings Call.................................................8

        1.   The LWL Reports Detail the Exponential Rise in Substandard Assets In
              the BLB *And* Non-BLB Land Loan Portfolios .............................................8

        2.   The Growth in Problem Assets is Further Confirmed by the Numerous
              Non-BLB Land Loans Seeking Extensions ...............................................13

        3.   Several High-Ranking BankAtlantic Executives Had Concerns With the
              Entire Land Loan Portfolio ........................................................................14

        4.   The Office of Thrift Supervision Also Was Concerned With the Entire
              Land Loan Portfolio ..................................................................................15

    C.   On July 25, 2007, Defendant Levan Misrepresented That BankAtlantic's $395
        Million Non-BLB Land Loan Portfolio Was Performing Extremely Well And
        Concerns Were Limited To The $135 Million BLB Portfolio .............................17

III.  PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE
    THE UNDISPUTED FACTS ARE THAT DEFENDANTS BANKATLANTIC AND
    LEVAN MADE FALSE AND MISLEADING STATEMENTS TO INVESTORS ON
    JULY 25, 2007....................................................................................................18

    A.   Establishing Falsity under Section 10(b) ............................................................18

    B.   There is No Genuine Issue of Material Fact That BankAtlantic and Alan Levan
        Issued Materially Misleading Statements on July 25, 2007 ...................................19

IV.   CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.,*
    819 F. 2d 1519 (9th Cir. 1987) ..............................................................................2, 4

*Grand Lodge of Pa. v. Peters,*
    550 F. Supp. 2d. 1363 (M.D. Fla. 2008) ...................................................................18

*In re World Access Inc. Sec. Litig.,*
    310 F. Supp. 2d 1281 (N.D. Ga. 2004) ......................................................................18

*Kelly v. Sabretech Inc,*
    106 F. Supp. 2d 1283 (S.D. Fla. 1999) ........................................................................2

*Muro v. Hermanos Auto Wholesalers, Inc.,*
    514 F. Supp.2d 1343 (S.D. Fla. 2007) ...................................................................2, 18

*Ziemba v. Cascade Int'l, Inc.,*
    256 F.3d 1194 (11th Cir. 2001) .............................................................................1, 18

STATUTES

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.
    §78j(b) and 78t(a) .................................................................................................1, 18

OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ...........................................................................................................17

Fed. R. Civ. P. 56(d) ...........................................................................................................18

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7.5, Class Representatives State-Boston Retirement System ("State-Boston") and Erie County Employees Retirement System ("Erie") (collectively, "Plaintiffs"), respectfully submit this Motion for Partial Summary Judgment as to the Falsity of Certain Class Period Disclosures (the "Motion").

## I.   PRELIMINARY STATEMENT

Plaintiffs have stated claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder. 17 C.F.R. 240.10b-5.[1]  Plaintiffs recognize this is a complex case involving many triable issues of fact and envision a lengthy trial.  At the same time, however, one of the key issues in this case is demonstrably beyond dispute:  the falsity of Defendant BankAtlantic Bancorp's (the "Bank") and Defendant Alan Levan's statements during a July 25, 2007 earnings conference call that there are no asset classes that he and the Company were concerned with other than the $135 million "Builder Land Bank" or "BLB" segment of the loan portfolio.

The *truth* – as evidenced by the produced documents and sworn testimony of Defendants – is that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[1] To establish Defendants' liability under Section 10(b) and Rule 10b-5, Plaintiffs must prove that Defendants issued: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ On this record, no reasonable juror could find Levan's July

25, 2007 statements to be truthful.

As there is no genuine issue of material fact as to the self-evident falsity of Levan's

statements to the public on July 25, 2007, Plaintiffs bring this motion seeking partial summary

judgment in an effort to streamline and simplify the case for trial. Indeed, in large, multifaceted

cases such as this, courts routinely recognize the utility of partial summary judgment motions as

a means to limit and focus the issues for the jury. *See, e.g., Muro v. Hermanos Auto

Wholesalers, Inc.*, 514 F. Supp. 2d 1343, 1353 (S.D. Fla. 2007) (granting partial summary as to

defendants' violations of the Truth in Lending Act leaving only the narrow issue of causation left

to be litigated); *Kelly v. Sabretech Inc*, 106 F. Supp. 2d 1283, 1285 (S.D. Fla. 1999) (granting

motion for partial summary judgment to narrow the issues to be presented at trial); *Continental

Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F. 2d 1519, 1525 (9th Cir. 1987) ("[G]iven

the size and complexity of this case, we cannot condemn the district court's effort to carve out

threshold claims and thus streamline further litigation. In these partial summary judgments, the

district court effectively narrowed the issues, shortened any subsequent trial by months, and

efficiently separated the legal from the factual questions.").

