UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP, INC.
SECURITIES LITIGATION
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO REMOVE CONFIDENTIAL DESIGNATIONS FROM RECORDS**

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eugene E. Stearns
Richard B. Jackson
Adam M. Schachter
Gordon M. Mead, Jr.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

**TABLE OF CONTENTS**

                                                                                                                         Page

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. DEFENDANTS HAVE PRODUCED MILLIONS OF PAGES OF DOCUMENTS UNDER A BARRAGE OF DISCOVERY REQUESTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PLAINTIFFS HAVE MANUFACTURED AN ISSUE AS TO CONFIDENTIALITY DESIGNATIONS AND HAVE REFUSED ALL REASONABLE ATTEMPTS AT RESOLUTION OF THAT ISSUE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. DEFENDANTS' DOCUMENTS ARE CONFIDENTIAL.. . . . . . . . . . . . . . . . . . . . . . . . 8

V. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SERVICE LIST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**I.      INTRODUCTION**

Plaintiffs have done everything possible to avoid a resolution of the issues raised in their motion. Such behavior, we suspect, has very little to do with the propriety of Defendants' confidentiality designations for the nearly *two million pages* of documents that have been produced in this case – documents to which, we now know, Plaintiffs never had a right to in the first place. It has everything to do with the serious litigation misconduct committed by Plaintiffs' counsel in this case, and the prospect that such matters are about to be brought before this Court via Defendants' motion for sanctions. This motion is a dispirited attempt at deflection.[1]

Indeed, on no less than four occasions, Defendants have offered to resolve this issue the only way it can be resolved: Plaintiffs would identify those specific documents they believe have been designated confidential incorrectly; and Defendants would re-review those documents promptly. Proceeding in this manner just makes sense. Plaintiffs' request for relief, by contrast, that Defendants re-review nearly two million pages of documents – the lion's share of which will never need to be filed with the Court or used at trial – does not. As of this date, although Plaintiffs have shown no problem articulating their complaints through generalized indictments of bad faith and sweeping accusations that documents have been designated confidential indiscriminately, they still have not identified a single, specific document that they believe has been improperly designated as confidential.

---

[1] An ulterior motive for the motion is undoubtedly Plaintiffs' frustration at not being able to publish their proposed Second Amended Consolidated Complaint on their websites. As we articulated in response to Plaintiffs' motion for leave to file it, the proposed pleading could not possibly represent a meaningful attempt to plead viable claims for securities fraud against Defendants, but could only be a document intended for counsel's various websites and the business wires as part of an untoward effort to extract a settlement for a meritless case.

1

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON. P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

More importantly, even without Defendants' offer of compromise, the motion is a needless pursuit, as the parties will have to go through this same exercise mere days after this motion becomes ripe. On June 18, 2010, the parties have agreed to exchange exhibit lists. If summary judgment is denied, there will be a trial that will require the parties to address the potential confidentiality, *vel non*, for the documents listed on those exhibit lists, only with the added benefit of doing so for those documents that the parties believe to be relevant for trial.[2] Thus, even if Defendants were inclined to re-review the entire two million page production, such a review would not (and could not) be completed until long after the exhibits lists were prepared and submitted to the Court, rendering it wholly unnecessary to re-review the balance of the documents in the production.

Moreover, the plain truth is that the massive amount of documents that have been produced in this case are confidential. A patchwork of Federal and State statutes require that bank records be treated as such. This is not to say that every single document is confidential; Defendants' review, thus far, shows that more than three thousand pages of documents have not been marked confidential. This is also not to say that certain documents may have been designated confidential in error. If, in fact, that is the case it would neither be surprising (Plaintiffs, for example, have made plenty of their own errors in producing a relative minuscule number of documents) nor incurable (see above). Because Plaintiffs refuse to address this confidentiality issue in a reasonably efficient and logical manner, the Court should deny their motion and order them to do so.[3]

---

[2] To the extent Plaintiffs wanted to use certain materials for motions for summary judgment or otherwise, Defendants have always made clear that we would re-review any potentially mis-designated documents promptly. And, in any event, such a review would have to completed before June 18, 2010, which is before all of the summary judgment briefs will have been filed.

