# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP,
INC. SECURITIES LITIGATION

### PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO REMOVE CONFIDENTIAL DESIGNATIONS FROM RECORDS

LABATON SUCHAROW LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class
Counsel for Lead-Plaintiff State-Boston
Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives
and the Class*

FOWLER WHITE BURNETT P.A.
Ronald Shindler, Esq.
Fla. Bar No. 781703
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile:  (305) 789-9201
rshindler@fowler-white.com
*Representatives and the Class and Lead
Liaison Counsel for Class Representatives
and the Class and for Lead Plaintiff State-
Boston Retirement System*

## TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................................. 1

II. Argument ..................................................................................................................... 4

      A. Defendants Violated the Terms of the Protective Order ........................................ 4

      B. Defendants Failed to Carry Their Burden of Establishing that Documents Are Properly Designated "Confidential" ....................................................................... 7

III. Conclusion ................................................................................................................... 9

Class Representatives State-Boston Retirement System ("State-Boston") and Erie County Employees Retirement System ("Erie") (collectively, "Plaintiffs"), respectfully submit this Reply in Further Support of their Motion to Remove Confidential Designations from Records (the "Motion").

**I.     Introduction**

The Confidentiality Stipulation and Order entered on August 3, 2009 (the "Protective Order") only permits parties to designate *in good faith* three limited categories of documents as "confidential":  (i) commercially sensitive information, (ii) individual personal information, or (iii) legally protected information.  Protective Order, ¶1(b) (Dkt. No. 106).

In their response to Plaintiffs' Motion, Defendants[1] make no showing that any of the purportedly 2 million "confidential" documents are either commercially sensitive information or relate to individual personal information.  *See generally*, Defendants' Response to Plaintiffs' Motion to Remove Confidential Designations from Records (the "Response" or "Resp.") (Dkt. No. 232) at 8-12.  Moreover, Defendants effectively concede that they made no, let alone a good faith, examination of the roughly 2 million pages of documents prior to marking them "confidential".  *See* Declaration of Matthew L. Mustokoff in Support of the Motion ("Mustokoff Decl."), ¶11 (Dkt. No. 220).  Defendants' action, or inaction as the case may be, amounts to a blatant and clear violation of this Court's August 3, 2009 Order – plain and simple – and forces the Court to maintain a sealed record and Plaintiffs to spend unnecessary time and resources filing documents under seal and redacting documents for inclusion on the Court's docket.

Notwithstanding the violation, Plaintiffs attempted to resolve the issue short of motion practice by giving Defendants a discrete set of purportedly "confidential" documents to re-designate.  Defendants balked, claiming that they had properly designated the documents

---

[1] "Defendants" refers to BankAtlantic Bancorp, Inc. ("BankAtlantic" or the "Company"); Alan B. Levan, BankAtlantic Chairman and CEO; Jarett S. Levan, BankAtlantic President, and President and CEO of BankAtlantic's retail banking subsidiary; John E. Abdo, BankAtlantic Vice Chairman; Valerie C. Toalson, Current Chief Financial Officer; and James A. White, Former Chief Financial Officer.

1

confidential on the grounds that each and every document contained client names. Putting aside whether client names fall within the foregoing definition of "confidential" information, a cursory review of the documents demonstrates that many do not include client names. This motion necessarily followed.

Effectively conceding their violation of the Protective Order, Defendants' sole opposition to Plaintiffs' Motion appears to be that there are a "patchwork" of Federal and State statutes requiring that the Company's records relating to certain customer information be marked confidential, and that limited protection somehow insulates Defendants' entire document production. *Id*. Defendants' opposition fails.

Plaintiffs do not take issue with the fact that Federal and State statutes mandate the confidentiality of an extremely narrow category of the Company's records relating to customer information. Rather, Plaintiffs question Defendants' indiscriminate marking of nearly the entire production (1.997 million pages out of 2 million, or 99.85% of the total production) as well as every deposition transcript as "confidential" because the vast amount of the information contained therein does not contain sensitive client information.[2] Indeed, many documents marked confidential are, in fact, publicly available documents such as newspaper articles and press releases. Accordingly, it is beyond dispute that Defendants' designations were not done in "good faith" pursuant to any applicable Federal or State statute.

