UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP, INC.
SECURITIES LITIGATION
_____/

**DEFENDANTS' MOTION TO EXCLUDE AN OCTOBER 29, 2007 MORNINGSTAR
ANALYST NOTE**

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eugene E. Stearns
Richard B. Jackson
Adam M. Schachter
Gordon M. Mead, Jr.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

Defendants BankAtlantic Bancorp, Inc. ("Bancorp"), John E. Abdo, Alan B. Levan, Jarett S. Levan, Valerie C. Toalson, and James A. White respectfully move, pursuant to Federal Rules of Evidence 401-403, to exclude an October 29, 2007 Morningstar analyst note and submit the following memorandum in support thereof:

## INTRODUCTION

The Morningstar Note falsely asserts that Bancorp's October 25, 2007 press release for the first time disclosed the size and existence of BankAtlantic's land acquisition and development portfolio and therefore concluded, among other things, "our confidence in management has eroded, given its unwillingness to be forthright about the risk on the bank's book."[1]  Plaintiffs launched this case with the lie that Bancorp first disclosed the existence of its land acquisition and development portfolio on October 25, 2007 and have persisted in repeating it, despite the fact that Bancorp's actual disclosures conclusively disprove it.[2]  Plaintiffs should not be permitted to repeat this falsehood at trial because it has no probative value and only creates the risk of unfair prejudice, confusion of the issues, misleading the jury, and wasting time, to a jury.  The October 29, 2007 Morningstar Note is also inadmissible hearsay that does not fall within any exception.

## THIS COURT SHOULD EXCLUDE THE OCTOBER 29, 2007 MORNINGSTAR NOTE

1.  **The October 29, 2007 Morningstar Note should be excluded as irrelevant and because any slight probative value is massively outweighed by the potential for unfair prejudice, confusion of the issues, and misleading the jury.**

Federal Rule of Evidence 401 defines relevant evidence as that having "any tendency to make  the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 mandates the exclusion of irrelevant evidence.  Rule 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

---

[1] The Morningstar Note is attached as Exhibit A.  References to "D.E. __" are references to documents filed and entered on the docket.  References to "Mead S.J. Aff. Ex. __" are references to the previously filed Affidavit of Gordon M. Mead, Jr. Submitted in Support of Defendants' Motion for Summary Judgment and dated June 3, 2010, which contains copies of the relevant disclosures.

[2] *E.g.*, D.E. 80 ¶¶ 214, 216; Mead S.J. Aff. Ex. 26 at 131-25.

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 104(a) provides that preliminary questions concerning the "admissibility of evidence shall be determined by the court."

The Morningstar Note describes the October 25, 2007 press release as including "the revelation that the bank is holding nearly $530 million in risky residential land development loans" and states that "management did not discuss the loans in the other two categories — land acquisition and development loans and land acquisition and development, and construction loans — until the this quarter, because credit quality did not deteriorate in these loan categories until September." Ex. A at 316276. Morningstar noted that the "bank has at least $530 million of speculative loans involving land development" and "we believe these loans could impair the long-term survivability of the bank as a stand-alone entity." Ex. A at 316276. Morningstar also stated that "our confidence in management has eroded, given its unwillingness to be forthright about the risk in the bank's loan book." Ex. A at 316276. The Morningstar Note in fact simply misreads Bancorp's public filings and leaps to an alarmist conclusion based on that misreading.

Bancorp made extensive disclosures about the size of its land acquisition and development portfolio and the possible risks that it could face for many months prior to October 25, 2007. To highlight the most prominent examples (there were many others):

Bancorp's Form 10-K filed March 1, 2007 for the year ended December 31, 2006 provides as follows:

> ***BankAtlantic's loan portfolio is concentrated in real estate lending***
> The national real estate market is showing signs of a slow down, particularly in areas that have seen significant growth, including Florida and California. Our loan portfolio is concentrated in commercial real estate loans (virtually all of which are located in Florida), residential mortgages (nationwide), and consumer home equity loans (Florida). We have exposure to credit losses that may arise from this concentration in what many believe is a softening real estate sector. *Included in the commercial real estate loans are approximately $389 million of land development loans, which are susceptible to extended maturities or borrower default due to a slow down in Florida construction activity, and $95.1 million of development loans for low and mid-rise condominium projects in Florida, where there is an increasing supply of new construction in the face of falling demand.*

Mead S.J. Aff. Ex. 5 at 16-17 (emphasis added).

