**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 07-61542-CIV-UNGARO/SIMONTON**

IN RE BANKATLANTIC BANCORP,
INC. SECURITIES LITIGATION

**PLAINTIFFS' REDACTED OMNIBUS MOTION *IN LIMINE***

LABATON SUCHAROW, LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives
and the Class and Lead Counsel for Lead-
Plaintiff State-Boston Retirement System*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives
and the Class*

FOWLER WHITE BARNETT P.A.
Ronald D. Shindler, Esq.
Florida Bar No. 781703
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9222
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and
the Class and for Lead Plaintiff State-Boston
Retirement System*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

OMNIBUS MOTION *IN LIMINE* ....................................................................... 1

MEMORANDUM OF LAW ................................................................................. 1

LEGAL STANDARD ........................................................................................... 1

ARGUMENT........................................................................................................ 1

I.  MOTION *IN LIMINE* NO. 1: TO EXCLUDE EVIDENCE AND
    ARGUMENT CONCERNING THE NEGATIVE PERFORMANCE OR
    FAILURES OF OTHER FINANCIAL INSTITUTIONS PROFFERED
    FOR THE PURPOSE OF CONTRASTING THESE INSTITUTIONS TO
    BANKATLANTIC ............................................................................................. 1

II. MOTION *IN LIMINE* NO. 2: TO EXCLUDE EVIDENCE AND
    ARGUMENT CONCERNING BANKATLANTIC'S STOCK PRICE
    PERFORMANCE OUTSIDE THE CLASS PERIOD ....................................... 4

III. MOTION *IN LIMINE* NO. 3: TO EXCLUDE EVIDENCE AND
     ARGUMENT CONCERNING DEFENDANTS' NON-RECEIPT OF
     ███████████████████████████████████ ................................................. 6

IV. MOTION *IN LIMINE* NO. 4: TO EXCLUDE EVIDENCE AND
    ARGUMENT CONCERNING BANKATLANTIC'S LACK OF A
    ███████████ ................................................................................................... 8

V.  MOTION *IN LIMINE* NO. 5: TO EXCLUDE EVIDENCE AND
    ARGUMENT CONCERNING PLAINTIFFS' EXPERT ████████.
    ███████FORMER EMPLOYER ..................................................................... 10

VI. MOTION *IN LIMINE* NO. 6: TO EXCLUDE EVIDENCE AND
    ARGUMENT CONCERNING THE ████████████████T
    ███████████████████TO FIND SECURITIES
    FRAUD OR TO REQUIRE DISCLOSURE ...................................................... 11

VII. MOTION *IN LIMINE* NO. 7: TO EXCLUDE EVIDENCE AND
     ARGUMENT CONCERNING THE DISMISSAL OR WITHDRAWAL
     OF ANY CLAIMS, THEORIES OF LIABILITY OR ALLEGATIONS ............ 13

VIII. MOTION *IN LIMINE* NO. 8: TO EXCLUDE EVIDENCE OF THE
      INDIVIDUAL DEFENDANTS GOOD CHARACTER AND HONESTY .......... 14

IX.    MOTION *IN LIMINE* NO. 9: TO BAR EVIDENCE OF AND
       REFERENCE TO RELIANCE ON COUNSEL AND ACCOUNTANTS......................14

       A.   Evidence of or Reference to Reliance on the Advice of Counsel..............................15

            1.   Defendants Failed to Assert Reliance on the Advice of Counsel
                 as a Defense in Their Answer and Thus Cannot Now Rely On It......................15

            2.   Defendants Precluded Discovery on the Issue of "Reliance on
                 Advice of Counsel" and Should Be Precluded from Now Raising
                 It as a Defense...........................................................................................16

       B.   Defendants Are Precluded From Raising  Reliance on Advice of
            Accountants as a Defense .......................................................................................17

X.     MOTION *IN LIMINE* NO. 10: TO BAR EVIDENCE AND REFERENCE
       TO AN ████████████████████████████████████
       ████████████..................................................................................................18

XI.    MOTION *IN LIMINE* NO. 11: TO BAR EVIDENCE THAT ANY
       CONFIDENTIAL WITNESS RECANTS, DISAVOWS, DOES NOT
       RECALL OR DENIES ANY STATEMENT ATTRIBUTED TO HIM OR
       HER IN THE COMPLAINT...................................................................................20

XII.   MOTION *IN LIMINE* NO. 12: TO BAR EVIDENCE OF OR
       REFERENCE TO AGGREGATE DAMAGES TO THE CLASS ...................................20

XIII.  MOTION *IN LIMINE* NO. 13: TO BAR REFERENCE TO ANY FEE
       ARRANGEMENTS BY PLAINTIFFS' ATTORNEYS .............................................21

XIV.   MOTION *IN LIMINE* NO. 14: TO BAR REFERENCE TO
       PROMOTIONAL MATERIAL OF PLAINTIFFS' COUNSEL .......................................22

XV.    MOTION *IN LIMINE* NO. 15: TO BAR EVIDENCE OR "EXPERT"
       TESTIMONY FROM JEFFREY MINDLING, MARCIA SNYDER,
       HENRY BARNES, VALERIE TOALSON, JAMES WHITE, JAY
       McCLUNG, DAVID FRIEDMAN, ALAN LEVAN, JARETT LEVAN
       AND JACK ABDO ..................................................................................................22

XVI.   MOTION *IN LIMINE* NO. 16: TO BAR REFERENCE TO PURCHASES
       OF BANKATLANTIC STOCK BY LEVAN, ABDO AND THE
       COMPANY DURING THE CLASS PERIOD ................................................................23

XVII.  MOTION *IN LIMINE* NO. 17:  TO EXCLUDE EVIDENCE AND
       ARGUMENT THAT THE CO-CLASS REPRESENTATIVES
       BENEFITED FROM THE ALLEGED FRAUD .............................................................24

CONCLUSION .................................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)...........................................................................................20

*Allred v. Corrections Corp. of America, Inc.*,
No. CV-03-2343-PHX-DGC, 2006 WL 6225070 (D. Ariz. Jan. 31, 2006)...........................21

*In re Amylin Pharm., Inc. Sec. Litig.*,
No. 01-1455, 2002 WL 31520051 (S.D. Cal. Oct. 10, 2002)...................................5

*Argent Classical Convertible Fund L.P. v. Rite Aid Corp.*,
315 F. Supp. 2d 666 (E.D. Pa. 2004)..................................................................25

*Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*,
No. 6:07-326, 2009 WL 1953649 (M.D. Fl. July 6, 2009).......................................22

*In re Broadcom Corp. Sec. Litig.*, Nos. SACV01275GLTMLGX, SACV02301GLTANX,
2005 WL 1403756 (C.D. Cal. June 3, 2005) ........................................................21

*In re Cigna Corp. Sec. Litig.*,
459 F. Supp. 2d 338 (E.D. Pa. 2006)..................................................................25

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham Inc.*,
259 F.3d 1186 (9th Cir. 2001) ........................................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................3

*Davis v. Mutual Life Ins. Co. of NY*,
6 F.3d 367 (6th Cir. 1993) ..............................................................................20

*Durham v. Whitney Info. Network, Inc.*,
2009 WL 3783375 (M.D. Fla. Nov. 10, 2009) .......................................................5

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
No. 98-2364, 2003 WL 1610781 (D. Minn. 2003)................................................13

*Grassi v. Info. Res., Inc.*,
63 F.3d 596 (7th Cir. 1995) ..............................................................................5

*Haile C. v. R.J. Reynolds Tobacco Co.*,
Nos. 88-40864, 90-4118, 1992 WL 12004362 (Bankr. S.D. Ga., Mar. 10, 1992) ...................15

*In re Hillsborough Holdings Co.*,
No. 94-889, 176 B.R. 223 (M.D. Fla. 1994).....................................................17, 18

*Huddleston v. Herman & MacLean*,
    640 F.2d 534 (5th Cir. 1981), *en banc, aff'd in part, reversed in part on other grounds by*, 459 U.S. 375 (1983) ................................................................... 5

