# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61542-CIV-UNGARO/SIMONTON

IN RE BANKATLANTIC BANCORP, INC.
SECURITIES LITIGATION

_____/

## DEFENDANTS' MOTION TO DECERTIFY

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eugene E. Stearns
Richard B. Jackson
Adam M. Schachter
Cecilia D. Simmons
Gordon M. Mead, Jr.
Andrea N. Nathan
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395

# TABLE OF CONTENTS

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     The Facts Leading up to this Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Pre- Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      The Truth Is Revealed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                1.      The Rule 11 Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                2.      The Substantial Alteration of the Class Period and Damage Claims . . . . . 7

III.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      State Boston and Erie County Are Not Adequate Class Representatives . . . . . . 11

                1.      Still Further Attempts to Alter the Class Period Further Aggravate
                        the Adversity Between State Boston and Erie County and Other Class
                        Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.      State Boston and Erie County Benefitted From The Alleged Fraud . . . . . 13

                3.      Rule 11 Violations Render State Boston and Erie County Inadequate . . . 17

        B.      State Boston and Erie County Do Not Have Typical Claims . . . . . . . . . . . . . . . 18

IV.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


        CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        SERVICE LIST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

# TABLE OF AUTHORITIES

*Almonor v. BankAtlantic Bancorp, Inc.*,
    261 F.R.D. 672 (S.D. Fla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Arenson v. Broadcom Corporation*,
    No. 02cv301, 2004 WL 3253646 (C.D. Cal. Dec. 6, 2004).. . . . . . . . . . . . . . . . . . . . . 14

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wagner v. Lehman Bros. Kuhn Loeb Inc.*,
    646 F. Supp. 643 (N.D. Ill. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cordova v. Lehman Bros., Inc.*,
    237 F.R.D. 471 (S.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grimes v. Fairfield Resorts, Inc.*,
    No. 06-14363, 2007 WL 245128 (11th Cir. Jan. 30, 2007) . . . . . . . . . . . . . . . . . . . . . 17

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*North American Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*,
    593 F.2d 642 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Phillips v. Klassen*,
    502 F.2d 362 (D.C. Cir. 1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pickett v. Iowa Beef Processors*,
    209 F.3d 1276 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Powell v. Carey Int'l, Inc.*,
    No. 05cv21395, 2006 WL 4562105 (S.D. Fla. Mar. 27, 2006). . . . . . . . . . . . . . . . . . . 17

*Prado-Steiman v. Bush*,
    221 F.3d 1266 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

*Richardson v. MacArthur*,
    451 F.2d 35 (10th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Wolf v. Frank*,
    477 F.2d 467 (5th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(v). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 16

15 U.S.C. § 78bb(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 28(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 78u-4(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Defendants BankAtlantic Bancorp, Inc., John E. Abdo, Alan B. Levan, Jarett S. Levan, Valerie C. Toalson and James A. White respectfully move to decertify the class in this action. The grounds supporting this motion are set forth below.

## I.     Introduction

On October 20, 2009, this Court certified a class of investors who purchased Bancorp stock between November 9, 2005 and October 25, 2007, along with appointing State Boston Retirement System and Erie County Employees Retirement System as the class representatives and approving their selection of counsel.  DE 153.  At the time, the then (and still) operative First Amended Consolidated Complaint had just survived a motion to dismiss (albeit for reasons that are now the subject of a pending Rule 11 motion), discovery had just started, and — as far as we knew — Plaintiffs were intending to prosecute the claims that were pled in that First Amended Consolidated Complaint and for which a class had been certified.  Things have changed since then.

Having previously jettisoned all claims from the first year of the class period, and thereafter splitting the remaining class period into two separate damage claims, State Boston and Erie County have now, in their trial brief filed October 1, whittled down the claim even further:

> if the jury were to find no liability with respect to the allegedly false April 26, 2007 statements, but *did* find liability with respect to the allegedly false July 25, 2007 statements, Plaintiffs would still be entitled to recover for the $3.15 of inflation per share in Bancorp's stock price from July 25 to October 26, 2007.

DE 500 at 14 (emphasis in original).  The tactics employed here are not overly complex; with no evidence of fraud in April even according to their own theories about what should have been disclosed and the Court's finding of falsity in July keeping that claim on life-support, Plaintiffs simply have no choice but to frame the claim in this manner.   Putting aside that there is not a scintilla of damage evidence to support such a claim, and ignoring the obvious and severe prejudice

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

to Defendants of having to defend against a class claim that was neither pled nor certified, the more immediate issue is the impact on the class, specifically the pervasive conflicts that are now evident.