Set against the backdrop of the already declining Florida real estate market, in late 2006

and 2007 BankAtlantic embarked on a mission to prop up its stock price by misrepresenting the

true extent of the risk embedded in the Bank's $530 million land loan portfolio. On July 24,

2007, in BankAtlantic's second quarter 2007 earnings press release, the Bank represented that

2

the $135 million BLB segment was subject to "additional downgrades and additional provisions relating to the portfolio if the housing market does not improve." Ex. A.[2] The Bank publicly described these BLB loans as loans in which the borrowers have agreements to sell the underlying land collateral to national and local home builders pursuant to option contracts. The July 24 press release omitted any mention of the $395 million LAD/ LADC segment of the land loan portfolio.[3]

During the quarterly earnings conference call the following day, July 25, analysts pressed BankAtlantic for additional information relating to the extent of BankAtlantic's exposure to the then-well documented decline in the Florida real estate market. Specifically, Fox-Pitt, Kelton analyst Albert Savastano asked Defendant Levan, the Bank's chief executive officer, for a breakdown of the dollar amounts of the various categories of loans found within the Bank's $1.4 billion Commercial Real Estate ("CRE") portfolio, which included the three segments of land loans (BLBs, LADs and LADCs) comprising $530 million in assets. Levan deferred to Defendant Valerie Toalson, the Bank's chief financial officer, who made the distinction between the Bank's "construction" asset class of the CRE portfolio, consisting of land loans with horizontal and/or vertical construction components (or the LAD and LADC loans, respectively), and the Bank's "non-construction" asset class, consisting of the $135 million in BLB land loans that were subject to the pre-sold options. Ex. C. (Hereinafter, the LAD and LADC loans are collectively referred to as **"Non-BLB Land Loans."**) Not satisfied with Toalson's evasive response, Savastano then posed the following question:

---

[2] Citations to "Ex. __ " refer to the accompanying Declaration of Mark S. Danek, Esq.

[3] For purposes of this Motion, and using Defendants' own defined terms, Plaintiffs will refer to commercial real estate loans issued for land acquisition subject to pre-sold builder options as Builder Land Bank ("BLB") loans; commercial loans issued for land acquisition and horizontal development as Land Acquisition and Development ("LAD") loans; and commercial loans issued for land acquisition, horizontal development and vertical construction as Land Acquisition, Development and Construction ("LADC") loans. ███████████████████████

> Basically what I'm trying to find – ask you is the $135 million in the land loans that you guys are concerned about, ***are there other portfolios*** – and I'm going to focus you on the construction portfolio – ***that you feel there might be some risk down the road as well?***

*Id.* at 22 (emphasis added).  In a nutshell, Savastano wanted to know the level of risk or concern that BankAtlantic perceived with respect to the "construction" or non-BLB portion of the land loan portfolio, in light of BankAtlantic's suggestion that only the BLB segment was at risk. When faced with this carefully tailored and direct question, Levan gave a series of categorical assurances that the Non-BLB Land Loans were performing "extremely well" and the BLB loans were the only land loans having problems:

> ***There are no asset classes we are concerned about as an asset class.  ... the [non-BLB] portfolio has always performed extremely well, continues to perform extremely well. ... that [non-BLB] portfolio has performed extremely well.  The one category that we just are focused on is this land loan builder [BLB] portfolio, because just from one day to the next the entire home building industry went into a state of flux and turmoil, and is impacting that particular class.  But to our knowledge and in – just in thinking through, there are no particular asset classes that we're concerned about other than that one [BLB] class.***

*Id.* (emphasis added).

This statement is objectively false.  Internal documents and deposition testimony paint a far different picture of the then-current state of the Bank's "construction" or Non-BLB Land Loans and directly belie Levan's public assurances of no concern regarding the balance of the land loan portfolio.  In fact, ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████.

The deterioration of the "construction" or Non-BLB land loans were well-documented by Defendants throughout the Class Period.  For example, ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



In light of the foregoing, which is detailed fully below, Plaintiffs bring this motion for

partial summary judgment as to the falsity of BankAtlantic's and Levan's statements during the July 25, 2007 analyst conference call that the Non-BLB portfolio was performing "extremely well" and there was no concern about the land loan portfolio other than the BLB segment. On this record, there can be no dispute that – contrary to their public statements of assurance – Defendants were deeply concerned about the LAD and LADC loan segments by July 25, 2007.