[3] The Court may not even get that chance. Throughout this case, Plaintiffs have made a disturbing habit of filing frivolous motions and then withdrawing them a short time later. On September 10, 2009, for example, Plaintiffs moved for leave to take thirty five depositions before

## II.   DEFENDANTS HAVE PRODUCED MILLIONS OF PAGES OF DOCUMENTS UNDER A BARRAGE OF DISCOVERY REQUESTS.

Plaintiffs have served six requests for production of documents in this case, containing more than one hundred separate numbered requests and sub-parts. In response, Defendants have produced nearly two million pages of documents. The time and expense of processing, reviewing and producing those documents has been staggering. Plaintiffs, for their part, have not missed an opportunity to ratchet up those burdens.

It is difficult to overstate the facial overbreadth of Plaintiffs' requests. They were drafted without regard to burden on the responding party, and without any attempt to provide the particularity and clarity required by the Federal and Local Rules. For example, as drafted, the requests collectively commanded the review and production of virtually every document and bit of electronic data regarding BankAtlantic's commercial real estate business on any number of issues, many of which have nothing to do with the issues in this lawsuit.

From the outset, however, Defendants have made every possible effort to produce responsive documents. Defendants served objections to Plaintiffs' various requests, principally because the language was so overbroad that a meaningful and timely review and production of documents had been rendered impossible. Then, consistent with the Local and Federal Rules, Defendants met and conferred with Plaintiffs regarding the requests and corresponding objections in order to reach an

---

having taken even one, and then later withdrew the motion after receiving Defendants' response. *See* DE 117, 131 and 142. Plaintiffs also moved to compel completion of production of documents, only to then later withdraw that motion after agreeing to Defendants' request that the parties move to extend the pretrial deadlines in this case. *See* DE 117, 131 and 150. Plaintiffs then withdrew another motion to compel after Defendants agreed to stomach yet another document production related burden for Plaintiffs' benefit. *See* DE 136 and 155. And, on October 2, 2009, Plaintiffs moved to compel production of Office of Thrift Supervision documents, only to then withdraw that motion as well after receiving Defendants' response. *See* DE 137, 156 and 161.

agreement regarding the scope of the documents to be produced. Defendants also proposed electronic search terms with respect to the review and production of e-mails as part of a good-faith attempt to provide responsive documents while weeding out the surplus.

Plaintiffs approached the process quite differently. On August 13, 2009, four days *before* Defendants were due to respond to the first request for production (and thus before even seeing Defendants' objections), Plaintiffs declared that they expected to begin reviewing documents on August 17th. *See* Defendants' Response to Lead Plaintiff's Motions to Compel (DE 131) at 4-10. Then, twice more, Plaintiffs wrote demanding the immediate production of documents, again without having even seen Defendants' objections. *See id.*

Plaintiffs were also unwilling to substantially reduce the scope of the requests, certainly not to a degree that would make the review and production of documents a quick and simple exercise. For example, with respect to the commercial real estate loan files, Plaintiffs were only willing to narrow the scope of the request to the land loan files contained within the commercial real estate loan portfolio, which constituted a hundred boxes of documents integral to BankAtlantic's day-to-day business activities. Most of those files, however, have nothing to do with the claims asserted in this case – confirmed by the fact that Plaintiffs' banking expert did not even bother to review them or a random sample of them.

Since the production began, Plaintiffs have continuously complained about the speed with which Defendants produced documents, while simultaneously making requests and demands that could only result in slowing down that production and increasing the costs and burdens on Defendants. On September 14, 2009, for example, Plaintiffs complained because certain of the documents were produced in an electronic format that made review of those particular documents

4

cumbersome, time-consuming and difficult. *See id.* Plaintiffs, therefore, requested that certain documents, but not others, be produced in an entirely different format, contrary to the parties' agreement on that issue. Plaintiffs also made constant requests as to specific documents and groups of documents, all of which served to further slow down the process. Of course, at the same time, Plaintiffs were complaining that things were not moving fast enough.