Defendants also seemingly contend that violating the Court's Order was justified because it would have been impracticable for them to adhere to it. *See generally*, Resp. at 3-6. Putting aside the absurdity of that position, Defendants neglect to tell the Court that they purportedly conducted an extensive privilege pull and redaction campaign prior to production, withholding thousands of documents in whole or in part. Thus, at the same time that Defendants were reviewing millions of pages of documents for privilege, Defendants could have (and should have) also performed a careful "confidentiality" review to ensure that they met their "good faith"

---

[2] Defendants claim to have identified 3,000 pages out of the 2 million pages of produced documents that were not marked confidential. *See* Resp. at 1-2.

2

obligations under the Protective Order.

Rather than facing the issue head-on, Defendants provide the Court with pages of non-sequiturs designed to direct the Court's attention away from their clear violation of the Court's Protective Order. First, Defendants contend that Plaintiffs are being unreasonable in their stance that Defendants should have properly designated their production in the first instance. Defendants contend that they generously offered to have Plaintiffs do Defendants' work for them by reviewing and notifying Defendants of documents that had improper "confidential" designations. Resp. at 1. Defendants ignore the fact that the burden of designating documents in the first instance falls squarely on their shoulders as the producing party. Protective Order, ¶3. Additionally, Defendants fail to mention that even though Plaintiffs were under no obligation to identify documents improperly designated due to Defendants' indiscriminate marking of 99.85% of their production as confidential, Plaintiffs identified four narrow categories of documents for Defendants to focus their review efforts. Mustokoff Decl., ¶12. Notwithstanding the reasonableness of Plaintiffs' approach to the meet and confer, Defendants chose to forego any meaningful review and simply responded that their cursory review of a fraction of one category of documents indicated that the designations were proper. *Id*. ¶13. As detailed in Plaintiffs' opening brief, many of the documents that Defendants purportedly reviewed do not qualify as "confidential" within the meaning of the Protective Order since they are publicly available documents and/or documents that do not contain any protected customer information. Motion at 5-6 (Dkt. No. 219).

Second, Defendants refer to a series of discovery motions that Plaintiffs filed and ultimately withdrew after the parties resolved them as evidence that this motion is somehow infirm (*i.e.*, Plaintiffs' motion to compel completion of production of documents (Dkt. No. 115), Plaintiffs' motion to compel the production of native format documents (Dkt. No. 136), and Plaintiffs motion to compel production of Office of Thrift Supervision documents (Dkt. No. 137)). Defendants' position is nonsensical. If anything, the pattern of motion practice with which Defendants take issue demonstrates that Defendants do not honor their mandatory

3

discovery obligations until *after* Plaintiffs' move to compel.  *See* Dkt. Nos. 150, 155, 161.[3] Since Defendants have shown a pattern of only complying with their mandatory discovery obligations when faced with a motion to compel, Plaintiffs brought the current motion. Hopefully, Defendants will follow past practice in this instance and not require the Court to maintain or Plaintiffs' to file non-confidential information under seal.

Third, Defendants desperately point to the issues raised in their recently filed Rule 11 motion, contending that their violation of the Protective Order was warranted on the grounds that Plaintiffs were never entitled to discovery in this action.  As the Court will soon see in Plaintiffs' response to Defendants' Rule 11 Motion, Defendants' motion is a baseless attempt to impugn Plaintiffs' counsel in the hopes that it distracts the Court's attention away from the merits of the case and Defendants' liability.[4]

Since Defendants have not provided any justification for their failure to conduct a "confidentiality" review *as required by this Court's Order* and failed to carry their burden in establishing that 99.85% of their entire production meets the Protective Order's strict criteria for "confidential" designation, Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion.

## II.   Argument

### A.   Defendants Violated the Terms of the Protective Order

The Protective Order requires that the parties only designate discovery material as "confidential" in good faith.  Protective Order, ¶1(b).  A producing party demonstrates a

---

[3] Notably, Defendants' discovery abuses continue to this day as they failed to properly respond to Plaintiffs' Requests for Admission filed on May 20, 2010.  As a result, Plaintiffs were forced to file another motion to compel on June 3, 2010 given the multiple pending pre-trial deadlines. *See* Dkt. No. 239.