Bancorp's Form 10-Q for the first quarter of 2007 states:

> The "builder land loan" segment discussed above is part of BankAtlantic's total commercial real estate acquisition and development portfolio of *approximately $562 million* as of March 31, 2007.  The loans other than the "builder land loans" in this category are generally secured by residential and commercial real estate which will be fully developed by the borrower or sold to third parties.

Mead S.J. Aff. Ex. 8 at 18 (emphasis added).

And Plaintiffs themselves cited in their proposed Second Amended Consolidated Complaint to a Fox Pitt Kelton analyst report discussing not only the existence of all of the loans in this category and the amount thereof, but concluding that a declining market would impact the entire portfolio:

> . . we expect the $135 million of builder land loans to have more hiccups in 2H07 and *note the entire land development portfolio is about $540 million*. BankAtlantic indicated that the other portfolios are not having issues.  *We believe it is possible that other areas of the commercial real estate portfolio will be impacted in the near future given the market for Florida real estate.*

Mead S.J. Aff. Ex. 26 at 128 (emphasis added); *see also* Mead S.J. Aff. Ex. 47 at 1.

The October 29, 2007 Morningstar Note simply got it wrong when it asserted that Bancorp had not previously disclosed the size of its land acquisition and development portfolio and then offered the hysterical opinion, based on its misreading of the filings, that the October 25, 2007 release showed that BankAtlantic's existence was in jeopardy and undermined the credibility of Bancorp's management.  Plaintiffs have never been able to offer a coherent explanation of the Morningstar Note's assertions and conclusions because they are indefensible and indisputably wrong.

The Morningstar Note's errors, based solely on a misreading of BankAtlantic's SEC filings in the months before the economic tsunami hit the rest of the country and before other banks began reporting large losses, has absolutely no relevance to this litigation.  Its erroneous factual statements and hysterical conclusions could only serve to cause unfair prejudice, confuse the issues, mislead the jury, and waste time.

**2.      The October 29, 2007 Morningstar Note is inadmissible hearsay.**

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801©. Such statements are generally inadmissible unless they fall within one of the exceptions to the hearsay rule. *See* Fed. R. Evid. 802 and 803.

Plaintiffs may attempt to argue that the October 29, 2007 is some sort of business record, but it has none of the indicia of reliability that accompany business records. Federal Rule of Evidence 803(6) allows records of a regularly conducted business activity to be admitted into evidence if the record was "made at or near the time by, or from information transmitted by, a person with knowledge" and "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness." The proponent of a business record must establish its "trustworthiness" in order for it to be admissible. *United States v. Petrie*, 302 F.3d 1280, 1287-88 (11th Cir. 2002); s*ee also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204-05 (4th Cir. 2000) (noting that business records are admissible in part because "reports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy"). Thus, a document may not be introduced if the "source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6).

Plaintiffs have not identified any testimony from any qualified witness that would establish that the Morningstar Note was created in the ordinary course of business or is sufficiently reliable. And they cannot conceivably show that the Morningstar Note is trustworthy because it is indisputably wrong and premised on a blatant error. This Court should therefore exclude the Morningstar Note as hearsay not falling within the scope of any exception.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to exclude the October 29, 2007 Morningstar Analyst Note.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Respectfully submitted,
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile:  (305) 789-3395

/s Eugene E. Stearns
EUGENE E. STEARNS
Florida Bar No. 149335
estearns@stearnsweaver.com
RICHARD B. JACKSON
Florida Bar No. 898910
rjackson@stearnsweaver.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@stearnsweaver.com
GORDON M. MEAD, JR.
Florida Bar No. 49896
gmead@stearnsweaver.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 18, 2010, I electronically filed the foregoing document with the Clerk of the Court using EM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by EM/ECF or through other approved means.

                 s/ Gordon M. Mead, Jr.
                 GORDON M. MEAD, JR.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**SERVICE LIST**

*In re BankAtlantic Bancorp, Inc. Securities Litigation*
Case No. 07-61542-CIV-Ungaro/Simonton
United States District Court, Southern District of Florida


Mark Arisohn
marisohn@labaton.com
Serena Hallowell
shallowell@labaton.com
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Telephone: 212-907-0877
Facsimile:  212-818-0477
*Lead Counsel for Lead Plaintiff State Boston Retirement System*

Ronald D. Shindler
rshindler@fowler-white.com
Fowler White Burnett P.A.
1395 Brickell Avenue
14th Floor
Miami, FL 33131
Telephone: 305-789-9222
Facsimile: 305-789-9201
*Liaison Counsel for Lead Plaintiff State Boston Retirement System*

Andrew Zivitz
azivitz@btkmc.com
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile:  610-667-7056
*Attorney for Plaintiff*