*Hynes v. Coughlin*,
    79 F.3d 285 (2d Cir. 1996) ................................................................... 11

*In re Info. Res., Inc. Sec. Litig.*,
    No. 89-3772, 1994 WL 662531 (N.D. Ill. Nov. 21, 1994) ...................................... 17

*Ingraham v. United States*,
    808 F.2d 1075 (5th Cir. 1987) ................................................................... 16

*Inmuno Vital, Inc. v. Telemundo Group, Inc.*,
    203 F.R.D. 561 (S.D. Fla., 2001) ................................................................... 16

*Jackson v. Seaboard Coast Line R. Co.*,
    678 F.2d 992 (11th Cir. 1982) ................................................................... 16

*Kane v. Shearson Lehman Hutton, Inc.*,
    916 F.2d 643 (11th Cir. 1990) ................................................................... 25

*Kaufman v. Motorola Inc.*,
    No. 95-1069, 2000 WL 1506892 (N.D. Ill. Sept. 21, 2000) ...................................... 21

*Koch v. Koch Indus., Inc.*,
    2 F. Supp. 2d 1385 (D. Kan. 1998) ................................................................... 13

*Konkol v. Diebold, Inc.*,
    590 F.3d 390 (6th Cir. 2009) ................................................................... 5

*Latimer v. Roaring Toyz Inc.*,
    No. 08-16665, 2010 WL. 1253090 (11th Cir. Apr. 2, 2010) ...................................... 16

*McCaskill v Ray*,
    2008 WL 2222056 (11th Cir. May 30, 2008) ...................................................... 18

*McLandon v. Heathrow land Co. Ltd.*,
    No. 08-35-Orl-28, 2010 WL 336345 (M.D. Fla. Jan. 22, 2010) .................................. 19

*Miller v. Ford Motor Co.*,
    No. 01-545-FTM-29DNF, 2004 WL 4054843 (M.D. Fla., July 22, 2004) ........................... 21

*Moser v. Bret Harte Union High School*,
    366 F. Supp. 2d 944 (E.D. Cal. 1995) ........................................................ 9, 10

*Option Resource Group v. Chambers Dev. Co.*,
    967 F. Supp. 846 (W.D. Pa. 1996) ................................................................... 8

*Park v. The Equitable Life Assurance Soc. of the U.S.*,
  No. 90-5800, 1992 WL 372332 (E.D. Pa. Dec. 8, 1992)......................................3

*Randall v. Loftsgarden*,
  478 U.S. 647 (1986)......................................21

*Raymond v. U.S.A. Healthcare Ctr. - Fort Dodge, L.L.C.*,
  No. C 05-3074,2007 WL 1455858 (N.D. Iowa 2007)......................................13, 14

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
  32 F.3d 851 (3d Cir. 1994) ......................................15

*S.E.C v. Kenton Capital, Ltd.*,
  69 F. Supp. 2d 1 (D.D.C. 1998)......................................17

*S.E.C. v. McNamee*,
  481 F.3d 451 (7th Cir. 2007) ......................................17

*In re Scientific-Atlanta Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007)......................................21

*In re Sepracor Inc. Sec. Litig.*,
  233 F.R.D. 52 (D. Mass. 2005)......................................25

*Shook & Fletcher Insulation Co. v. Cent. Rigging and Contracting Corp.*,
  684 F.2d 1383 (11th Cir. 1982) ......................................16

*State Farm Mut. Auto. Ins. v. Physicians Injury Care Ctr.*,
  No. 06-1757, 2009 WL 6357795 (M.D. Fla. Oct. 29, 2009)......................................13

*Thomas v. Curry*,
  No. 2:08-738, 2010 WL 379788 (M.D. Ala. Jan. 25, 2010)......................................11

*Tinius v. Carroll Cnty Sheriff Dept.*,
  No. C03-3001, 2004 WL 3103962 (N.D. Iowa 2004)......................................13

*Trouble v. Wet Seal, Inc.*,
  179 F. Supp. 2d 291 (S.D.N.Y. 2001) ......................................17

*United States Dep't of Agric. v. Moreno*,
  413 U.S. 528 (1973)......................................9

*United States v. Anderson*,
  872 F.2d 1508 (11th Cir. 1989) ......................................4, 5

*United States v. Chisholm*,
  73 F.3d 304 (11th Cir. 1996) ......................................9

v

*United States v. Dulcio,*
  441 F.3d 1269 (11th Cir. 2006) ................................................................................22

*United States v. Merrill,*
  513 F.3d 1293 (11th Cir. 2008) ..................................................................................1

*United States v. Newell,*
  315 F.3d 510 (5th Cir. 2002) ..............................................................................15, 16

*United States v. Perez,*
  No. 01-cr-848, 2003 U.S. Dist. LEXIS 2666 (S.D.N.Y. Feb. 28, 2003) ................10

*United States v. Smith,*
  No. 05-12416, 2006 WL 2645113 (11th Cir. Sept. 15, 2006) ................................13

*Ward v. Estaleiro Itajai S/A,*
  No. 05-61821, 2008 WL 1749475 (S.D. Fla. Apr. 10, 2008) ................................21

*Watkins v. Vestil Mfg. Corp.,*
  No. 07-152, 2010 WL 883754 (N.D. Ga. Mar. 5, 2010) ..........................................9

*Wilson v. Bicycle South, Inc.,*
  915 F.2d 1503 (11th Cir. 1990) ..................................................................4, 5, 19, 24

## STATUTES

Fed. R. Evid. 401 ................................................................................................................1

Fed. R. Evid. 402 ....................................................................................................1, 6, 18

Fed. R. Evid. 403 ........................................................................................................passim

Fed. R. Evid. 404(a) ........................................................................................................14

Fed. R. Evid. 801(c) ........................................................................................................19

Fed R. Evid. 701 ..............................................................................................................22

Fed R. Evid. 702 ..............................................................................................................22

Fed. R. Evid. 803(8)(c) ....................................................................................................19

Federal Rule of Civil Procedure 8(c) ..............................................................................16

Federal Rule of Civil Procedure 26 ................................................................................22

## OMNIBUS MOTION *IN LIMINE*

Plaintiffs respectfully move *in limine* to exclude evidence and argument as set forth below pursuant to the Federal Rules of Evidence. The exhibits referenced are attached to the accompanying declaration of Mark S. Arisohn ("Arisohn Decl.").

## MEMORANDUM OF LAW

## LEGAL STANDARD

Pursuant to the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Thus, if evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," it may not permissibly come before the Court. Fed. R. Evid. 401. In assessing "relevancy," it is necessary to answer the question of whether the evidence "when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence." Notes of the Advisory Committee on Rule 401.

In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "The district court has broad discretion to determine the relevance and admissibility of any given piece of evidence" under Rule 403. *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008) (citation omitted).

## ARGUMENT

I.     **MOTION *IN LIMINE* NO. 1: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE NEGATIVE PERFORMANCE OR FAILURES OF OTHER FINANCIAL INSTITUTIONS PROFFERED FOR THE PURPOSE OF CONTRASTING THESE INSTITUTIONS TO BANKATLANTIC**

Throughout this litigation, Defendants' counsel has elicited testimony from witnesses concerning ███████████████████████████████████during and after the Class Period.[1] Specifically, witnesses have been questioned – and have testified – ███████████████████████████████████████████████████████████████████ ██████ Plaintiffs anticipate that, at the trial, Defendants may seek to present to the jury this

---

[1] The Class Period in this matter runs from November 9, 2005 through October 25, 2007, inclusive. However, Plaintiffs will not oppose Defendants' motion for summary judgment for ████████████████████████████████. *See* Arisohn Decl. at ¶ 2.

testimony or other evidence to the same effect for purposes of showing that BankAtlantic, unlike these other institutions, has survived the current economic recession that has affected the banking industry and, therefore, Defendants cannot be liable for securities fraud. As nonsensical as this line of argument sounds, it is an argument that ███████████████████████████████ ████████████████ thereby necessitating this motion.