In fact, as we sit here with a jury in the box, State Boston and Erie County are attempting to prove up a claim of artificial inflation in the price of Bancorp stock during a time in which they did not purchase a single share of Bancorp stock, but rather were unloading those shares at remarkably steady clip.  Thus, not only do State Boston and Erie County have no damages to speak of — in fact, they would never have even been class members under the current formulation of the claim — but, perhaps more importantly, their stock sales also utterly destroy any notion of reliance by State Boston and Erie County, perfectly illustrating one of the broader points of the defense in this case — that investors were not and could not have been misled by Bancorp's disclosures.  With interests adverse to the class they purport to represent, State Boston and Erie County are inadequate class representatives and their claims are atypical.

Moreover, even using Plaintiffs' prior incarnation of their claim — two different class periods with differing amounts of constant inflation — State Boston and Erie County are still inadequate class representatives because they actually benefitted from the alleged fraud.  This unavoidable reality creates a fundamental conflict that precludes them from continuing as class representatives in this case.  In fact, this Court has already confronted this precise situation in the related ERISA class action.  *See Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672 (S.D. Fla. 2009).

The conflict, however, does not end with State Boston and Erie County.  Their counsel are in the same untenable position, having to choose between protecting the interests of State Boston and Erie County — upon whom they rely for a steady flow of these cases — and the interests of the class.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower  ▪  150 West Flagler Street, Suite 2200  ▪  Miami, FL 33130  ▪  (305) 789-3200

With sanctions orders raining down upon them, counsel has pushed forward despite the conflicts now quite apparent, exposing these claims as ones brought by lawyers for lawyers.

Under these circumstances, the class as certified cannot be sustained under Rule 23. Decertification is therefore required.

## II.     The Facts Leading up to this Motion

During the October 7 pretrial conference, the Court expressed some concern that the issues raised herein had not been brought to the Court's attention sooner.  We show below that this is simply not the case.  When the motion for class certification was filed, we had no legal or factual basis to oppose it based on the facts that had been pled.  When adequacy issues arose as to the class representatives and their counsel, we addressed them seriously and promptly.  And, when Preston's expert report revealed that State Boston and Erie County suffered no damages, our expert pointed that out.  Now, with State Boston and Erie County having finally moved this case to a place where they can no longer represent the class that was certified, we bring this motion to the Court, fully recognizing our reluctance to do so given the significant prejudice that flows to Defendants as a result of decertification, but understanding the Court's stated concerns that it must independently ensure that the class representatives and their counsel continue to fulfill their obligations and responsibilities under Rule 23.

### A.     Pre- Class Certification

State Boston, in its very first filing in this case, spoke immodestly of its qualifications and abilities to represent and lead the class in the prosecution of this action.  *See* DE 26.  Deeming itself "precisely the type of large, sophisticated institutional investor . . . envisioned by the PSLRA,"  State Boston touted its qualifications for being appointed lead plaintiff in this case, including principally

its prior experience as a lead plaintiff in these sorts of cases.  *Id.* at 8.  State Boston also touted the qualifications of the lawyers it selected and retained to represent the class in this case.  *Id.*   The alleged fraud itself was summarized by State Boston as arising out of Bancorp's claims that the Company had significantly increased its commercial real estate loan portfolio, but failed to disclose Steeplechase and other at risk loans.

On April 22, 2008, after being appointed lead plaintiff by the Court, State Boston filed a Consolidated Amended Complaint.  *See* DE 51.  That pleading largely sought to manipulate (mostly through avoidance) the clear language in Bancorp's public filings and, for its substantive allegations, relied supposedly on seven confidential witnesses.  The Court eventually dismissed the Amended Complaint without prejudice, finding that it failed to plead facts that gave rise to a strong inference that each of the Defendants acted with scienter in making the alleged material misrepresentations and omissions.  *See* DE 70.