## II.   STATEMENT OF FACTS

### A.   The Asset Classes Within BankAtlantic's Land Loan Portfolio

*The Builder Land Bank (BLB) ("Non-Construction") Asset Class.*  On July 24, 2007 (the day before the earnings conference call), BankAtlantic issued its second quarter 2007 earnings press release in which the Bank discussed the risk of additional downgrades and additional provisions [for loan losses] "in the "$135 million" in land loans identified as "Builder Land Loans," or loans that were made to "borrowers who have agreements to sell the underlying collateral to national and local home builders pursuant to option contracts."  Ex. A at 3.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

*The Non-BLB ("Construction") Asset Class.*  Separate and apart from the BLB segment, BankAtlantic's "construction portfolio" contained (i) commercial loans issued for land acquisition and horizontal development ("Land Acquisition and Development" or "LAD" loans), and (ii) commercial loans issued for land acquisition, horizontal development and vertical construction ("Land Acquisition, Development and Construction" or "LADC" loans).  Ex. B ████████████████████████  Defendant Toalson publicly confirmed this during the July 25, 2007 earnings conference call when she defined the "construction" asset class to include only loans

7

that contained a "horizontal or vertical" construction component.  Ex. C at 22.  Accordingly, the "construction portfolio" classification in the July 25, 2007 conference call was referring to the Non-BLB Land Loans.

**B.      BankAtlantic Had Concerns with the Entire Land Loan Portfolio Leading Up to and At the Time of the July 25, 2007 Earnings Call**

The falsity of Alan Levan's statement that the Bank's purported sole "concern" was with the BLB asset class and that the Non-BLB Land Loans were performing "extremely well" is easily established.  Indeed, deposition testimony and numerous internal documents gathered by Plaintiffs during discovery demonstrate BankAtlantic's concerns with and the deterioration of the entire land loan portfolio contemporaneous to Levan's false assurance to the market on July 25, 2007 that only the BLB asset class was a "concern."  Specifically, the record establishes:  (i) BankAtlantic generated monthly LWL reports that documented an exponential rise in Substandard and Special Mention loans spanning the BLB *and* Non-BLB Land Loans; (ii) numerous Non-BLB Land Loans were coming in for maturity date extensions and additional funding for interest reserves due to slowed or non-existent sales; and (iii) Defendant White and other high-ranking BankAtlantic executives harbored concerns about the rapidly deteriorating state of the entire land loan portfolio throughout late 2006 and early to mid 2007.

**1.      The LWL Reports Detail the Exponential Rise in Substandard Assets In the BLB *And* Non-BLB Land Loan Portfolios**















**2.**   **The Growth in Problem Assets is Further Confirmed by the Numerous Non-BLB Land Loans Seeking Extensions**



Defendants were thus plainly concerned with the Non-BLB Land Loans in March 2007 – four months prior to Levan's statements to the contrary on July 25, 2007.

### 3.  Several High-Ranking BankAtlantic Executives Had Concerns With the Entire Land Loan Portfolio

Defendants' concern with the entire land loan portfolio is further confirmed by the deposition testimony and emails of Bank executives.  For example, when questioned during his deposition, Defendant White testified that

14

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

Likewise, Snyder, the BankAtlantic executive in charge of managing the land loan

portfolio, ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████

4.      **The Office of Thrift Supervision Also Was Concerned With the Entire Land Loan Portfolio**

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



██████████████████████████████████████████████████

████████████████████████████

**C.**   **On July 25, 2007, Defendant Levan Misrepresented That BankAtlantic's $395 Million Non-BLB Land Loan Portfolio Was Performing Extremely Well And Concerns Were Limited To The $135 Million BLB Portfolio**

In advance of BankAtlantic's upcoming second quarter 2007 earnings conference call, on

July 10, 2007, Defendant Toalson ███████████████████████████████████



██████████████████

During the July 25, 2007 earnings call, when asked directly by Savastano about whether

risks of credit deterioration and loss went beyond the BLB segment of the land loan portfolio and

also applied to other asset classes, Levan unequivocally said "no":