As mentioned above, Plaintiffs moved to compel completion of production of documents, only to then later withdraw that motion after agreeing to Defendants' request that the parties move to extend the pretrial deadlines in this case. *See* DE 117, 131 and 150. Plaintiffs also repeatedly neglected to copy Defendants on their correspondence to the Office of Thrift Supervision requesting the release of certain confidential documents, only to then demand that Defendants immediately produce such documents once the OTS authorized their release. Furthermore, after months of making weekly productions of documents, when Defendants notified Plaintiffs that they were moving to a more standard biweekly production schedule, they were met with further protests and complaints. Through it all, Defendants made every effort to produce responsive document as quickly as possible, and worked toward addressing each and every one of Plaintiffs' numerous (often unnecessary, and always burdensome) requests in a timely manner.

Plaintiffs' request for relief in their motion – that Defendants go back and re-review the past year's production all over again – goes too far.

5

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**III.  PLAINTIFFS HAVE MANUFACTURED AN ISSUE AS TO CONFIDENTIALITY DESIGNATIONS AND HAVE REFUSED ALL REASONABLE ATTEMPTS AT RESOLUTION OF THAT ISSUE.**[4]

The Confidentiality Stipulation agreed to by the parties was entered by the Court on July 29, 2009. *See* DE 106. Defendants have made thirty-six separate productions since that date, totaling nearly two million pages of documents.  Not once during that time did Plaintiffs even hint that certain documents contained in any single one of those productions appeared to have been designated confidential incorrectly.  Nor, during any of the numerous depositions, did Plaintiffs ever utter a word about any of the deposition exhibits or testimony being designated confidential incorrectly.

On April 20, 2010 – nine months after entry of the Confidentiality Stipulation, on the eve of the close of discovery, and after having seen their claims in this case virtually disintegrate – Plaintiffs raised the issue. They did so via e-mail, requesting that Defendants waive confidentiality designations with respect to all of the documents and deposition testimony referenced in the proposed Second Amended Consolidated Complaint.  *See* Plaintiffs' Motion, Ex. C.  Plaintiffs' e-mail did not identify any particular documents in the proposed pleading as falling outside the purview of the Confidentiality Order.  Nor did Plaintiffs purport to offer any reasons, bases or explanations for why the documents referenced in that pleading – most, if not all, of which are clearly confidential under the terms of the Order, and some of which are non-public SEC materials for which Defendants do not even have the ability to waive confidentiality – should be filed in the public record.  Of course, their motives for filing the proposed pleading in the public record are readily apparent.  *See* n. 1 *supra*.

---

[4] For reasons that are relatively obvious, Plaintiffs did not include the full record of correspondence between the parties with respect to confidentiality designations. We provide the full context herein.

Plaintiffs next raised the confidentiality issue in an April 26, 2010 letter. *See* Plaintiffs' Motion, Ex. E. Again, Plaintiffs failed to identify a single document they believed was designated incorrectly, offering instead the entirely unhelpful declaration that "Defendants' blanket and indiscriminate confidentiality designations run afoul of the Order." *Id.* Defendants, in response, requested that Plaintiffs identify those documents they wish to be made public. *See* Plaintiffs' Motion, Ex. F. Defendants then made the same request during the parties' telephonic meet and confer on the issue. Plaintiffs again refused to do identify any specific documents.

On April 29, 2010, Plaintiffs wrote again on the issue.[5] Their letter declared that Defendants' designations were "sweeping and indiscriminate," and requested that Defendants re-review the entire production for confidentiality. And, once again, Plaintiffs did not identify a single document that had been designated incorrectly.

On April 30, 2010, Defendants responded via e-mail to Plaintiffs' April 29, 2010 letter.[6] Defendants, again, requested that Plaintiffs identify those specific documents they believe were designated incorrectly. Defendants also attempted to better articulate the logic of undertaking this confidentiality designation re-review exercise in the context of the parties' exhibit list exchange on June 18, 2010, so as to avoid unnecessary time and expense reviewing documents that will never be filed with the Court or used at trial.