[4] As will be argued at length in Plaintiffs' response to Defendants' Rule 11 Motion, Plaintiffs had a good faith basis for all of the allegations in the First Amended Consolidated Complaint and provided ample evidence of such to Defendants during the 21 day Rule 11 notice period.  Fed. R. Civ. P. 11(c).  Defendants, desperate to file their Rule 11 Motion, ignored Plaintiffs' evidentiary proffer in violation of Rule 11.  As such, once Plaintiffs demonstrate the lack of merit with Defendants' spurious motion, Plaintiffs (as the prevailing party) will seek an award of reasonable expenses, including attorney's fees, incurred in opposing the motion.

complete lack of "good faith" in their blanket "confidential" designations where they make no determination ***prior to production*** that the document truly falls within a protected category. *See, e.g., In re Air Crash at Lexington, Ky., August 27, 2006*, 2009 U.S. Dist. LEXIS 65974, at *35 (E.D. Ky. June 16, 2009) ("Comair's claim of confidentiality for every document produced and, thereby, for every deposition transcript in which a witness is questioned about Comair's documents, likewise cannot be considered good faith compliance with the Protective Order. … Comair's designation could not possibly be based on a good faith belief of entitlement to protection when documents such as press releases and documents publicly available online are included in the designation."). Likewise, it cannot be said that a party acted in good faith when they designate as confidential documents that are already in the public realm, or when a substantial percentage of their production is marked "confidential." *See*, *e.g.*, *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) (holding that a party's designation of public information as confidential suggested misuse of the confidential designation and that the confidential designation of 79% of the documents produced was "absurdly high").

Defendants freely admit that they made no attempt to comply with the court-ordered terms of the Protective Order. *See* Mustokoff Decl., ¶11. Likewise, their Response never states that they actually conducted a good faith "confidentiality" review of the documents prior to designation and production.[5] Rather, the crux of Defendants' contention that they are permitted to flout the terms of the Protective Order because it was purportedly impracticable and burdensome for them to conduct a "confidentiality" review prior to production. *See generally*, Resp. at 3-6. Defendants' impracticality argument rings hollow.

Indeed, over the course of Defendants' slow, delayed production of documents,

---

[5] Remarkably, Defendants filed a motion seeking reimbursement of over $2 million in "reasonable costs and fees" incurred in "reviewing and producing" documents responsive to Plaintiffs' outstanding document requests. Dkt. No. 227. Thus, in addition to Defendants not reviewing the documents prior to production, Defendants also expect Plaintiffs to pay them for work they never did. As will be discussed in our planned opposition to their motion, Defendants are not entitled to reimbursement under the statutory (or any) law upon which they mistakenly rely.

Defendants provided Plaintiffs with six (6) detailed privilege logs identifying 10,212 documents in which Defendants redacted certain information based upon various asserted purported privileges.[6] Thus, it strains credulity for Defendants to contend that a "confidentiality" review is impracticable prior to production. Defendants easily could (and should) have done this review concurrently with their privilege review. Defendants' lax approach to their court-ordered discovery obligations does not justify their failure to adhere to the Protective Order.[7]

Next, by flouting the specific terms of the Protective Order, Defendants have actually increased (not lessened) both parties' burdens heading into trial. In the months leading up to trial, Plaintiffs have filed[8] and anticipate filing more pre-trial motions (*e.g.*, Plaintiffs' motion to exclude the expert testimony of Defendants' various testifying "experts") as well as opposing numerous pre-trial motions filed by Defendants.[9] For each one of these filings, Plaintiffs have had to (and will continue to have to) seek leave of court to file improperly "confidential" designated discovery materials under seal. Given Defendants' blanket "confidential" designations, both parties will now have to clog the Court with additional briefing and paperwork relating to motions to file certain discovery documents under seal. Furthermore, the Court will be forced to seal a record that should be open the public. This is exactly what courts

---

[6] True and correct copies of Defendants' First through Fourth Privilege Logs prepared for this action, and Defendants' Second Privilege Log prepared as part of the SEC's on-going investigation into the veracity of the Company's public statements that are the subject of this action are attached hereto as Exhibits A through E. Plaintiffs did not attach Defendants' forty-four (44) page First SEC Privilege Log dated November 12, 2009, since it was marked "confidential" and would require Plaintiffs to seek leave of court to file that document under seal – further demonstrating the absurdity of Defendants' blanket designations and prejudice to Plaintiffs.