Evidence concerning the problems or failures of other banks is irrelevant to this securities fraud action against BankAtlantic and its officers and directors for the issuance of materially false and misleading statements to the public concerning, *inter alia*, the state of BankAtlantic's Commercial Real Estate ("CRE") land loan portfolio. Plaintiffs intend to prove that Defendants knowingly and recklessly misrepresented and omitted to disclose the true risk and deteriorating credit quality of BankAtlantic's $562 million land loan portfolio between October 2006 and October 2007 and that when the truth was revealed, BankAtlantic's stock price plummeted nearly 40 percent, wiping out tens of millions of dollars in BankAtlantic's market capitalization and damaging investors. The problems or failures experienced by other financial institutions during or after the Class Period have no relevance to Plaintiffs' claims or any legitimate defenses to them.

In response to Plaintiffs' claims, Defendants have elicited testimony ████████████████ ████████████████████████████████████████ an apparent effort to show that while many of these banks have failed or sustained heavy losses, BankAtlantic, by contrast, has survived and, thus, is somehow shielded from liability for lying and concealing its true financial condition during the Class Period. *See, e.g.,* Abdo Dep. Tr., at 280:13-17, attached as Ex. A to the Arisohn Decl., ████████████████████████████████████████ *id.* at 280:23-281:18 ████████████████████████████████████ ████████████████████████████ Dep. Tr., at 217:3-218:24, attached as Ex. B to the Arisohn Decl., ████████████████████████████████████████ ████████████████████████████; *id.* at 226:22-227:5 ████████████████████ ██████████████████████

Plaintiffs are alleging – and will prove – that Defendants misrepresented and concealed the truth about BankAtlantic's land loan portfolio in violation of the federal securities laws. As such, evidence concerning the financial wherewithal of other banks does not prove or disprove anything about the Defendants' omissions and misrepresentations to the market. This is

2

especially true here, where Defendants' own damages expert, █████████ has testified that



████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ *See* ████████████, at 27:18-23, 62:21-63:8,

attached as Ex. C to the Arisohn Decl. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Excerpts of ████████, Arisohn Decl. Ex. C.

The argument that the performance of other financial institutions affected by the market wide decline in real estate is somehow relevant to whether a defendant acted culpably under the securities laws has been rejected as early as at the pleading stage in other federal securities class actions. *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1174, n.53 (C.D. Cal. 2008) ("[J]ust as the Court could take judicial notice of the fact that the country suffered from the Great Depression in the 1930s, the Court cannot use that fact to infer anything in particular about a business operating at the time.") (*quoting In re 2007 Novastar Fin. Inc. Sec. Litig.,* No. 07-0139, 2008 WL 2354367, at *1 (W.D. Mo. June 24, 2008)). Courts also have rejected more relevant inter-company comparisons. *See, e.g., Park v. The Equitable Life Assurance Soc. of the U.S.,* No. 90-5800, 1992 WL 372332, at *5 (E.D. Pa. Dec. 8, 1992) (other non-party insurer's underwriting guidelines excluded at trial concerning party insurer's alleged wrongful denial of coverage).

Even if some slight probative value could be assigned to this evidence, which it cannot, the prejudice to Plaintiffs would substantially outweigh any such value, necessitating exclusion under Fed. R. Evid. 403. That BankAtlantic is currently among the survivors in a previously overcrowded lending market is a red herring, irrelevant to whether BankAtlantic violated the

---

[2] Plaintiffs recognize that the issue of other banks' *stock price performance* during the Class Period is relevant to the computation of damages and analysis of loss causation. Accordingly, this motion does not seek to exclude testimony or other evidence on that issue.

federal securities laws *during the Class Period*, and would serve only to confuse and distract the jury from the relevant evidence and issues presented at trial. For example, Plaintiffs would expect Defendants to argue to the jury that because BankAtlantic's survival of the credit crisis somehow insulates Defendants' improper conduct under the securities laws or that Plaintiffs are exaggerating the damages inflicted by Defendants' wrongful conduct. This is precisely what Rule 403 was enacted to prevent. *See, e.g., United States v. Anderson*, 872 F.2d 1508, 1515 (11th Cir. 1989) (remanded for resentencing on other grounds) (affirming Rule 403 exclusion of evidence that struck trial judge as "purely and simply a red herring" that could cause jury confusion or distraction).

Finally, Defendants' introduction of such evidence necessarily would lead to a "trial within a trial" to determine, *inter alia*, just how similar the cited banks were to BankAtlantic; how their processes compared or contrasted; what types of loans were issued by the banks; etc. Such an irrelevant "trial within a trial" should be avoided – especially in light of Defendants' concession through their proffered expert. ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ *See, e.g., Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1510 n.10 (11th Cir. 1990) (precluding evidence under Rule 403 because a "considerable amount of extrinsic evidence [was necessary] to determine whether the incidents were sufficiently similar" to the incident at issue).

For the reasons set forth above, Defendants should be precluded from introducing any evidence concerning other financial institutions proffered for the purpose of contrasting these institutions to BankAtlantic and asking the jury to draw an inference of non-culpability from the fact that BankAtlantic remains viable.

## II.     MOTION *IN LIMINE* NO. 2: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING BANKATLANTIC'S STOCK PRICE PERFORMANCE OUTSIDE THE CLASS PERIOD

The performance of BankAtlantic's stock price outside the Class Period is completely irrelevant to this matter and should be excluded as such. At trial, Plaintiffs intend to prove that Defendants' materially misleading statements and omissions caused BankAtlantic's stock price to be artificially inflated during all or part of the Class Period and when the truth was disclosed during and at the close of the Class Period, BankAtlantic's stock price fell. Accordingly, what happened outside the Class Period – specifically how the stock performed before November 9, 2005 and after October 25, 2007 – has no relevance to Plaintiffs' claims. *See, e.g., In re Amylin*

*Pharm., Inc. Sec. Litig.*, No. 01-1455, 2002 WL 31520051, at *2 (S.D. Cal. Oct. 10, 2002) (post-class period share price increase deemed irrelevant even at pleading stage); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 404 (6th Cir. 2009) (post class period events "do not shed any light on whether the Defendants, at the time the earnings statements and SEC certifications were made, knew of or were reckless regarding the falsity of those statements or certifications"); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *en banc, aff'd in part, reversed in part on other grounds by*, 459 U.S. 375 (1983) (admission of evidence concerning post-class period events period constituted error); *Durham v. Whitney Info. Network, Inc.*, 2009 WL 3783375, at *14 (M.D. Fla. Nov. 10, 2009) (post-class period developments held to be irrelevant); *cf. Grassi v. Info. Res., Inc.*, 63 F.3d 596, 603 (7th Cir. 1995) (post-class period price increase evidence was admitted because it was relevant to disprove the plaintiffs' central claim – that the defendant company did not have "strong fundamentals").

Even if some slight probative value could be assigned to this evidence, which it cannot, the prejudice to Plaintiffs would substantially outweigh any such value, necessitating its exclusion pursuant to Fed. R. Evid. 403. Like the Defendants' ███████████████ discussed above, BankAtlantic's stock price performance outside the Class Period is a red herring irrelevant to whether Plaintiffs suffered damages as a result of Defendants' securities law violations *during the Class Period*, and would serve only to confuse and distract the jury from the relevant evidence and issues presented at trial. *See, e.g., Anderson*, 872 F.2d at 1515 (remanded for resentencing on other grounds) (affirming Rule 403 exclusion of evidence that struck trial judge as "purely and simply a red herring" that could cause jury confusion or distraction). Furthermore, Defendants' introduction of such evidence would further prejudice Plaintiffs as it would involve a "trial within a trial" over the reasons for BankAtlantic's stock price movements before and after the Class Period. *See, e.g., Bicycle South*, 915 F.2d at 1510 n.10 (affirming Rule 403 preclusion of evidence that would necessitate a trial within the trial). This is precisely what Rule 403 was designed to prevent.

For the reasons set forth herein, Defendants should be precluded from introducing any evidence concerning the performance of BankAtlantic's stock price outside the Class Period.