On January 12, 2009, still pre-class certification, State Boston filed the First Amended Consolidated Complaint.  *See* DE 80.  The most obvious difference from its predecessor was the additional and more detailed confidential witness allegations.  State Boston sought to meet its pleading burden by attributing alleged facts to six so-called confidential witnesses.  In moving to dismiss the First Amended Consolidated Complaint, Defendants were constrained by the usual presumptions afforded a plaintiff at the motion to dismiss stage.  Although Defendants attacked the confidential witness allegations as they were, there was no means through which to challenge the veracity of those allegations, or to confirm whether the allegations were the product of a fair, meaningful and sufficient investigation by Lead Counsel.  With the benefit of hindsight, it is clear that Lead Counsel's actions turned the entire motion to dismiss exercise into a charade.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

On May 11, 2009, the Court denied the motion to dismiss, relying almost entirely on the new confidential witness allegations:

> The Amended Complaint cures the most pertinent deficiencies in Plaintiff's earlier complaint – namely, that Plaintiff's earlier allegations rested upon statements from confidential witnesses about whom the Court knew nothing, and that many of the allegations were vague and failed to show what each of the individual defendants knew or should have known during the class period.

DE 94.  The Court was particularly satisfied with Lead Counsel's allegations regarding the period of time during which the confidential witnesses were employed at BankAtlantic:

> the Amended Complaint contains sufficient information regarding these confidential witnesses, including their employment duties, whether they were employed during the Class Period and how they obtained direct knowledge of the facts they were reporting . . . Plaintiff has provided information that assures the Court that the confidential witnesses were employed with the Company at relevant times and were in close proximity to the offending conduct.

*Id.*  The Court then expressly cited more than a dozen of the confidential witness allegations for supplying the facts sufficient to withstand a motion to dismiss.  *See id.* (citing First Am. Compl. ¶¶ 61, 65, 67, 69, 70, 72, 84, 85, 86, 87, 103, 105, 119, 120 and 121).  As would be revealed during discovery, however, those facts would prove to be nothing more than the fabrications of counsel.

**B.     Class Certification**

On September 22, 2009, with the First Amended Consolidated Complaint intact and the identities of their confidential witnesses safely shrouded in secrecy,[1] State Boston and Erie County moved to certify the class. DE 147.  Defendants, although believing the claim to be wholly without merit and rightly suspicious of the confidential witness allegations upon which that claim was based, did not object to class certification because it would have been a waste of the parties' and the Court's

---

[1] Months earlier, in July 2009, Defendants had served interrogatories seeking the identities of the confidential witnesses.  Plaintiffs objected and Defendants moved to compel. DE 151.  That motion remained pending at the time the motion for class certification was filed.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

time to do so.  Simply put, there were no legal or factual grounds upon which to oppose the motion.

Accordingly, on October 20, 2009, the Court granted the motion and certified a class of persons

under Rule 23(b)(3) consisting of:

> All persons or entities who purchased or otherwise acquired shares of the Class A
> common stock of BankAtlantic Bancorp, Inc. between November 9, 2005 and
> October 25, 2007 and were damaged thereby. Excluded from the Class are
> Defendants, the officers and directors of BankAtlantic Bancorp, Inc. at all relevant
> times, members of their immediate families and their legal representatives, heirs,
> successors or assigns and any entity in which Defendants and/or any of their
> immediate families have or had a controlling interest.

DE 153.

### C.    The Truth Is Revealed

Less than a month after the class was certified, Magistrate Judge Simonton issued an Order

granting Defendants' motion to compel answers to interrogatories seeking the identities of the

confidential witnesses.  DE 167.  Plaintiffs then argued vigorously to this Court, both via objections

and emergency motion, that they should not be compelled to disclose those names or the information

that had allegedly been revealed by the witnesses.  Finally, on December 7, 2009, Plaintiffs disclosed

the confidential witnesses' identities after being ordered to do so by this Court.  DE 179.

It was only after this long overdue disclosure — which occurred well after the class had been

certified — that the picture of inadequacy of State Boston, Erie County and their counsel began to

develop.  We recount those developments below.

### 1.    The Rule 11 Violations

Defendants' Rule 11 motion, which remains pending before Magistrate Judge Simonton, is

effectively a motion for decertification as well.  Although the motion expressly seeks monetary

sanctions against Plaintiffs along with the dismissal with prejudice of the First Amended

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Consolidated Complaint — relief which, if granted, would moot any class certification issues — it also, in no uncertain terms, argues that State Boston, Erie County and their counsel are wholly inadequate representatives of the class in this case.  Indeed, to recount the series of Rule 11 violations in this case is to paint a portrait of inadequacy:

- Making false allegations in federal pleadings, and continuing to make those allegations after the falsity was revealed.