> [SAVASTANO]: *Basically what I'm trying to find -- ask you is the $135 million in the land loan that you guys are concerned about, are there other portfolios -- and I'm going to focus you on the construction portfolio -- that you feel there might be some risk down the road as well?*
>
> [A. LEVAN]: *There are no asset classes that we are concerned about in the portfolio as an asset class.* We've reported all the delinquencies that we have, which actually I don't think are any other than the ones that we've just reported to you. *So the [construction] portfolio has always performed extremely well, continues to perform extremely well.* And that's not to say that from time to time there aren't some issues, as there always have even though we've never taken

---

[9] ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

losses in that world. But we've not taken -- I won't say ever taken any losses, because that's probably never going to be a correct statement. *But that [construction] portfolio has performed extremely well. The one category that we just are focused on is this land loan builder portfolio, because just from one day to the next the entire home building industry went into a state of flux and turmoil, and is impacting that particular class. But to our knowledge and in just in thinking through, there are no particular asset classes that we're concerned about other than that one class.*[10]

Ex. C at 22 (emphasis added).  Against the backdrop of



, Levan's

statements were empirically false.

### III.   PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS ARE THAT DEFENDANTS BANKATLANTIC AND LEVAN MADE FALSE AND MISLEADING STATEMENTS TO INVESTORS ON JULY 25, 2007

Pursuant to Fed. R. Civ. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A party may move for partial summary judgment as to an element of a party's case when the lack of any genuine issue is obvious. *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F. Supp. 2d 1343, 1353 (S.D. Fla. 2007); *see also* Fed. R. Civ. P. 56(d) (the "court should, to the extent practicable, determine what material facts are not genuinely at issue").

#### A.   Establishing Falsity under Section 10(b)

As noted above, to establish Defendants' liability under Section 10(b) and Rule 10b-5, Plaintiffs must prove that Defendants issued: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury."

---

[10]

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see also Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d. 1363, 1369 (M.D. Fla. 2008). Plaintiffs seek partial summary judgment only as to the first element – falsity – of Levan's July 25, 2007 earnings call statements. To make a showing that a challenged statement is false or misleading, a plaintiff need only demonstrate that the challenged statements are at odds with the true state of affairs then affecting the company that issued the statement. *See e.g., In re World Access Inc. Sec. Litig.*, 310 F. Supp. 2d 1281, 1298 n.9 (N.D. Ga. 2004). Where, as here, there are no material issues of fact as to the falsity of a statement, summary judgment on the element of falsity is proper. *See Id.* at 1298.

### B.   There is No Genuine Issue of Material Fact That BankAtlantic and Alan Levan Issued Materially Misleading Statements on July 25, 2007

For the reasons discussed *supra*, as of July 25, 2007, the performance of BankAtlantic's land loan portfolio was deteriorating and the entire portfolio was a concern and, thus, Levan's contrary statements to analysts, investors and shareholders on that date were demonstrably false. Ex. C at 23 (emphasis added). Indeed, on this documentary and testimonial record, no reasonable juror could find the following highlighted statements by Levan to be truthful when made:

> [A. LEVAN]: ***There are no asset classes that we are concerned about in the portfolio as an asset class.*** We've reported all the delinquencies that we have, which actually I don't think are any other than the ones that we've just reported to you. ***So the portfolio has always performed extremely well, continues to perform extremely well.*** And that's not to say that from time to time there aren't some issues, as there always have even though we've never taken losses in that world. But we've not taken -- I won't say ever taken any losses, because that's probably never going to be a correct statement. ***But that portfolio has performed extremely well. The one category that we just are focused on is this land loan builder portfolio, because just from one day to the next the entire home building industry went into a state of flux and turmoil, and is impacting that particular class. But to our knowledge and in just in thinking through, there are no particular asset classes that we're concerned about other than that one class.***

Accordingly, partial summary judgment is warranted as to the falsity of the foregoing statements.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

Dated: June 1, 2010

Respectfully submitted,

/s/ Mark S. Arisohn
MARK S. ARISOHN, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives and the Class and Lead Counsel for Lead Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives and the Class*

-and-

20

FOWLER WHITE BURNETT P.A.
Ronald D. Shindler # 781703
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives
and the Class and for Lead Plaintiff State-
Boston Retirement System*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was filed VIA CM-ECF (and a non-redacted version was filed UNDER SEAL VIA HAND-DELIVERY).  I also certify that the foregoing is being served this day on the following counsel of record VIA HAND-DELIVERY:

Eugene E. Stearns, Esq.
Adam Schachter, Esq.
Gordon McRea Mead, Esq.
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street, Ste. 2200
Miami, FL 33130

s/ Ronald D. Shindler
RONALD D. SHINDLER