On May 3, 2010, Plaintiffs' responded to Defendants' April 30, 2010 e-mail. *See* Plaintiffs' Motion, Ex. G. Plaintiffs refused again to identify specific documents for re-review. Instead, Plaintiffs offered a slightly narrower, though not all that helpful, universe of documents for

---

[5] A true and correct copy of Plaintiffs' April 29, 2010 letter is attached as Exhibit A.

[6] A true and correct copy of Defendants' April 30, 2010 e-mail is attached as Exhibit B.

Defendants' to re-review, including all of the 644 deposition exhibits in this case, all of the 28 deposition transcripts, all of the 620 documents identified in Plaintiffs' Second Set of Requests for Admissions, and over 100 documents identified in the proposed Second Amended Consolidated Complaint. And, Plaintiffs made this request without indicating whether any of these documents were particularly relevant, or identifying which documents they intend to use for motions or at trial.

Defendants began the time consuming and expensive task of re-reviewing the documents identified by Plaintiffs, notwithstanding the fact that there were far more efficient means of confronting the confidentiality issue raised by Plaintiffs (and, of course, knowing that Plaintiffs' insistence on going down this road was purely tactical). Before Defendants could complete their review – perhaps sensing that there may actually no longer be anything about which to complain – Plaintiffs cut off the process abruptly and filed this motion with the Court.

Amazingly, now almost six weeks since first raising their concern with Defendants' confidentiality designations, Plaintiffs have still not seen fit to identify a single document that was designated confidential incorrectly.

### IV. DEFENDANTS' DOCUMENTS ARE CONFIDENTIAL.

It goes without saying that most, if not all, of the produced documents in this case are bank records. Confidentiality for such documents is not optional; it is required by law. Banks have a special obligation to protect the privacy of their customers.

There are Federal and State statutes codifying these requirements. The United States Code, for example, provides:

> (a) Privacy obligation policy
>
> It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the

8

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

security and confidentiality of those customers' nonpublic personal information.

(b)   Financial institutions safeguards

In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards:

(1)   to insure the security and confidentiality of customer records and information;

(2)   to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3)   to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer."

15 U.S.C. § 6801. The Florida Statutes are equally protective: "The books and records of a financial institution are confidential and shall be made available for inspection and examination only . . . as compelled by a court of competent jurisdiction, pursuant to a subpoena issued pursuant to the Florida Rules of Civil Procedure, the Florida Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, or pursuant to a subpoena issued in accordance with state or federal law." Fla. Stat. § 655.059.

The case law is in accord. Courts have found that banks have a duty of confidentiality with regard to customers' accounts. *See Hooper v. Barnett Bank of West Florida,* 474 So. 2d 1253 (Fla. 1st DCA 1985); *Peterson v. Idaho First Nat. Bank*, 367 P.2d 284 (1961). Courts have similarly found that banks have a duty of confidentiality with respect to credit information and information derived from loan applications. *See Burford v. First Nat. Bank in Mansfield*, 557 So. 2d 1147 (La. Ct. App. 2d Cir. 1990); *Djowharzedeh v. City of Nat'l Bank & Trust Co.*, 646 P.2d 616 (Okla. Civ. App.1982). The foregoing statutes and case law foreclose banks, such as BankAtlantic, from simply

9

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

dumping their documents into the public domain.

Even a cursory review of Plaintiffs' document requests reveals that they could only lead to the production of documents containing personal information regarding BankAtlantic's customers. For example, requests fourteen and fifteen in the First Set of Requests for the Production of Documents commanded production of:

> All documents created by, provided to, or received from members of the "Commercial Lending Division" of the bank, concerning CRE, the bank's underwriting or lending practices, and/or accounting issues related to the "Commercial Lending Division" of BankAtlantic. [and]

> All documents in loan files, folders and/or binders for each and every BLB, LADC, and LAD loan, including, but not limited to, all documents in loan files for non-accrual loans.