[7] Defendants indicate that Plaintiffs' own production was full of errors. Resp. at 2. Plaintiffs produced all responsive non-privileged documents in their possession, custody or control. To date, Defendants have never questioned the fulsomeness of Plaintiffs' production. Moreover, the only possible "error" that would be relevant to the Court's current inquiry is whether Plaintiffs also indiscriminately designated their production as "confidential." Defendants' response is deafeningly silent on this point, since they know it's a non-starter. Plaintiffs only designated documents that they believed in good faith were confidential – not their entire production as Defendants have so done.

[8] *See*, *e.g.*, Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 229).

[9] *See*, *e.g.*, Defendants' Motion for Summary Judgment (Dkt. No. (sealed)).

6

seek to avoid by requiring parties to only designate documents "confidential" in good faith. *See, e.g., Air Crash*, 2009 U.S. Dist. LEXIS 65974, at *34 (finding that a parties' pattern of "over-designation" has "substantially burdened" the court by all of the sealed filings).[10]

### B. Defendants Failed to Carry Their Burden of Establishing that Documents Are Properly Designated "Confidential"

As detailed in the Motion, Plaintiffs identified 4 narrow categories of documents for Defendants to properly re-designate.[11] Mustokoff Decl., ¶12. Rather than use this opportunity to conduct a meaningful review of their designations to determine if they truly met the letter and spirit of the Protective Order, Defendants merely conducted a cursory review of the identified documents and blithely represented that the confidential designations were proper. *Id*. ¶13. Amazingly, a cursory review of the documents shows that many are publicly available, including newspapers articles, further demonstrating Defendants' disregard for and violation of the Court's Protective Order. As a result of Defendants second refusal to comply with the Protective Order, Plaintiffs filed this Motion. Protective Order, ¶11.

Under the terms of the Protective Order, upon the filing of the Motion, the burden shifts

---

[10] Defendants' contention that the parties should wait until they exchange pre-trial exhibit lists to address this issue is equally unavailing. Resp. at 2. A party is not absolved of its Court-ordered obligations to make only good faith "confidential" designations prior to production by simply waiting until later stages in the litigation. *See*, *e.g.*, *Air Crash*, 2009 U.S. Dist. LEXIS 65974, at *36-39 (during summary judgment briefing, the court voided the producing party's indiscriminate blanket "confidential" designation of its entire production, and required the producing party to re-review all documents designated as "confidential." The producing party was then required to apply to the court for a protective for any documents it believed fit within the narrow categories of "confidential" material as defined by the protective order after the re-review). Moreover, as noted above, we are on the verge of filing numerous pre-trial motions, responses and replies. For each of these filings, the parties will have to concurrently move to file any discovery materials designated as "confidential" under seal. If the parties wait until June 18, 2010 to decide which documents Defendants improperly designated as "confidential," the vast majority of the foregoing work will have been completed and the Court will be further burdened with countless pending motions to file documents under seal. In the interests of judicial economy, the Court should require Defendants to correct their improper designations now.

[11] Plaintiffs' motivation for filing this motion is not (as Defendants suggest) to be litigious. Rather, as detailed in the Motion, Plaintiffs made several attempts to allow Defendants to cure their blatantly improper "confidential" designations. Plaintiffs decided to file the Motion only after Plaintiffs determined that Defendants were unwilling to conduct any meaningful re-review of the limited categories of documents that Plaintiffs identified.

7

to the designating party to demonstrate that the "confidential" designation is proper.[12]  *Id*. Defendants have failed to make that showing.  As discussed above, the Protective Order only permits the parties to designate three narrow categories of documents as "confidential": (i) commercially sensitive information, (ii) individual personal information, or (iii) legally protected information.  *Id.* ¶1(b).  Defendants made no showing in their Response that the 99.85% of documents they designated as "confidential" fit within these criteria.  Rather, Defendants generally state that "most, if not all, of the produced documents" are protected bank records. Resp. at 8.  Given that Defendants' blanket "confidential" designations were placed on publicly available documents such as conference call transcripts, newspaper articles, publicly available SEC filings and press releases, and other internal documents that make absolutely no reference to customer information (*see* Mustokoff Decl., ¶14), Defendants failed to carry their burden that their entire production of documents (or the 99.85% so designated) was properly marked confidential.[13]