**III.    MOTION *IN LIMINE* NO. 3: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING DEFENDANTS' NON-RECEIPT OF FUNDS PURSUANT TO** ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

Among the irrelevant side issues that Defendants have broached during discovery, and will likely seek to introduce at trial, is the fact that BankAtlantic did not ▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ That Defendants did not receive ▄▄▄▄▄ is irrelevant to whether they violated the federal securities laws by issuing material misstatements to or concealing information from the public. The Court should therefore exclude any reference ▄▄▄▄▄ by the Defendants.

During the deposition of ▄▄▄▄▄▄▄ counsel for Defendants asked on cross-examination whether BankAtlantic ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄ Dep. Tr., Arisohn Decl. Ex. A, at 280:13-22.

The jury must decide whether Defendants issued materially false and misleading statements and omissions concerning BankAtlantic's land loan portfolio during the Class Period. The relevant facts in that inquiry relate to, *inter alia*, (i) the truth, falsity and completeness of the Defendants' public statements; (ii) the materiality of Defendants' alleged misstatements and omissions of material fact; and (iii) Defendants' actual or imputed mental state at the time of those statements and omissions. Accordingly, BankAtlantic's post-Class Period financial health ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ is irrelevant and should be excluded. Fed. R. Evid. 402.

Additionally, the dearth of relevance associated with BankAtlantic's involvement or lack of ▄▄▄▄▄▄▄▄▄▄▄▄▄ is substantially outweighed by the potential prejudice to Plaintiffs if it were admitted. Fed. R. Evid. 403. Defendants likely will seek to confuse the jury by advancing the dual *non sequiturs* that: (i) because BankAtlantic did ▄▄▄▄▄▄▄▄▄▄▄▄▄ *after* the Class Period, it must have been a financially healthy institution, and (ii) because BankAtlantic was a (purportedly) financially healthy institution *after* the Class Period, it must

not have materially misrepresented the risks in its land loan portfolio *during* the Class Period or have suffered losses in its stock price due to fraud.  Such tortured reasoning will serve only to distract the jury and unduly prejudice Plaintiffs.  Indeed, the state of BankAtlantic's post-Class Period financial health is not part of this litigation.   Rather, Plaintiffs have alleged and will prove that Defendants deliberately and/or recklessly concealed the true risk inherent in the Company's land loan portfolio during the Class Period, thereby causing a decline in the stock price.  This theory of liability does not at all depend on whether BankAtlantic



Defendants incurred the skepticism of analysts, investors and debt-holders, who criticized the Company's decision to make a dilutive rights offering.[6]

In light of the foregoing and the facts that the Class Period ended (1) approximately a year before the Company ███████████████████ and (2) a year and a half before it elected to ████████████████████████████████████████████ Plaintiffs respectfully request that all evidence related to ██████████████████████████████████.

## IV.   MOTION *IN LIMINE* NO. 4: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING BANKATLANTIC'S LACK OF ████████████████

During this litigation, Defendants argued that because BankAtlantic has███████████████ ██████████████████████ that somehow insulates them from liability for issuing materially misleading statements and omissions to the public concerning BankAtlantic's $562 million land loan portfolio. Plaintiffs anticipate that Defendants will proceed similarly during trial and respectfully request that the Court prohibit it for the following reasons. *First*, such facts are irrelevant. ████████████████████████████rarely probative of anything; a company may leave ████████████████"as is" for any number of reasons. *Second*, claiming that BankAtlantic's financial results did not█████████████is nothing more than an unsubstantiated assumption being passed off as evidence█████████████████████████ ██████████████████████████████████████████████[7] As

████████████████████████████████████████████████,

Arisohn Decl. Ex. G ████████████████████████████████ ███████████████████████████████

[6] BankAtlantic Q3 2009 Earnings Conf. Call, Oct. 22, 2009 (Investor Wilson Yeagley: "One last question here, you are very successful on your capital raise of $76 million, but unfortunately for shareholders like myself, we end up being diluted here substantially if we didn't participate in the rights offering, and then unfortunately here in the third [quarter] you eat up about two thirds of that capital raise. How [is] that strategy going to work out for us if we were subject to these kind of losses and that diminution of the new capital?"). Arisohn Decl. Ex. H.

[7] ██████████████████████████████████████████████████████t, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ The opposite is true. *See Option Resource Group v. Chambers Dev. Co.* 967 F. Supp. 846, 851 (W.D. Pa. 1996) ("the SEC's factual findings, including its

such, the SEC ███████████████████████████. For these reasons, evidence and argument concerning ███████████████████ should be excluded.

Defendants incorrectly point to the fact that BankAtlantic ████████████████ █████ as evidence of Defendants' non-culpability. *See, e.g.,* Friedman Dep. Tr., attached as Ex. I to the Arisohn Decl., at 95:1-22 (BankAtlantic controller testifying ████████████████ ███████████████████████ *First*, █████████████████████████ ███████████ is a voluntary admission by a company that the statements were materially in error. *See* Statements of Financial Accounting Standards ("SFAS") No. 154, *Accounting Changes and Error Corrections.* Accordingly, █████████████████████████ BankAtlantic to avoid such an admission and more favorably position itself in the face of private and governmental proceedings. *Second,* Generally Accepted Accounting Principles ("GAAP") does not require ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

Here, the financial results at issue ran from 2005–2007. There is no reason to believe that current or prospective investors (or the market, generally) is "relying" on the three to five year old financial statements at issue. Accordingly, BankAtlantic was and is not compelled by GAAP ██████████████ simply due to the passage of time. Because Defendants may have refrained from ████████████████████ for any number of reasons, *e.g.,* to protect itself in this litigation and the SEC's investigation or because BankAtlantic technically████ because ████████████████nder applicable GAAP, ██████████████████ ████████ has little, if any, probative value and should be excluded at trial.

Even if BankAtlantic's ██████████████████ were remotely relevant, the prejudicial effect of the admission of such evidence substantially outweighs its probative value. There can be no dispute that unsubstantiated assumptions passed off as evidence are misleading and improper and, thus, inadmissible. *See, e.g., United States Dep't of Agric. v. Moreno,* 413 U.S. 528, 535 (1973) (rejecting "wholly unsubstantiated assumptions" advanced by counsel); *United States v. Chisholm,* 73 F.3d 304, 307-308 (11th Cir. 1996) (court's consideration of unsubstantiated assumption reversible error); *Watkins v. Vestil Mfg. Corp.,* No. 07-152, 2010 WL

___

opinions and conclusions, are admissible under [Federal Rule of Evidence] 803(8)(C)" so long as they are deemed "trustworthy").

883754, at *2 (N.D. Ga. Mar. 5, 2010) (expert's reliance on unsubstantiated assumptions negates the relevancy of his testimony); *cf. Moser v. Bret Harte Union High School*, 366 F. Supp. 2d 944, 953 (E.D. Cal. 1995) ("By consistently presenting untruths and half-truths, Defendant and its counsel obstructed the fair, just, and expeditious resolution of the proceedings."). Defendants' attempt to characterize ███████ ██ ███████ ██ s support for Defendants' non-culpability is the exact type of unsubstantiated assumption that Rule 403 was meant to preclude. ███████████████████████████████████████████████████ ████████████ ███████████████████████████████████████

For the reasons set forth herein, Defendants should be precluded from introducing any evidence or argument concerning BankAtlantic ████████████████████████

## V. MOTION *IN LIMINE* NO. 5: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING PLAINTIFFS' EXPERT ███████████ ██████ S FORMER EMPLOYER

Plaintiffs intend to offer expert testimony at trial by ████████████████████, on issues relating to materiality, loss causation and damages. From 1985-1998, ███ █ ████ worked for ███████████████████ (██████. Ten years after █████████ left █████ in February 2008, █████ sole owner, ███████, pled guilty to perjury relating to sworn testimony and representations that he made to courts in the course of his work as an expert witness. Specifically, ███████ acknowledged that, on several occasions, he falsely stated under oath that he had been retained on a non-contingent basis when, in fact, he had been retained on a contingent basis and that he had inflated fee requests in other cases to make up for those cases in which his client was unsuccessful and thus did not pay on the contingent agreement. Although ██████ had no involvement in or knowledge of ███████████ criminal activity, ████████████████████████████████████████████████ ██████aintiffs anticipate that Defendants will engage in the same improper conduct at trial.