- Failing to make any inquiry, let alone a reasonable one, into the factual basis of the allegations being attributed to confidential witnesses.

- Allegations from confidential witnesses who were not employed during the class period or worked in a department having nothing to do with the claims in this lawsuit.

- Secretly recording conversations with unrepresented confidential witnesses and then ignoring the very information covertly obtained.

- Presenting and commanding the execution of false affidavits from unrepresented individuals.

Given the gravity of the Rule 11 violations in this case, Defendants did not, at the time, believe a motion to decertify would do justice to the circumstances.  Whether the resolution of the sanctions motion addresses the intertwined class representation adequacy issues remains to be seen. But the fact remains that issues regarding the adequacy of the class representation in this case were raised long ago, albeit on somewhat different grounds.

### 2.    The Substantial Alteration of the Class Period and Damage Claims

The radical transformation of this case continued after the Rule 11 violations came to light. Indeed, it seems as early as February 2010, Plaintiffs and their damages expert, Candace Preston, were privately discussing a new shorter class period with some claims to be abandoned and other claims to be advanced in a form far different from those that were part of the case and class that was

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

originally certified.[2]  Plaintiffs elected to unveil their new class and claims to Defendants several months later in April 2010, without having asked for permission from the Court to do so.  And, then, upon actually filing their motion seeking leave to amend and seeing that motion denied (DE 242), Plaintiffs responded by simply ignoring the Court's denial and prosecuting the claims as if their motion had been granted.

On April 16, 2010 — six days before filing the unsuccessful motion for leave to amend — Plaintiffs served the expert report of Candace Preston.  Preston's report apparently presumed the motion for leave to amend would be granted.  Indeed, quite incredibly, as if the operative First Amended Consolidated Complaint and Order granting class certification did not even exist, Preston begins her report by defining a class period that excluded the entire first year of the class that had been certified.  For what remains, Preston opines there was constant, fraud-induced inflation for two six months periods ($0.37 per share between October 2006 and April 2007, and $3.15 per share for the period beginning in April 2007 and running until October 2007).[3]

After seeing, for the first time, Plaintiffs' statement of the amount of artificial inflation supposedly caused by the fraud in this case — at least for what remained of the case — Defendants were able to analyze the purchase and sale transactions of State Boston and Erie County.

---

[2] *See* Preston Deposition Transcr. at 7.

[3] This is what is left of her opinion at least.  She initially opined that the inflation from October 19, 2006 to November 28, 2006 was $0.37; that the inflation from November 29, 2006 to April 25, 2006  was $0.74; and the inflation from April 26, 2007  to October 25, 2007 was $3.71.  The differences between her initial opinion and what this Court found supportable are immaterial for purposes of this Motion.  Adjusting the numbers to reflect Candace Preston's current opinion, excluding those portions of her testimony that have been excluded, changes the size but not the direction of the effect — both State Boston and Erie County are still beneficiaries of the fraud that Plaintiffs allege.  Charts depicting Plaintiffs' financial benefit from their Bancorp stock transaction are attached as Composite Exhibit A to Defendants' October 1, 2010 Trial Brief.  DE 509.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Defendants' damages expert, Michael Keable, did so in his April 28, 2010 expert report. Therein, he opined that both State Boston and Erie County benefitted from the alleged fraud in this case, and quite handsomely at that. *See* Expert Report of Michael A. Keable ¶¶ 28-30, Exs. R and S.

State Boston purchased most of its Bancorp shares in late 2006 and early 2007, during which time, according to Candace Preston, the alleged inflation was a relatively low $0.37 per share. State Boston then sold most those shares later in 2007, during which time Preston believes there was a much higher artificial inflation of $3.15 per share. Doing the math, State Boston *benefitted* from the alleged fraud by nearly $600,000 by selling shares before the second class period ended and thus, before "the truth came out." Erie County's purchases and sales follow the same pattern. It too benefitted from the fraud it claims occurred.