*See* Lead Plaintiff's First Set of Requests for Production.[7]

In response to these requests, Defendants were forced to produce literally every e-mail sent or received by any member of the Commercial Lending Division regarding a commercial real estate loan, all of which are replete with confidential borrower and guarantor information. Defendants also had to produce thousands of pages of financial statements and personal information of borrowers and guarantors.

Many of the responsive documents are also prohibited from disclosure by various banking regulatory agencies. Request number one, for example, from Plaintiffs' First Set of Requests commanded production of:

> All documents concerning the OTS, the Federal Reserve, the Office of the Comptroller of the Currency (OCC), the FDIC and/or the Florida Department of Banking and Finance's supervision, regulation, examination or enforcement of BankAtlantic in connection with its

---

[7] A true and correct copy of Lead Plaintiff's First Set of Requests for Production is attached as Exhibit C.

lending and/or underwriting responsibilities, including but not limited to any safety and soundness or compliance audits.

See Exhibit C. The OTS, however, prohibits disclosure of its "unpublished information" without its specific authorization. See 12 C.F.R. § 510.5(a)(2). "Unpublished information" is defined to includes records that are created or obtained in connection with the OTS's performance of its responsibilities, including, *inter alia*, examination reports, supervisory correspondence among the OTS and financial institutions, internal agency memoranda and investigatory files. *See id.* Although Plaintiffs' sought and received authorization to receive certain of these documents from the OTS, such documents remain the property of the OTS and are confidential. Documents pertaining to examination reports and supervisory correspondence of the FDIC, OCC and Florida Office of Financial Regulation are similarly confidential and prohibited from disclosure. See 12 C.F.R. § 309.5(g)(2); *id.* at (g)(5); *id.* at (g)(8); 12 C.F.R. § 4.32(b); Fla. Stat. § 655.057(1)(f).

Plaintiffs' cited cases are also inapposite. Although those cases generally discuss the misuse of confidentiality designations (such as by parties seeking to protect their own commercially sensitive information), not one of those cases pertain to a financial institution or bank. Banks and financial institutions, such as BankAtlantic, have a statutory obligation to protect the privacy of their customers and the confidentiality of documents generated by certain regulatory agencies. BankAtlantic has done just that.

V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be denied.

                Respectfully submitted,

                STEARNS WEAVER MILLER WEISSLER
                ALHADEFF & SITTERSON, P.A.
                Museum Tower, Suite 2200
                150 West Flagler Street
                Miami, Florida 33130
                Telephone:  (305) 789-3200
                Facsimile:   (305) 789-3395

                s/ Adam M. Schachter
                EUGENE E. STEARNS
                Florida Bar No. 149335
                estearns@stearnsweaver.com
                RICHARD B. JACKSON
                Florida Bar No. 898910
                rjackson@stearnsweaver.com
                ADAM M. SCHACHTER
                Florida Bar No. 647101
                aschachter@stearnsweaver.com
                GORDON M. MEAD, JR.
                Florida Bar No. 49896
                gmead@stearnsweaver.com

                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or other approved means.

                                                      s/ Adam M. Schachter
                                                     ADAM M. SCHACHTER

**SERVICE LIST**
*In re BankAtlantic Bancorp, Inc. Securities Litigation*
Case No. 07-61542-CIV-Ungaro/Simonton
United States District Court, Southern District of Florida

Mark Arisohn
marisohn@labaton.com
Serena Hallowell
shallowell@labaton.com
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Telephone: 212-907-0877
Facsimile:  212-818-0477
*Lead Counsel for Lead Plaintiff State Boston Retirement System*

Ronald D. Shindler
rshindler@fowler-white.com
Fowler White Burnett P.A.
1395 Brickell Avenue
14th Floor
Miami, FL 33131
Telephone: 305-789-9222
Facsimile: 305-789-9201
*Liaison Counsel for Lead Plaintiff State Boston Retirement System*

Andrew Zivitz
azivitz@btkmc.com
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile:  610-667-7056
*Attorney for Plaintiff*