Next, rather than comply with the terms of the Protective Order, Defendants brazenly urge the Court to shift their court-ordered review obligations to Plaintiffs.  Resp. at 2.  This is wholly improper.  In situations where, as here, a party improperly casts a blanket designation across a production, the receiving party is not required to perform a document by document review.  *In re ULLICO, Inc.,* 237 F.R.D. 314, 317 (D.D.C. 2006) (finding that where the producing party designated over 90% of produced documents as confidential, the receiving party was not obligated to proceed on a document by document review); *see also Air Crash*, 2009 U.S.

---

[12] Regardless of the express terms of the Protective Order, courts uniformly recognize that the burden of designating a document confidential at the point of production (and throughout the litigation) rests with the party asserting confidentiality, and that such a principle is consistent with Fed. R. Civ. P. 26(c)(1).  *See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 328 (D. Del. 1986) ("The producing party has the burden to establish the confidentiality of each contested document.").

[13] It bears mentioning that Plaintiffs are not complaining about the "confidentiality" designations relating to truly protected customer information.  However, because Defendants chose to blanket designate their entire production, Plaintiffs have no way of knowing which documents are so protected.

8

Dist. LEXIS 65974, at *33-36 (not requiring the receiving party to identify only documents they believed were improperly marked confidential where the producing party designated their entire production and every deposition transcript as confidential). Indeed, the dispute resolution procedure set forth in the Protective Order contemplates a document by document analysis only if the producing party made good faith "confidentiality" designations in the first instance. *Id*. If the opposite were true, Defendants would be "encourage[d] … to overuse the 'confidential' label in the first place and provide a strategic advantage in the form of an unwarranted and unfair designation of 'confidential' for months." *ULLICO*, 237 F.R.D. at 317.

### III. Conclusion

The foregoing clearly demonstrates that Defendants violated the Court's Protective Order and failed to carry their burden in establishing that they had a good faith basis for marking 99.85% of their document production as "confidential." Accordingly, Plaintiffs respectfully submit that Defendants should be made to "fix the problem" and Plaintiffs' Motion should be granted. *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 2003 U.S. Dist. LEXIS 14281, at *4 (D. Mass. Aug. 19, 2003) ("the burden is properly on [the designating party] to fix the problem" of improperly designating documents as confidential); *see also ULLICO*, 237 F.R.D. at 318; *Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (imposing a short deadline for a party to reclassify its document production as a result of its initial improper classification).

Dated: June 8, 2010                                                  Respectfully submitted,

                                                               LABATON SUCHAROW LLP

                                                               /s/ Mark S. Arisohn
                                                               Mark S. Arisohn, admitted *pro hac vice*
                                                               Serena Hallowell, admitted *pro hac vice*
                                                               140 Broadway
                                                               New York, NY 10005
                                                               Telephone: (212) 907-0700
                                                               Facsimile: (212) 818-0477

                                                               *Co-Class Counsel for Class Representatives and the Class and Lead Counsel for Lead*

9

*Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives and the Class*

FOWLER WHITE BURNETT P.A.
RONALD D. SHINDLER # 781703
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and the Class and for Lead Plaintiff State-Boston Retirement System*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on June 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  /s/ Ronald D. Shindler
                                                RONALD D. SHINDLER

**SERVICE LIST**

Adam M. Schachter
Eugene E. Stearns
Gordon M. Mead, Jr.
**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**
150 W. Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305)789-3400
Facsimile: (305) 789-3395
aschachter@stearnsweaver.com
estearns@stearnsweaver.com
gmead@sternsweaver.com

David Reich Chase
**DAVID R. CHASE, P.A.**
1700 E. Las Olas Boulevard, Penthouse 2
Fort Lauderdale, FL 33301
Telephone: (954) 920-7779
Facsimile: (954) 923-5622
david@davidchaselaw.com

Julie Prag Vianale
Kenneth J. Vianale
**VIANALE & VIANALE**
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone: (561) 392-4750
Facsimile: (561) 392-4775
jvianale@vianalelaw.com
kvianale@vianalelaw.com