Seeking to introduce evidence concerning the criminal activities of others to impugn the integrity of a witness is properly excluded under Rules 401 and 403 as such evidence is not relevant and any slight probative value is substantially outweighed by the prejudice its introduction would cause. *See, e.g., United States v. Perez*, No. 01-cr-848, 2003 U.S. Dist. LEXIS 2666, at *32 (S.D.N.Y. Feb. 28, 2003) (criminal record of witness's brother properly excluded under Rule 403). This is particularly so here as ████████ unequivocally testified

██████████████████████████████████████████████████████████
████████████████████████████████. █████ Dep. Tr., attached
as Ex. J to the Arisohn Decl., at 21:12-19 ("█████████████████
████████████████████████████████); *id.* at 22:16-19
("█████████████████████████████████
████████████████████; *id.* at 23:2-7 ("█████████████████
███████████████████████████████████████ Dep.
Tr., Arisohn Decl. Ex. J.  The mention of ██████████████████ could
cause the jury improperly to disregard or minimize her testimony at great prejudice to Plaintiffs.
As such, Defendants should be precluded from offering evidence or argument concerning ███
████████████████[8]

## VI.   MOTION *IN LIMINE* NO. 6: TO EXCLUDE EVIDENCE AND ARGUMENT ██████
## ████CONCERNING███████████████████████████████████c

From June 25, 2007 through October 12, 2007, █████████████████
████████████████████████████████████████████
████████████████████████████and issued a report containing its
findings on or about ███████████████████████.  During this litigation, Defendants
have offered testimony interpreting the ████████████████████, including what
they believe it entailed and the findings and recommendations contained in ████████████.
Plaintiffs anticipate that Defendants may offer evidence at trial that ███████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████.  Unlike the SEC, however, the OTS is not the arbiter of what public
companies must disclose and therefore does not require such disclosure or render a finding of

---

[8] Plaintiffs anticipate that Defendants will attempt to crowbar this prejudicial information
into the trial under the guise of Federal Rule of Evidence 608 (Evidence of Character and
Conduct of Witness).  Such action would be improper. ████████████████████████
████████ Defendants have no good faith basis to ask such questions at trial – a prerequisite to
questioning under Rule 608.  *Thomas v. Curry*, No. 08-738, 2010 WL 379788, at *5 (M.D. Ala.
Jan. 25, 2010) (Rule 608 questioning requires "a good-faith basis."); *Hynes v. Coughlin*, 79 F.3d
285, 294 (2d Cir. 1996) (same).

securities fraud.  Any argument to the contrary would serve only to mislead the jury, and should be excluded.[9]



\* \* \*

The SEC, on the other hand, (which is currently investigating BankAtlantic for securities fraud) is specifically charged with routing out securities fraud and assessing the sufficiency of publicly traded company disclosures, like those at issue here:

> The SEC oversees the key participants in the securities world, including securities exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and protecting against fraud.

http://www.sec.gov/about/whatwedo.shtml (last viewed on June 16, 2010).



---

[9] Given that the central claim in this action involved the credit quality of BankAtlantic's land loan portfolio in 2006 and 2007, and ███████████████ Plaintiffs' motion does not seek to exclude the findings contained ███████ other than the finding relating to the ███████████ as set forth in Point X *infra*.



*See* ▮▮▮▮▮▮▮, Arisohn Decl. Ex. K.

Noticeably absent from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮any reference to BankAtlantic's public disclosures. As such, any evidence or argument contending that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮in BankAtlantic's public disclosures would serve only to mislead the jury and, therefore, should be excluded under Rule 403.

## VII.   MOTION *IN LIMINE* NO. 7: TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE DISMISSAL OR WITHDRAWAL OF ANY CLAIMS, THEORIES OF LIABILITY OR ALLEGATIONS

Defendants should be prohibited from introducing evidence about or referring to the fact that any claim, theory of liability or allegation was dismissed or withdrawn. We anticipate that in ruling on Defendants' summary judgment motion, the Court will dismiss the insider trading claims against Levan and Abdo, eliminate any claim of fraud based on misrepresented loan reserves and shorten the Class Period. *See* Arisohn Decl. at ¶ 2 (Plaintiffs are not opposing these aspects of ▮▮▮▮▮▮▮▮▮▮▮.

There can be little debate that the fact of withdrawal or dismissal of any claim or theory of liability is not itself relevant to the merits of claims remaining for trial. Moreover, courts have long recognized the potential for prejudice in permitting reference at trial to the fact that claims have been dismissed or withdrawn. *See, e.g., State Farm Mut. Auto. Ins. v. Physicians Injury Care Ctr.,* No. 06-1757, 2009 WL 6357792, at *1 (M.D. Fla. Oct. 29, 2009) (granting motion *in limine* to exclude references to withdrawn causes of action and legal theories); *United States v. Smith,* No. 05-12416, 2006 WL 2645113, at * 2 (11th Cir. Sept. 15, 2006) (denying plaintiff's motion *in limine* to admit evidence that certain charges had been "no actioned, dismissed or declined for prosecution"). *Koch v. Koch Indus., Inc.,* 2 F. Supp. 2d 1385, 1409 (D. Kan. 1998) (granting motion *in limine* to preclude references or evidence concerning dismissal or withdrawal of claims); *EZ Dock, Inc. v. Schafer Sys., Inc.,* No. 98-2364, 2003 WL 1610781, at *15 (D. Minn. 2003) (prohibiting reference to dismissed claims); *Tinius v. Carroll Cnty Sheriff Dept.,* No. C03-3001, 2004 WL 3103962, at *2 (N.D. Iowa 2004) (precluding defendants from discussing or making any reference to the fact that parties have been dismissed from case).

Furthermore, Plaintiffs' request is narrowly tailored to avoid the exclusion of facts that might have some bearing on the claims remaining to be tried and thus, should be granted. *See Raymond v. U.S.A. Healthcare Ctr. - Fort Dodge, L.L.C.*, No. C 05-3074, 2007 WL 1455858, at *3 (N.D. Iowa 2007) (granting motion *in limine* and observing that the plaintiff "seeks to exclude only *references to her dismissed claims* and *references to the claims* that she filed with the Iowa Civil Rights Commission. She does not seek to exclude evidence of any *facts* relating to the circumstances surrounding her discharge") (emphasis in the original).

## VIII.   MOTION *IN LIMINE* NO. 8: TO EXCLUDE EVIDENCE OF THE INDIVIDUAL DEFENDANTS GOOD CHARACTER AND HONESTY

Defendants should be precluded from adducing any evidence about the supposed good character and honesty of A. Levan, Jack Abdo, J. Levan, James White or Valerie Toalson in an effort to refute the allegations that they issued false and misleading statements in this case.  This type of testimony or evidence is prohibited at trial: "[e]vidence of a person's character or trait of character is not admissible for the purposes of proving action in conformity therewith." Fed. R. of Evid. 404(a).

## IX.   MOTION *IN LIMINE* NO. 9: TO BAR EVIDENCE OF AND REFERENCE TO RELIANCE ON COUNSEL AND ACCOUNTANTS

Defendants should be precluded from introducing evidence of or referring to reliance on the advice of counsel and accountants because (1) Defendants' Answer fails to plead reliance on counsel as an affirmative defense (DE 100); (2) Defendants' Rule 26(a) disclosures do not identify documents that Defendants intended to rely on for their defense of this action that constitute or support an  "advice of counsel" defense; (3) Defendants' Rule 26(a) disclosures do not identify any accountant witnesses or documents that Defendants intended to rely on in support of their defenses; (4) Defendants' responses to document requests asserted blanket attorney client privilege objections preventing Plaintiffs from learning what advice, if any, Defendants actually received from counsel; and (5) Defendants asserted ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The case law is clear -- Defendants can not use the attorney client privilege as both a shield and sword.  They cannot on the one hand claim that they are relying on the advice of counsel to exonerate themselves while simultaneously refusing to inform Plaintiffs about the specifics of such advice. Similarly, Defendants cannot assert a defense based on the findings or advice of accountants when they failed to make required disclosures.