On April 22, 2010, after having submitted expert reports that effectively granted themselves permission to amend, Plaintiffs filed a motion with the Court seeking permission to do so. DE 208 and 210. In denying the motion, the Court noted that it was filed nine months after the deadline for amending pleadings and appears to be "an attempt to avoid adverse summary judgment rulings on the claims they seek to abandon." DE 242. With respect to the class, the Court observed that, if amendment were allowed, "notice to class members would have to be sent and new responsive pleadings would have to be filed." *Id.* Thus, as it stands, there are substantial number of class members in this case that have, without their knowledge or consent, been deprived of their claims as previously pled and certified.

The concessions made by Plaintiffs in Preston's report and in their proposed amended pleading had profound implications for the case going forward. Plaintiffs conceded they had no claim for securities fraud against the Defendants for the period from November 9, 2005 through

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

October 18, 2006. Plaintiffs conceded they have no evidence supporting claims for insider trading against Alan Levan and Jack Abdo; indeed, the undisputed evidence shows that they increased their saleable holdings during the period from November 9, 2005 through October 29, 2007. Plaintiffs also conceded that BankAtlantic's non-accrual loans, allowance for loan loss provisions, and financial statements were accurately calculated and reported throughout the class period. The Court entered summary judgment accordingly. DE 411.

Now, approaching trial with a claim that is a shadow of its former self, Plaintiffs filed trial briefs that backed even further away from the case that was originally pled and certified. Unable to sustain a claim arising out of a single, unified class period, Plaintiffs advanced arguments that splintered the class further, suggesting that the fraud could start, stop and begin again throughout the now even shorter class period, and somehow do so against a backdrop of an expert opinion based on constant inflation. Plaintiffs' still further revised theories expose a virtual smorgasbord of conflict permutations for the purported class representatives.

If this motion is denied, the substantive infirmities of these ever shifting claims will be amply demonstrated at trial. As this Court has recognized, however, the implications for the class must be addressed independently.

## III.    Argument

Called to defend a case such as this which seeks damages for a large class of shareholders, Defendants are entitled to deal with adversaries who, in fact, represent the people on whose behalf they purport to speak. Apparent defects in the authority of adversaries exposes Defendants to the burdens of litigation without the certainty of an end. In this case, the absence of authority of State Boston and Erie County and their counsel to represent the class is evident. As noted in their motion

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

for class certification, adequate class representatives must show "that [they] will fairly and adequately protect the interests of all class members."  DE 126 at 12 (citations omitted).  State Boston and Erie County cannot adequately fulfill those obligations if their own interests (as well as the interests of their chosen counsel) are in conflict with those of the class as a whole.  Because State Boston and Erie County turn out to have a financial interest in this case that fundamentally differs from those of the class that was certified, they are not adequate and typical class representatives.  And, likewise, because class counsel itself must choose between its particular clients and the class as a whole, they too are rendered inadequate to represent the class. Decertification of the class is required.

### A.      State Boston and Erie County Are Not Adequate Class Representatives

1.    <u>Still Further Attempts to Alter the Class Period Further Aggravate the Adversity Between State Boston and Erie County and Other Class Members</u>

What started as a secret abandonment of claims during the entire first year of the class period has since grown with the eve of trial argument that Candace Preston's damage period testimony did not preclude argument that Plaintiffs' counsel could argue for still shorter class periods as firewalls against claims that, with every day, were exposed as shams.  The apparent attempt to narrow the claim to exclude all but the group of investors who purchased Bancorp stock between July 25, 2007 and October 25, 2007, leaves State Boston and Erie County without a claim at all, as neither of them purchased a single share of Bancorp stock after May, and, in fact, began dumping their Bancorp shares going forward.  Their interests are therefore adverse to the class they purport to represent.

The current predicament is only heightened by the fact that this case is no longer in pretrial. At trial, where State Boston and Erie County will have to present their asserted claims to a jury, it is now plain that those claims are ones that State Boston and Erie County would not have had

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

standing to assert in the first place. As a matter of pure logic, it strains credulity to even think they will prosecute those claims with the same vigor as a class representative with something actually at stake. Of course, it is for precisely that reason why a lead plaintiff and class representative must have standing to assert the claim in order to lead and represent the class. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (stating that "we have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (internal quotations and citation omitted); *see also Prado-Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) (noting that "without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class").