14

Here, counsel in this action for Defendants is Stearns Weaver Miller Weissler Alhadeff & Sitterson ("Stearns Weaver"). (see, e.g., Arisohn Decl. Ex. L); see, e.g., Arisohn Decl. Ex. M); (see, e.g., Arisohn Decl. Ex. N). Plaintiffs' claims cover all of these areas of inquiry, which have been substantially blocked from discovery by Defendants' assertions.

Specifically, during discovery Defendants in response to Plaintiffs' discovery demands. Indeed, Defendants' as the basis for withholding or limiting discovery on thousands of documents. See Arisohn Decl. at ¶ 3. Additionally, during no fewer than ten depositions, Defendants asserted as the basis for denying Plaintiffs the right to inquire into relevant testimony. See Arisohn Decl. at ¶ 4. In short, Defendants have prevented Plaintiffs from gathering facts relating to the claims by hiding behind the

In addition, Defendants also failed to alert Plaintiffs that they intend to rely on the advice of accountants. For example, Defendants failed to include any representative from PricewaterhouseCoopers ("PwC"), BankAtlantic's auditor, on Defendants' Initial Disclosures as a person "likely to have discoverable information that the disclosing party may use to support its claims of defenses." Defendants' Initial Disclosures attached to the Arisohn Decl. as Ex. O. As such, no representatives of PwC were deposed. However, now -- after depositions have concluded -- Defendants argue that they relied on their accountants' advice as a defense to their actions. See, e.g., Arisohn Decl. Ex. P, at 2-3

Under the circumstances, Defendants should be precluded from introducing evidence about or referring to their reliance on accountants or counsel.

**A.    Evidence of or Reference to Reliance on the Advice of Counsel**

**1.    Defendants Failed to Assert Reliance on the Advice of Counsel as a Defense in Their Answer and Thus Cannot Now Rely On It**

Reliance on advice of counsel is an affirmative defense. See *Haile C. v. R.J. Reynolds Tobacco Co.* Nos. 88-40864, 90-4118, 1992 WL 12004362 (Bankr. S.D. Ga., Mar. 10, 1992)

(referring to reliance on advice of counsel as an affirmative defense); *see also Rhone-Poulenc Rorer v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir. 1994) (also referring to advice of counsel as an affirmative defense); *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) ("Reliance on advice of counsel is an affirmative defense, an assertion more positive and specific than a general denial of criminal intent.").

Federal Rule of Civil Procedure 8(c) requires that "affirmative defenses" be set forth in a party's first responsive pleading ("in responding to a pleading, a party must affirmatively state any avoidance of affirmative defense"). Failure to plead an affirmative defense generally results in a waiver of that defense. *See Latimer v. Roaring Toyz Inc.,* No. 08-16665, 2010 WL 1253090, at *14 (11th Cir. Apr. 2, 2010); *see also Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1012 (11th Cir. 1982) ("failure to include an affirmative defense in the answer...will normally result in waiver of the defense.); *Shook & Fletcher Insulation Co. v. Cent. Rigging and Contracting Corp.,* 684 F.2d 1383, 1386 (11th Cir. 1982) (finding that defendants waived affirmative defense by failing to properly raise it in their Answer and precluded defendants from raising it further in the action).

The purpose behind Federal Rule of Civil Procedure 8(c) is to give the plaintiff adequate notice prior to trial of the defenses that defendant intends to assert. *See Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir. 1987) (In essence, "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.") (citation omitted).

Here, Defendants forfeited their right to raise the defense of reliance on the advice of counsel because they failed to assert it in their Answer (DE 100).

> **2.     Defendants Precluded Discovery on the Issue of "Reliance on Advice of Counsel" and Should Be Precluded from Now Raising It as a Defense**

Defendants' Rule 26(a) disclosures do not identify documents that Defendants intended to rely on in their defense of this matter that constitute or support an "advice of counsel" defense. *See* Defendants' Initial Disclosures, Arisohn Decl. Ex. O. Additionally, Defendants made a conscious litigation decision to withhold documents and to prevent deposition testimony on the basis of attorney client privilege and the work product doctrine. This precluded Plaintiffs from discovery on any issue stemming from the advice Defendants received from counsel related to the claims at issue. Accordingly, Defendants should be precluded from introducing evidence of or referring to their reliance on counsel.

16

As noted above, Defendants cannot use the attorney client privilege as both a "shield" and a "sword" in furtherance of an argument that it relied in good faith on advice from its attorney. *See Inmuno Vital, Inc. v. Telemundo Group, Inc.* 203 F.R.D. 561, 564 (S.D. Fla., 2001) (quoting *Cox v. Admin. U. S. Steel & Carnegie,* 17 F.3d 1386, 1418 (11th Cir. 1994)); *see also S.E.C v. Kenton Capital, Ltd.,* 69 F. Supp. 2d 1, 10 (D.D.C. 1998) (refusing to evaluate defendants' claim of good faith reliance on advice of counsel because defendants attempted to assert the defense of good faith reliance on advice of counsel while simultaneously refusing to divulge during discovery the substance of the communications with their attorneys); *S.E.C. v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of–counsel defense without producing the actual advice from an actual lawyer.") (quoting *Markowski v. S.E.C.,* 34 F.3d 99, 104-05 (2d Cir. 1994)).

Defendants cannot have it both ways; having hidden the substance of their conversations with counsel on the very issue of their reliance, they cannot also assert that they relied upon advice of counsel to mitigate their *scienter*. *See In re Info. Res., Inc. Sec. Litig.* No. 89-3772, 1994 WL 662531, at *3 (N.D. Ill. Nov. 21, 1994) (securities class action where court relied on "persuasive authority" in ruling that individual defendant officers should not be allowed to rely on advice of counsel while asserting attorney-client privilege and instructing defendants to refrain from asserting such a defense at trial).

By this same standard, parties, like Defendants here, who withhold privileged materials during discovery, are precluded from asserting advice counsel at trial. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham Inc.,* 259 F.3d 1186, 1196 (9th Cir. 2001) (precluding advice of counsel defense where party refused to answer questions about that advice until the "eleventh hour"); *see also Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (party waived any available advice of counsel defense by objecting, based on attorney-client privilege, to discovery requests).

**B.  Defendants Are Precluded From Raising Reliance on Advice of Accountants as a Defense**

Similar to the attorney-client privilege, Defendants should be barred from injecting reliance on the findings and advice of accountants into a case at this stage, especially when they have given no indication that such a defense would be asserted. *See generally  In re Hillsborough Holdings Co.*,  No. 94-889, 176 B.R. 223, 238-39 (M.D. Fla. 1994) (a party waives

17

the attorney client and accountant client privilege when that party injects into the case an issue that which in fairness requires an examination of these protected communications). Here, Defendants failed to alert Plaintiffs that their accountants were individuals who may have discoverable information. *See* Defendants' Initial Disclosures, Arisohn Decl. Ex. O. As a result, the parties did not depose any accountants in this action. Indeed, Defendants never injected the concept of reliance on accountant advice ████████████████████████████ ████ *See* Excerpts of Defendants' Corrected Memorandum in Support of their █████████ ████████████ Arisohn Decl. Ex. P, at 2-3 ████████████████████████ ████████████████████████████████████████

████████████ As such, Plaintiffs never had a fair opportunity to examine the protracted communications between Defendants and their accountants and should be precluded from asserting a reliance on advice of accountants as a defense in this action. *See generally Hillsborough,* 176 B.R. at 238-39.

Furthermore, Defendants' assertions of reliance on accountant advice relate in large part to Defendants' calculation of the allowance for loan losses. As such, these arguments are irrelevant as Plaintiffs will not introduce evidence that BankAtlantic's allowance for loan losses was understated. *See McCaskill,* 2008 WL 2222056, at *1 (evidence that is not relevant is inadmissible); Fed. R. Evid. 402.

For the same reasons Defendants should be precluded from asserting at trial that their accountants never criticized the sufficiency of the allowance for loan losses. Aside from being irrelevant, evidence of an absence of criticism is speculative at best and should be excluded for that reason alone.