Any assertion by Plaintiffs that they intend to pursue claims stretching from October 2006 to October 2007 rings hollow. For example, reading the transcript of the October 6 pretrial conference shows page after page of Plaintiffs' counsel beating the drum for a claim beginning in July and then ending in October. *See* October 6 Transcript at 28-32. Their trial briefs, as well, could not make it any clearer as to the scope of the claim to be tried, having focused with laser precision on an alleged fraud that purportedly began in July and ended in October. *See* DE 500 at 14. All signs point to a Plaintiffs' case focusing on an alleged fraud that begins months after these particular Plaintiffs bought their last shares of Bancorp stock.

The problem becomes even more acute when considering the role of Plaintiffs' counsel at trial. As a starting point, the Reform Act expressly provides that the lead plaintiff shall, "subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, it is the duly designated lead plaintiff that selects and supervises the lawyer and

-12-

thereby the prosecution of the action, and not the other way around.  *See Cordova v. Lehman Bros., Inc.*, 237 F.R.D. 471, 477 (S.D. Fla. 2006) ("PSLRA seeks to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not the lawyers") (citations and internal quotations omitted). Against this backdrop, counsel will have to choose sides between furthering its clients interests and thereby prejudicing the class or furthering the class interests and thereby becoming adverse to its own clients. Either result is unacceptable.  The mere fact that counsel is presented with this choice in the first instance creates a fundamental issue of adequacy of representation of the class.

2.     <u>State Boston and Erie County Benefitted From The Alleged Fraud</u>

The class must also be decertified because of the fundamental conflict created by State Boston and Erie County having financially benefitted from the alleged fraud in this case.  As indicated above, without the first year of the originally certified class period, applying Candace Preston's damage analyses and calculations to the purchases and sales of State Boston and Erie County — which, of course, is something Defendants could not do at the time Plaintiffs moved for class certification — shows that both of them profited handsomely from the alleged fraud in this case.  For an ordinary class member, this is something that might be resolved through the claims process.  In this case, however, State Boston and Erie County are far from ordinary, requiring that they possess interests that are aligned with, not antagonistic to, the rest of the class.

That class, which presumably includes many people that did not sell their stock and thus did not realize any benefit from the alleged fraud, should be represented in this case, and certainly at trial, by a similarly situated class representative.  State Boston and Erie County do not meet that standard.

-13-

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

The Securities Exchange Act, as amended by the Reform Act, places the burden on a plaintiff "of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." 15 U.S.C. § 78u-4(b)(4).   The Supreme Court has similarly emphasized the common law roots of a claim under Section 10b-5, making clear that losses are limited to those "actually cause[d]" by the fraud.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

Indeed, it is a fundamental tenet of tort law that a plaintiff can recover only if he was harmed by a defendant's wrongdoing.  As courts have made clear in the securities litigation context (even pre-*Dura*), the first step in evaluating the recovery of any particular investor should be to determine whether that investor was a net winner or net loser from the fraud.  Stated simply, purchases at inflated prices generate inflation losses, while sales at inflated prices generate inflation gains.  Accordingly, where an investor's inflation gains exceed inflation losses, there are no damages. *See Arenson v. Broadcom Corporation*, No. 02cv301, 2004 WL 3253646 (C.D. Cal. Dec. 6, 2004).  As the Court further explained:

> The authority is clear: where a plaintiff engages in multiple purchases and sales during the period in which the stock is inflated, the proper damages methodology is to take all the inflation losses resulting from all purchases at the inflated price and reduce the amount by all the inflation gains resulting from sales at the inflated price.

2004 WL 3253646, at *2.

Circuit court decisions prior to *Dura* also support this conclusion.  The Fifth Circuit, in an opinion that is binding precedent in this Circuit, affirmed the dismissal of a lead plaintiff's individual Section 10b-5 claim where the individual plaintiffs "had already made a profit of approximately $20,000." *Wolf v. Frank*, 477 F.2d 467, 478-79 (5th Cir. 1973). ("Rule 10b-5 only provides for recovery of actual damages, and not for loss of speculative profits . . . plaintiffs are unable to show that they suffered any damages compensable under Rule 10b-5").   Other appellate courts have

-14-

followed suit.  *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 908-11 (9th Cir. 1975) ("If the stock is resold at an inflated price, the purchaser-seller's damages, limited by section 28(a) of the Act, 15 U.S.C. § 78bb(a) to 'actual damages,' must be diminished by the inflation he recovers from his purchaser.");  *Richardson v. MacArthur*, 451 F.2d 35, 43-44 (10th Cir. 1971) ("In determining the amount of damages, it is a well recognized rule that the complaining party is entitled to be made whole.  That is, he is entitled to be compensated only to the extent that he receives less than he was entitled to under the agreement. He cannot, however, recover in excess of that to which he was entitled in making whole");  *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (offsetting gains and losses is a "better measurement of the true damages sustained by the plaintiffs").