For the forgoing reasons Defendants should be precluded from introducing evidence of or referring to the advice of counsel and accountants at trial.

## X.   MOTION *IN LIMINE* NO. 10: TO BAR EVIDENCE AND REFERENCE TO ████████████████████████

Plaintiffs will not introduce evidence that BankAtlantic's Allowance for Loan and Lease Losses ("ALLL") was understated. Accordingly ██████████████████████████████ ████████████ would not be relevant and is therefore inadmissible under Rule 402. *See McCaskill v. Ray,* Nos. 07-12896, 13724, 2008 WL 2222056, at *1 (11th Cir. May 30, 2008) (evidence that is not relevant is inadmissible).

Additionally, evidence that ███████████████████████████████████████

███████████ should be excluded as hearsay.  Under the hearsay rule, a "statement, other than

one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted" is hearsay and should be excluded. Fed R. Evid. 801(c). The public

records and reports exception to the hearsay rule (Fed. R. of Evid. 803(8)(c)) does not support

admissibility of this evidence.  In relevant part, the rule provides:

> Public records, reports, statements or data compilations, in any
> form, of public offices or agencies, setting forth in civil actions and
> proceedings and against the Government in criminal cases, factual
> findings resulting from an investigation made pursuant to authority
> granted by law, unless the sources of information or other
> circumstances indicate a lack of ***trustworthiness.*** Fed. R. Evid.
> 803(8)(C) (emphasis added).

Accordingly, reports of government agencies are subject to scrutiny by the court, and

those lacking trustworthiness are excluded as hearsay. *See McLandon v. Heathrow land Co. Ltd.*

No. 08-35-Orl-28, 2010 WL 336345, at *4 (M.D. Fla. Jan. 22, 2010) (finding reports of

Government agencies are subject to scrutiny by the court and those lacking trustworthiness

should be excluded from evidence).

Here, ███████████████████████████████████. As noted in the

██████████████████(Arisohn Decl. Ex. K), BankAtlantic ███████████████



██████████████ finding is admitted, Plaintiffs would be required to introduce evidence

of untrustworthiness, namely that ████████████████████████████████

████████████████████████████ Proof of these side issues would

needlessly sap the resources of the Court and parties and cause undue delay and potential

confusion of the jury.

Evidence of the ███████████████████████████████████████

should therefore be excluded under Rule 403. *See, e.g., Bicycle South*, 915 F.2d at 1510 n.10

(precluding evidence under Rule 403 because a "considerable amount of extrinsic evidence [was necessary] to determine whether the incidents were sufficiently similar" to the incident at issue).

**XI.    MOTION ████████ NO. 11: TO BAR EVIDENCE THAT ANY ███████████████RECANTS, DISAVOWS, DOES NOT RECALL OR DENIES ANY STATEMENT ATTRIBUTED TO HIM OR HER IN THE COMPLAINT**

Defendants deposed ████████████████████ (six cited in the First Amended Consolidated Complaint ("FACC") and one cited in the dismissed Consolidated Amended Complaint). *See* Arisohn Decl. at ¶ 21. Defendants' sole purpose in deposing the █████ was to establish inconsistencies between the █████ present testimony and the statements attributed to them in the FACC and thereby attack Plaintiffs' counsel and their investigation into this action. With one possible exception,[10] Plaintiffs do not intend to present testimony at trial from any███. Accordingly, evidence of a █████ prior inconsistent statements is not relevant. Exclusion of such evidence is required under Fed. R. of Evid. 402.

Additionally, Defendants should be prohibited from adducing evidence or arguing that the FACC was based on███ statements that the███now disavow because such is probative of nothing relevant and would be highly inflammatory and unfairly prejudicial to Plaintiffs. Fed. R. of Evid. 403. Likewise, Defendants should be barred from introducing any evidence or argument on this issue in an attempt to divert the jury's attention through allegations of Plaintiffs' attorney misconduct. *See, e.g., Davis v. Mutual Life Ins. Co. of NY*, 6 F.3d 367 (6th Cir. 1993) (trial court correctly excluded irrelevant and prejudicial evidence of alleged misconduct by plaintiff's attorney under Fed. R. of Evid. 403). And, as set out in great length in ██████████████████████████████████████████the allegations of misconduct are baseless in any event.

**XII.    MOTION *IN LIMINE* NO. 12: TO BAR EVIDENCE OF OR REFERENCE TO AGGREGATE DAMAGES TO THE CLASS**

The Supreme Court held that the measure of damages for Section 10(b) claims is "actual damages." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 150 (1972). "Actual

---

[10] The one possible exception to this is████████████. Plaintiffs, in an abundance of caution, in part, because████████████s from the courthouse, have designated certain portions of█████deposition testimony as potential trial testimony. If introduction of Plaintiffs' designated portions of█████testimony would open the door to admissibility of████████████████████████████Plaintiffs would withdraw the██████deposition designations.

damages" has been interpreted liberally in Section 10(b) cases, and equates to "out of pocket" loss. *Id; see also Randall v. Loftsgarden*, 478 U.S. 647, 662 (1986) (noting the compensatory and deterrent purposes of 10(b)).

The proper way to arrive at an "actual damage number in securities litigation is to present evidence of damages on a per share basis." *See In re Scientific-Atlanta Inc. Sec. Litig.,* 571 F. Supp. 2d 1315, 1343 (N.D. Ga. 2007) (citing *In re Broadcom Corp. Sec. Litig.*, Nos. SACV01275GLTMLGX, SACV02301GLTANX, 2005 WL 1403756, at *3 (C.D. Cal. June 3, 2005) (allowing the fact finder to determine per share damages per day and employing a claims administration process to supply the remaining information to calculate total damages)); *Kaufman v. Motorola Inc.,* No. 95-1069, 2000 WL 1506892, at *2 (N.D. Ill. Sept. 21, 2000); *In re Vivendi Universal, S.A. Sec. Litig.*, 02 cv 05571 (RJH – HBP) (S.D.N.Y.) (DE 998, jury verdict form.)

Indeed, since the amount of aggregate damages will not be known in this case until the completion of a claims administration following trial, which involves the calculation of each claimant's damages on a per share basis, the amount of aggregate damage is purely speculative until then. Such speculative evidence is inadmissible especially since discussion at trial of an aggregate damages number in the many millions of dollars is likely to distract the jury and unfairly prejudice Plaintiffs.

Accordingly, Defendants should be barred from introducing evidence of or referring to any amount of aggregate damages that might result from a verdict in favor of Plaintiffs.

## XIII. MOTION *IN LIMINE* NO. 13: TO BAR REFERENCE TO ANY FEE ARRANGEMENTS BY PLAINTIFFS' ATTORNEYS

There can be little debate that counsels' fee arrangement with its client is in itself not relevant to the merits of the claims. Moreover, courts have long recognized the potential for prejudice in permitting reference at trial to the type of fee arrangement plaintiffs have with their counsel. *See, e.g., Miller v. Ford Motor Co.*, No. 01-545-FTM-29DNF, 2004 WL 4054843 (M.D. Fla., July 22, 2004) (granting *in limine* motion to exclude evidence of contingent fee arrangement between plaintiff and their attorneys); *Ward v. Estaleiro Itajai S/A* No. 05-61821, 2008 WL 1749475 at, *2 (S.D. Fla. Apr. 10, 2008) (granting plaintiff's motion to exclude evidence of attorney's fees); *Allred v. Corrections Corp. of America, Inc.* No. CV-03-2343-PHX-DGC, 2006 WL 6225070 (D. Ariz. Jan. 31, 2006) (barring defendants from mentioning

21

that case is being handled on a contingent basis).  Accordingly, any such argument or evidence should be excluded.