The only circumstance where the Class Representatives would have a damage claim would be if a jury found in favor of Plaintiffs for the first portion of the class period — from October 2006 to April 2007 — but against Plaintiffs for the second portion of the class period.  Thus, the interest of  Class Representatives — and their attorneys were they not solely interested in themselves — is antithetical to that of the class as a whole.

In agreeing that the damage claims of class representatives can be adjudicated post-trial in an adversary proceeding under the Seventh Amendment, we must also note that this circumstance has left this case in a posture where there is no adequate representation of the class by a class representatives. The "adequacy of representation" analysis encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representative will adequately prosecute the action."  *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003).  As the Court made clear in its order denying class certification in the related ERISA action, a class representatives' having benefitted from the

-15-

alleged fraud creates a fundamental conflict between the representative and those members of the class who did not so benefit, thereby rendering the party that has benefitted an inadequate class representatives.  *See Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672 (S.D. Fla. 2009). Moreover, the Class Representatives' selling shows that, contrary to what Plaintiffs must prove at trial, these particular class members were not at all misled by the supposedly misleading statements made during April and July 2007.  Indeed, something in the total mix of information convinced these Plaintiffs to sell and sell. Quoting the Eleventh Circuit's *Valley Drug* opinion, this Court noted:

> A fundamental conflict of interest exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class. In such a situation, the named representative cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members.

*Almonor*, 261 F.R.D. at 676.  This Court went on to note that "[a]n antagonistic interest does not need to *actually* exist between the representative and the class in order for class certification to be inappropriate; a *potential* antagonistic interest is enough."  *Id.* (citations omitted).

Here, like in *Almonor*, under one of the possible trial outcomes, the Class Representatives "benefitted from the same conduct that harmed other members of the class, [and thus they] cannot prosecute the interests of the class."  *Almonor*, 261 F.R.D. at 676.  Here, as well, Defendants conduct "arguably conferred a net benefit on Plaintiff because they allowed Plaintiff to receive more than [they] would have if the stock had not been artificially inflated."  *Id.* at 676.  "Meanwhile the class members who did not divest their interests in Bancorp stock during the class period during the period of artificial inflation arguably suffered a harm" as a result of  Defendants' alleged misconduct . . . In this way, the class collapses into distinct groups of winners and losers, as there is a fundamental

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

conflict between those who were harmed and those who were benefitted" by the alleged misconduct. *Id.* at 676-77.

Put another way, the Class Representatives' economic interests and objectives differ in a significant way from the economic interests and objectives of class members they purport to represent. *See Almonor* 261 F.R.D. at 676-77; *Valley Drug,* 350 F.3d at 1190; *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (holding that "a class cannot be certified when it . . . consists of members who benefit from the same acts alleged to be harmful to other members of the class"); *Grimes v. Fairfield Resorts, Inc.*, No. 06-14363, 2007 WL 245128, at *3 (11th Cir. Jan. 30, 2007) (noting that it is not only economic conflicts of interest that will defeat certification, but that the conflicts inquiry must focus on whether the same conduct harmed some class members and benefitted others); *Phillips v. Klassen*, 502 F.2d 362, 367 (D.C. Cir. 1974) (stating that the foundation of maintaining a class action is undermined when the complained of activity confers harms or benefits, depending on the circumstances of the individual).

3.     Rule 11 Violations Render State Boston and Erie County Inadequate

Whatever case or claim Plaintiffs end up presenting at trial, the fact remains they will have gotten to this point by way of Rule 11 violations that are nothing short of career ending.   If this Court finds that Plaintiffs committed even one of the litany of ethical violations raised by Defendants' Rule 11 motion, it would be hard to envision that a corresponding finding of inadequate class representation would not follow soon thereafter.

The law supports this conclusion.   It is black letter law that "the trial court has the continuing duty to see that the class is adequately represented. To perform this duty, the trial court must constantly scrutinize the class attorney to see that he is adequately protecting the interests of the class.   If, at any time, the trial court realizes that class counsel should be disqualified, it is required

-17-

to take appropriate action. It must either enter orders eliminating the problem or decertify the class."