## XIV.   MOTION *IN LIMINE* NO. 14: TO BAR REFERENCE TO PROMOTIONAL MATERIAL OF PLAINTIFFS' COUNSEL

The Court should bar any reference to evidence and argument concerning the websites or other promotional materials of Plaintiff's Counsel.  For example, Defendants should be prohibited from referring to Labaton Sucharow LLP's marketing materials relating to the subprime meltdown as not relevant to any matter related to this case under Rule 402.[11] Furthermore, the complete dearth of probative value of such materials is substantially outweighed by the confusion to the jury and prejudice it would cause to Plaintiffs.  Fed. R. of Evid. 403.

Finally, the subject matter of counsel's promotional materials cannot be argued to amount to an admission by a party opponent or party's representative under any reading of Fed. R. of Evid.  801(d)(2).  Accordingly, the statements are also inadmissible hearsay.

## XV.   MOTION *IN LIMINE* NO. 15: TO BAR EVIDENCE OR "EXPERT" TESTIMONY FROM JEFFREY MINDLING, MARCIA SNYDER, HENRY BARNES, VALERIE TOALSON, JAMES WHITE, JAY McCLUNG, DAVID FRIEDMAN, ALAN LEVAN, JARETT LEVAN AND JACK ABDO

During discovery, Defendants' counsel stated that "due to the nature of this case" they may offer opinion evidence from many of their fact witnesses and the Individual Defendants (*see* April 28, 2010 email from A. Schachter to M. Arisohn, Arisohn Decl. Ex. Q).  Defendants' position fails for several reasons  First, Fed. R. of Evid. 701 specifically bars admissibility of lay opinion testimony based on "specialized knowledge" which Defendants' employees and the Individual Defendants may claim to have here.  *See, e.g.*, *United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006) ("it is error to admit opinion testimony of lay witnesses based on specialized knowledge"); *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-326, 2009 WL 1953649, at *4 (M.D. Fla. July 6, 2009).

Second, the admission of such lay opinion testimony would evade the reliability requirements and scrutiny of Fed. R. of Evid. 702 as well as the disclosure requirements of Fed. R. Civ. P. 26.

---

[11] Plaintiffs have a good faith basis for their concern that Defendants may seek to introduce such evidence.

Third, the admission of lay opinion testimony from Defendants and BankAtlantic employees would greatly prejudice Plaintiffs unfairly further warranting its exclusion.  Fed. R. of Evid. 403.

## XVI.   MOTION *IN LIMINE* NO. 16: TO BAR REFERENCE TO PURCHASES OF BANKATLANTIC STOCK BY LEVAN, ABDO AND THE COMPANY DURING THE CLASS PERIOD

Defendants may seek to refer to the acquisition of BankAtlantic stock by individual defendants Alan Levan and Jack Abdo and by BankAtlantic itself.  References to such stock acquisition should be prohibited: in the case of Levan and Abdo there is no evidence supporting their stock purchases during the Class Period, and in the case of the corporation, its purchases pursuant to a stock repurchase program are not relevant and evidence of such purchases will likely confuse and mislead the jury and lead to an undue waste of time.



The expert report from Defendants' damages expert, ██████████████████████ t ███████████████████████████████████████████████ l ██████████████████████████ (*see* ████ Exhibit U, Arisohn Decl. Ex. R). ███████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ (*id.*).  As the ██████████ t makes certain, █████████████ ████████████████████████████████████████████ ████████████████████████ Similarly, at the beginning of the relevant period ████████████████████████████████████████████████ █████████████████████

Since there can be no evidence that either Levan or Abdo acquired BankAtlantic stock during the relevant period, Defendants should be prohibited from arguing that they did.

During the Class Period, BankAtlantic itself repurchased and retired approximately 5,400,000 shares of BankAtlantic Class A common stock. Defendants will seek to introduce evidence of these purchases and argue it undermines Plaintiffs' proof of *scienter*.  The evidence should be excluded and the argument not allowed.  Admissibility of such evidence would require a trial within a trial on the corporate motivation for engaging in a stock repurchase plan. Corporations engage in buybacks for a variety of reasons that have nothing to do with whether its management is engaging in securities fraud: propping up its stock price and increasing earnings per share for example. ██████████████████████████████████████████



attached as Arisohn Decl. Ex. S.

Issues such as the motivation for initiating the share repurchase, the effect on the Company's equity, as well as its effect on the Company stock price and earnings per share would all lead to a mini "trial within a trial" if admitted and should be avoided. *See, e.g., Bicycle South*, 915 F.2d at 1510 n.10 (precluding evidence under Rule 403 because a "considerable amount of extrinsic evidence [was necessary] to determine whether the incidents were sufficiently similar" to the incident at issue).

Any debatable probative value that evidence of a corporate buyback may have would therefore be substantially outweighed by its danger of unfair prejudice to Plaintiffs, confusion of the issues and misleading the jury, resulting in undue delay and a waste time to delve into complex and remote collateral issues. Thus the evidence should be excluded pursuant to Rule 403.

## XVII. MOTION *IN LIMINE* NO. 17:  TO EXCLUDE EVIDENCE AND ARGUMENT THAT THE CO-CLASS REPRESENTATIVES BENEFITED FROM THE ALLEGED FRAUD

Defendants' damages expert,



Plaintiffs separately move *in limine* to exclude evidence and argument that Co-Class Representatives benefited from the alleged fraud on the ground of relevance and also because the concept is premised on an erroneous and impermissible theory.

As noted in                                                       the jury in this case will determine whether Defendants engaged in a securities fraud that damaged an *entire class* of investors as Plaintiffs have alleged.  The total amount that any single investor – including the Co-Class Representatives – lost, is not at issue in a trial on class-wide damages, is irrelevant to

the jury's determination and would only serve to confuse the issues. For this reason alone the evidence concerning the purchases and sales of BankAtlantic stock by the Co-Class Representatives and whether they lost money or not should be excluded under Fed. R. of Evid. 402.

In addition, the theory underlying the concept that the Co-Class Representatives benefited from the alleged fraud has been squarely rejected by the courts, including the Eleventh Circuit. ▮▮▮▮▮▮ methodology is to net all of a trader's buys and sales to determine an aggregate profit or loss. Courts have almost universally rejected this netting technique in favor of a "transaction-based" methodology. See *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350 (E.D. Pa. 2006). A transaction-based methodology treats each trade separately and "allow[s] claims for unprofitable transactions ... without offsetting the recoverable loss with gains from profitable transactions."; See Also *Argent Classical Convertible Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 680 (E.D. Pa. 2004); *In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52, 54 (D. Mass. 2005) ("I find a transaction-based methodology, which allows for claims for unprofitable transactions without offsetting that recoverable loss with gains from profitable transactions to be more consistent with the provisions of the statute and the rule.").

The law is no different in the Eleventh Circuit. *See Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 646 (11th Cir. 1990) ("there is no support to be found under federal or Florida Law for the 'netting' theory. . .").

For these reasons, Defendants should be precluded from adducing evidence or arguing that Co-Class Representatives benefited from the alleged fraud.

## CONCLUSION

For the foregoing reasons, Plaintiffs' omnibus motion *in limine* should be granted in its entirety.

25

Date: June 18, 2010

Respectfully submitted,

/s/Mark S. Arisohn
**LABATON SUCHAROW, LLP**
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
marisohn@labaton.com
shallowell@labaton.com
*Co-Class Counsel for Class Representatives and
the Class and Lead Counsel for Lead Plaintiff
State Boston Retirement System*

**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**
Andrew L. Zivitz, admitted *pro hac vice*
Matthew Mustokoff, admitted *pro hac vice*
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
azivitz@btkmc.com
mmustokoff@btkmc.com

*Co-Class Counsel for Class Representatives and
the Class*

Ronald Shindler, Esq.
Fla. Bar No. 781703
**FOWLER WHITE BURNETT P.A.**
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com

*Liaison Counsel for Class Representatives and
the Class and for Lead Plaintiff State-Boston
Retirement System*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via CM/ECF.

/s/ Ronald D. Shindler
Ronald D. Shindler

## SERVICE LIST

Adam M. Schachter
Eugene E. Stearns
Gordon M. Mead, Jr.
**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**
150 W. Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305)789-3400
Facsimile: (305) 789-3395
aschachter@stearnsweaver.com
estearns@stearnsweaver.com
gmead@sternsweaver.com