*North American Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 645 (5th Cir. 1979).

In *Powell v. Carey Int'l, Inc.*, No. 05cv21395, 2006 WL 4562105 (S.D. Fla. Mar. 27, 2006), Judge Seitz, in refusing to allow a class action proceed, noted that counsel's "conduct [gave] the Court serious pause as to whether it can rely on counsel or their ability to adequately represent the interests of a class." 2006 WL 4562105, at *5.   Judge Seitz also observed that "Rule 23 permits the Court to consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (citations omitted). *Cf. Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F. Supp. 643 (N.D. Ill. 1986) (disqualifying attorney from representing class based on ethical rules violations).  Here, the Rule 11 violations by State Boston, Erie County and their counsel, at the very least, disqualify them from representing the class in this case.

### B.     State Boston and Erie County Do Not Have Typical Claims

Not only do State Boston and Erie County's April onward stock sales and profits make them fundamentally inadequate class representatives, but those sales also utterly destroy any notion of reliance by State Boston and Erie County.  Thus, insofar as their particular circumstances perfectly illustrate one of the broader points of the defense in this case — that investors were not and could not have been misled by Bancorp's disclosures — their claims are rendered atypical.  Thus, although the jury will decide that issue class wide, we do know, as a matter of undisputed fact, that State Boston and Erie County were misled by nothing, but rather fully understood the risks faced by the Company and sold their shares accordingly.

While innocent investors may establish damages through a class action on a "fraud on the market" theory, and while a class action is a vehicle to try disputes where the common issues

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

overwhelm the uncommon ones, a resolution of common issues does not remove the uncommon ones. In this instance, in light of the theory of the case adopted after Plaintiffs were forced to abandon the false allegations attributed to confidential witnesses, it is quite clear that these plaintiffs began selling their shares shortly after April 2007, when the current theory is that investors were fraudulently persuaded to buy.

## IV.     Conclusion

State Boston and Erie County, through their actions in this case, present this Court with serious, fundamental adequacy issues with respect to the class they purport to represent, in addition to confronting insurmountable reliance issues in proving up their own atypical claims in this case — claims which, of course, we now know they do not have. Given the unique procedural backdrop of this motion — we are in the middle of trial — this Court should grant this motion, enter an order decertifying the class and schedule a prompt evidentiary hearing on Defendants' pending Rule 11 motion. Absent a resolution of the underlying Rule 11 issues going to the utter lack of factual support for the claims in the first place — something that will be shown to be the case at trial — no other counsel or class members would be willing to step in to represent the class — or at least they should not do so.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395


s/ Eugene E. Stearns
EUGENE E. STEARNS
Florida Bar No. 149335
estearns@stearnsweaver.com
RICHARD B. JACKSON
Florida Bar No. 898910
rjackson@stearnsweaver.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@stearnsweaver.com
CECILIA D. SIMMONS
Florida Bar No. 469726
csimmons@stearnsweaver.com
GORDON M. MEAD, JR.
Florida Bar No. 49896
gmead@stearnsweaver.com
ANDREA N. NATHAN
Florida Bar No. 016816
anathan@stearnsweaver.com

*Attorneys for Defendants*

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using EM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by EM/ECF or through other approved means.

s/ Adam M. Schachter     <br>
ADAM M. SCHACHTER

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

# SERVICE LIST

*In re BankAtlantic Bancorp, Inc. Securities Litigation*
Case No. 07-61542-CIV-Ungaro/Simonton
United States District Court, Southern District of Florida

Mark Arisohn
marisohn@labaton.com
Serena Hallowell
shallowell@labaton.com
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Telephone: 212-907-0877
Facsimile:  212-818-0477
*Lead Counsel for Lead Plaintiff State Boston
Retirement System*

Ronald D. Shindler
rshindler@fowler-white.com
Fowler White Burnett P.A.
1395 Brickell Avenue
14th Floor
Miami, FL 33131
Telephone: 305-789-9222
Facsimile: 305-789-9201
*Liaison Counsel for Lead Plaintiff State Boston
Retirement System*

Andrew Zivitz
azivitz@btkmc.com
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile:  610-667-7056
*Attorney for Plaintiff*

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200