**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 07-61542-CIV-UNGARO

*IN RE* BANKATLANTIC BANCORP, INC.
SECURITIES LITIGATION

_____/

## ORDER ON MOTION FOR SANCTIONS AND MOTION FOR HEARING

_____THIS CAUSE is before the Court upon Defendants' Motion for Sanctions. (D.E. 698.)  Also before the Court is Defendants' Request for Oral Argument and Evidentiary Hearing on Motion for Sanctions.  (D.E. 699.)  The Motions are fully briefed and are ripe for review.

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

### I.  Procedural Background[1]

Plaintiffs are the class of individuals who purchased the common stock of Defendant BankAtlantic Bancorp, Inc. (Bancorp) between November 9, 2005 and October 25, 2007 (the class period).

Bancorp is the publicly traded parent company of BankAtlantic, a federally chartered bank offering consumer and commercial banking and lending services throughout Florida.  The remaining Defendants are current and former officers and directors of Bancorp:  (1) James A. White, the former Executive Vice

---

[1]  The Court outlines below the procedural background relevant to the disposition of the instant Motions.  For a more exhaustive recitation of the procedural background, see the undersigned's Order on Motion for Judgment as a Matter of Law and Motion for New Trial.  (D.E. 695.)

President and Chief Financial Officer (CFO) of Bancorp and former CFO of BankAtlantic; (2) John E. Abdo, the Vice-Chairman of the Board of Directors for Bancorp and BankAtlantic; (3) Valerie C. Toalson, CFO of Bancorp and Executive Vice President and CFO of BankAtlantic; (4) Jarett Levan, the President of BankAtlantic, and from January 16, 2007, the President of Bancorp and the Chief Executive Officer (CEO) of BankAtlantic; and, (5) Alan Levan, the former Chairman of the Board and CEO of Bancorp and former Chairman of the Board and President and CEO of BankAtlantic.

## A.    *Pleadings & Class Certification*

An individual investor, Joseph Hubbard, filed the original Complaint in this action on behalf of himself and a purported class of investors in Bancorp stock on October 29, 2007.[2]  (D.E. 1.)  The original Complaint alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. §§ 78j(b), 78t(a) & 78t-1, against Bancorp, White, Toalson, Jarett Levan, and Alan Levan.

On December 12, 2007, the Court granted a joint motion to consolidate this case with all related actions and ordered that a Consolidated Amended Complaint be filed following the Court's appointment of a lead plaintiff and lead counsel, pursuant to the requirements of the Private Securities Litigation

---

[2]  The original Complaint was signed by Kenneth Vianale, an attorney for Vianale & Vianale LLP and also identifies as attorneys for the plaintiff Julie Prag Vianale of Vianale & Vianale LLP, Jules Brody of Stull Stull & Brody, and David Chase of David Chase LLP.

Reform Act (the "Reform Act"), 15 U.S.C. § 78u (2006).  (D.E. 14.)  The Court appointed State Boston Retirement System ("State Boston") as Lead Plaintiff and approved the selection of Labaton Sucharow, LLP ("Labaton") as Lead Counsel on February 5, 2008.  (D.E. 45.)  Lead Plaintiff filed[3] its Consolidated Amended Complaint on April 22, 2008.[4]  (D.E. 51.)

On December 12, 2008, the Court dismissed the Consolidated Amended Complaint without prejudice pursuant to Defendants' motion and Federal Rules of Civil Procedure 9(b) and 12(b)(6).  (D.E. 70.)  On January 12, 2009, Plaintiffs filed the First Amended Consolidated Complaint (D.E. 80), the dismissal of which the Court denied on May 12, 2009.[5]

In the First Amended Consolidated Complaint, Plaintiffs sought damages under §§ 10(b), 20(a), and 20A of the Exchange Act.  (D.E. 80.)  In Count I, Plaintiffs alleged that, throughout the class period, Defendants knowingly made materially false and misleading statements, in violation of § 10(b) of the Exchange Act as implemented by Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-

---

[3]  The Consolidated Amended Complaint was signed by liaison counsel for the Lead Plaintiff, Jonathan Alpert of the Alpert Law Firm, P.A. and also identified as lead counsel for the Lead Plaintiff Michael Stocker of Labaton.

[4] I n the Consolidated Amended Complaint, Plaintiffs alleged violations of §§ 10(b) and 20(a) of the Exchange Act against Bancorp, White, Toalson, Abdo, Jarett Levan, and Alan Levan and asserted a § 20A claim against Alan Levan and Abdo.

[5]  The First Amended Consolidated Complaint was signed by liaison counsel for the Lead Plaintiff, Jonathan Alpert of the Alpert Law Firm, P.A. and identified Jonathan Gardner, Paul Scarlato, and Serena (Richardson) Hallowell, all of Labaton, as lead counsel for the Lead Plaintiff.

5, regarding the value of its loan portfolio.  The Rule 10b-5 claims fell into three broad categories:  misrepresentations and non-disclosures of the poor or deteriorating credit quality of BankAtlantic's land loan portfolio; misrepresentations and non-disclosures of its poor underwriting practices; and misrepresentations and non-disclosures of the adequacy of its loan loss reserves and the accuracy of its financial statements.  The claims were further divided into two separate periods of damage ending with respective stock-price declines on April 26, 2007 and October 26, 2007.

In Count II, Plaintiffs alleged that the individual Defendants were control persons of Bancorp and as such were liable for its Rule 10b-5 violations under § 20(a) of the Exchange Act.  And in Count III, Plaintiffs alleged that Defendants Abdo and Alan Levan profited from the sale of Bancorp stock while in the possession of material, non-public information in violation of § 20A of the Exchange Act.

On October 20, 2009, after Defendants stated their non-opposition to Plaintiffs' motion to certify, the Court certified the Class;[6] the Court named State Boston and Erie County Employees Retirement System (Erie County) as co-Class Representatives and appointed Labaton and Barroway Topaz Kessler

---

[6] Defendants later reversed their position and moved to decertify the class at trial.  (D.E. 529.)  The Court denied the motion.  (D.E. 694.)

Meltzer & Check, LLP (Barroway) as co-Class Counsel pursuant to Rule 23(g).[7] (D.E. 147 & 153.)

On April 22, 2010, nine months after the deadline to amend the pleadings and less than a month before the close of discovery, the Class Representatives moved to amend the First Amended Consolidated Complaint.  (D.E. 208 & 210.) Plaintiffs offered three reasons for the proposed amendment:  shortening the class period to begin on October 19, 2006; discontinuing the insider trading claims under § 20A; and identifying additional public statements which all "relate[d] to Plaintiffs' original theory of liability, *i.e.*, fraudulent misrepresentations regarding the true risk of BankAtlantic's land loan portfolio."  (D.E. 210.)  The Court denied the motion.

In denying the motion, the Court agreed with Defendants to the extent they argued that shortening the class period and abandoning the § 20A claims would unfairly deny them a final adjudication of those issues.  Further, the Court was unconvinced the remaining amendments were necessary, as Plaintiffs had argued the additional statements were substantively indistinguishable from the claims in the First Amended Consolidated Complaint.  Moreover, the Court observed that, if required, Federal Rule of Civil Procedure 15(b) would allow for

---

[7] On May 23, 2011, the Class Representatives filed a Notice of Firm Name Change to advise the Court that the name of the law firm Barroway Topaz Kessler Meltzer & Check, LLP had been changed to Kessler Topaz Meltzer & Check.  (D.E. 719.)  For simplicity's sake and in the interest of continuity with prior orders, however, the Court will continue to refer to that firm in this Order as "Barroway."

amendment of the pleadings at trial to conform to the evidence; in that regard, the Court stated "Defendants have been put on notice of these additional misstatements and omissions." (D.E. 242.)  Accordingly, the case proceeded on the First Amended Consolidated Complaint.

**B.**     ***Motions for Summary Judgment & to Exclude Expert Testimony***

In June 2010, the parties filed cross-motions for summary judgment. Defendants moved for summary judgment on all claims.  And Plaintiffs moved for summary judgment only on the narrow issues of the falsity of four statements made by Alan Levan in a July 25, 2007 conference call.  In its August 18, 2010 Omnibus Order, the Court granted Defendants' motion in part and Plaintiffs' partial motion in full.  (D.E. 411.)  In that order, the Court also granted in part Defendants' motion to exclude the proposed testimony of Plaintiffs' loss causation and damages expert, Candace Preston.  *Id.*

The order entitled Defendants to final summary judgment on the claims Plaintiffs previously attempted to abandon:  the claims from the first year of the class period (pre-October 19, 2006) and the insider trading claims under § 20A of the Exchange Act.  *Id.*  The order also entitled Defendants to final summary judgment on claims arising from any statements regarding BankAtlantic's loan loss reserves and on claims of damages caused by Bancorp's October 29, 2007 stock-price decline.  *Id.*  Collectively, these rulings shortened the class period to October 19, 2006 through October 26, 2007, and finally adjudicated the claims of insider trading and accounting fraud in Defendants' favor.  *Id.*

6

As to the balance of Plaintiffs' claims, Defendants strongly emphasized Plaintiffs' failure to produce credible, reliable evidence regarding loss causation and damages.  To that end, Defendants also moved to exclude Preston's testimony.  The Court granted the motion to exclude in part; what survived from Preston's testimony was, in the Court's view, sufficient to create a genuine issue of fact as to loss causation and damages.

Finally, the order entitled Plaintiffs to summary judgment as to the narrow issue of the objective falsity of four statements made by Alan Levan during a July 25, 2007 earnings conference call.

## C.   *Trial and Post-Trial Motions*

Trial began on October 12, 2010.  (D.E. 528 & 531.)  On November 10, 2010, the parties delivered their closing arguments, and the Jury began its deliberations.  (D.E. 641 & 643.)  After five days of deliberations, on November 18, 2010, the Jury returned a verdict mainly in Defendants' favor.  (D.E. 665.) The Jury found no liability as to any Defendant for the first period[8] and no liability as to Defendants Abdo, White, and Jarrett Levan for the second.  The Jury, however, found liability and damages as to Defendants Alan Levan and Bancorp for the second period; the Jury found that several statements made by Alan Levan and one statement made by Toalson violated § 10(b) and that the

---

[8]  Although the Jury found that several of the Defendants made materially false statements during this period, the Jury found no damages.  Plaintiffs conceded prior to the discharge of the Jury that a finding of no liability as to this first period was the only possible interpretation of the verdict.  (Tr. 4369.)

7

first violation proximately caused damages of $2.41 per share.

Defendants moved for judgment as a matter of law.  On April 25, 2011, the Court granted Defendants' Motion for Judgment as a Matter of Law and entered a final judgment in favor of all Defendants.  (D.E. 695 & 696.)  The Court concluded, inter alia, that Plaintiffs' evidence was insufficient to permit a reasonable jury to find that Bancorp's October 26, 2007 share price decline was caused by the revelation of the fraud, because Plaintiffs' damages expert, Preston, failed to disaggregate the effects of non-fraudulent public disclosures on Bancorp's share price, as required under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and its progeny.[9]

**D.** *Sanctions*

Defendants now request that the Court impose sanctions against the Class Representatives and Class Counsel.  Defendants request that "the Court order reimbursement of Defendants' legal fees and expenses incurred as a direct result of the sanctionable conduct in this case."  Apart from Defendants' Motion

---

[9] Defendants have maintained, as if it is a mantra, that the declines in Bancorp's share price directly corresponded to the falling real estate market.  The record contained no evidence supporting Defendants' contention, and compulsively repeating it, as defense counsel has done throughout this lawsuit, does not make it so.  Further, the Court found repeatedly that Preston, the causation and damages expert,  reasonably and reliably adjusted for the effect of the falling real estate market on Bancorp's share price.  In the end, however, her testimony suffered from a fatal flaw which was foreseeable at least from the date of entry of the Court's Order denying, in part, the exclusion of her testimony; in that Order, the Court noted that, should the evidence fail to establish that the alleged fraud related to the builder land bank portion of BankAtlantic's real estate portfolio continued past the first alleged partial disclosure of the fraud, Preston's testimony likely would not support a finding of loss causation.  (D.E. 411, n.26.)

for Sanctions, the Court has an independent duty under the Reform Act to conduct a sanctions review.  Thus, the Court examines below the arguments in Defendants' Motion and also conducts the more comprehensive review required by the Reform Act.

## II. Standard

Congress passed the Reform Act, in part, "to deter strike suits by opportunistic private plaintiffs that filed securities fraud claims of dubious merit in order to exact large settlement recoveries." *LaPerriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 719 (11th Cir. 2008).  In line with this goal, § 21D of the Reform Act requires the court, upon the final adjudication of claims brought under the Exchange Act, to include specific findings as to each party's and each attorney's compliance with Federal Rule of Civil Procedure 11(b) as to any complaint, responsive pleading, or dispositive motion.  § 78u–4(c).  If the court finds that a party or attorney violated Rule 11(b), the court must impose sanctions in accordance with Rule 11.[10]  Before imposing such sanctions, the court must provide the potential violator with notice and an opportunity to respond.  § 78u–4(c)(2).  The Reform Act further sets forth a presumption that the proper sanction for a Rule 11(b) violation is an award to the opposing party

---

[10]  In this respect, the court's discretion is more constrained in conducting a Rule 11 review in private securities litigation than in other contexts; while the imposition of sanctions is generally discretionary upon the finding of a Rule 11 violation, if a court finds a party or attorney in a private securities action violated Rule 11, the court must impose sanctions. *Thompson v. RelationServe Media Inc.*, 610 F.3d 628, 636 (11th Cir. 2010).

9

of the reasonable attorneys' fees and costs incurred as a direct result of the violation.  § 78u–4(c)(3).

Although the Reform Act limits the court's discretion by requiring a Rule 11 inquiry and sanctions in the event of a violation, the substantive analysis under Rule 11 remains the same.  *Thompson v. RelationServe Media Inc.*, 610 F.3d 628, 637 (11th Cir. 2010); *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) ("[F]or private securities fraud suits Congress altered the consequences of a Rule 11(b) violation but did not rewrite the conventional standards for evaluating Rule 11(b) compliance.").  The determination of whether a party or attorney has violated Rule 11(b) rests within the discretion of the district court.  *Thompson*, 610 F.3d at 637.

Federal Rule of Civil Procedure 11(b) provides that, by presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

> after a reasonable opportunity for further investigation or discovery; and
>
> (4)     the denials of factual contentions are warranted on the evidence....

Thus, under Rule 11, an attorney must make some reasonable inquiry into the facts and the law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The reasonableness of the inquiry is a fact-based question, dependent on the circumstances of the case at hand. *Id.*

A court confronted with a motion for Rule 11 sanctions premised on the alleged frivolity of a claim must first determine whether the party's claims or assertions are objectively frivolous in view of the facts or law; if they are, the court must then determine whether the person who signed the pleadings would have been aware they were frivolous had he made a reasonable inquiry. *Id.* An objective standard of reasonableness governs both inquiries. *Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (*en banc*).

A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law. *Worldwide Primates*, 87 F.3d at 1254 (citing *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995)); *see also Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (noting that legal claims are objectively frivolous when they ignore clearly established law).

11

A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only by "patently frivolous" evidence.  *Id.* at 535–37.  When, however, the evidence supporting a claim is reasonable, but only weak or self-serving, sanctions cannot be imposed.  *Thompson*, 610 F.3d at 665 (Tjoflat, J., concurring) (citing *Davis*, 906 F.2d at 536).

### III. Discussion

**A.    *Motion for Sanctions***

The Court addresses, in turn, whether each party and each attorney complied with Rule 11(b) as to the complaints, responsive pleadings, and dispositive motions filed in this action.

**1.    *Hubbard and His Counsel***

Defendants do not assert that the individual investor who filed the original Complaint or his counsel violated Rule 11(b).  And there is no indication—much less evidence—on this record to support such a finding.  The Court, thus, finds that neither Hubbard nor his counsel violated Rule 11(b) by filing the original Complaint.

**2.    *Class Counsel***

The Court next considers whether Class Counsel violated Rule 11(b) with respect to the Consolidated Amended Complaint and the First Amended

Consolidated Complaint.[11]  Class Counsel, on Plaintiffs' behalf, set forth the same claims against the same Defendants in these two pleadings, structured the two complaints in substantially the same manner, and supported the claims with substantially the same factual assertions.[12]  (D.E. 51, 80.)  Accordingly, the following discussion pertains to both the Consolidated Amended Complaint and the First Amended Consolidated Complaint unless otherwise noted.

### a.    *Plaintiffs' Use of Confidential Witnesses*

Defendants focus the bulk of their Motion on their contention that Class Counsel repeatedly violated Rule 11(b) by their improper use of confidential witnesses.  Specifically, Defendants argue that, in the Consolidated Amended Complaint and the First Amended Consolidated Complaint, Class Counsel falsely attributed factual assertions to confidential witnesses.  Defendants contend that Class Counsel failed to make a reasonable inquiry to determine

---

[11]  Both the Consolidated Amended Complaint and the First Amended Consolidated Complaint were filed by Lead Counsel, on behalf of Lead Plaintiff, before the Court certified the class and appointed both Labaton and Barroway to act as co-Class Counsel.  Thus, no attorney from Barroway signed or filed either pleading.  (*See* D.E. 51; D.E. 80.)  Nonetheless, attorneys from both Labaton and Barroway assisted in the drafting of both complaints and later advocated the claims set forth in the First Amended Consolidated Complaint.  (D.E. 707 ¶ 4; D.E. 710 ¶ 3.)  Accordingly, the Court considers whether Class Counsel, including the attorneys from both Labaton and Barroway, violated Rule 11(b) with respect to these pleadings.

[12]  The First Amended Consolidated Complaint differed most significantly from the Consolidated Amended Complaint in that Plaintiffs provided additional detail regarding the positions, job duties, and periods of employment of the confidential witnesses and attributed additional factual assertions to Confidential Witness #2.

whether the assertions in issue were true and were properly attributed to those witnesses.  And Defendants argue that because the claims in the Consolidated Amended Complaint and the First Amended Consolidated Complaint relied heavily on the factual assertions of the confidential witnesses, all the claims set forth in those complaints were factually frivolous.  (D.E. 698.)  The Court provides a brief procedural background with respect to the confidential witnesses and then addresses Defendants' arguments relating to Class Counsel's use of such witnesses.

In the Consolidated Amended Complaint, Class Counsel, on Plaintiffs' behalf, attributed various allegations regarding BankAtlantic's underwriting and lending practices to seven confidential witnesses, whom they alleged had personal knowledge of the practices as a result of their past employment at BankAtlantic.  (*See* D.E. 51.)  The Court dismissed the Consolidated Amended Complaint without prejudice, finding that Plaintiffs had failed to allege facts supporting a strong inference of scienter with respect to each Defendant and each violation, as required under the Reform Act.  (*See* D.E. 70.)

In that Order, the Court noted the importance of the confidential witnesses' assertions to the Rule 10b-5 claims and found that, because the allegations did not include "specific information as to the confidential witnesses' positions in [BankAtlantic], their employment duties, the foundation or basis for their knowledge, or whether they were even employed with [BankAtlantic] during the relevant times in the Complaint," it was not possible "to discern their

14

proximity to the offending conduct." (D.E. 70, p. 23.)  Accordingly, the Court did not give substantial weight to the statements made by the confidential witnesses.

In the First Amended Consolidated Complaint, Class Counsel revised the earlier filed complaint, included factual assertions by six confidential witnesses, and included more specific information regarding those witnesses' positions, employment duties, and respective periods of employment with BankAtlantic. (D.E. 80.)

Defendants moved to dismiss the First Amended Consolidated Complaint, arguing that, despite the revisions and additions, Plaintiffs nonetheless failed to sufficiently allege scienter.  The Court denied the motion and found that the First Amended Consolidated Complaint, "taken as a whole, sufficiently [alleged] that the Defendants" acted with the requisite scienter.  (D.E. 94.)  In reaching this conclusion, the Court cited to various factual assertions alleged to have been made by the confidential witnesses.  (*See id.*)

Defendants now argue that Class Counsel violated Rule 11(b)(3) by misrepresenting in the Consolidated Amended Complaint and First Amended Consolidated Complaint the assertions of the confidential witnesses and by failing to make a reasonable inquiry as to the truth and attribution of those assertions.  Defendants' argument is based, almost exclusively, on deposition testimony given by the confidential witnesses during the discovery process after the Court ordered Plaintiffs to disclose their identities.  (*See* D.E. 698, pp.

15

11–12.)  Defendants also rely on transcripts of interviews with one confidential witness conducted and recorded by an investigator from Labaton.  (Appendix to Defendants' first Motion for Sanctions, D.E. 255–60, hereinafter "App'x," Ex. C.)

In their depositions, four of the confidential witnesses disavowed making some of the assertions attributed to them in the First Amended Consolidated Complaint, and one witness denied providing information to Class Counsel.[13] (App'x Exs. F, H, I, J, K.)  Further, several of these individuals testified at deposition that they do not believe the substance of the statements attributed to them to be true, regardless of who made the statements.  On this basis, Defendants argue that Class Counsel violated Rule 11(b)(3), because the factual assertions attributed to the confidential witnesses lacked evidentiary support. And, Defendants argue, Class Counsel would have known as much had they performed an adequate inquiry.

Plaintiffs, through Class Counsel, maintain that the confidential witnesses' statements provided during the investigation of Plaintiffs' claims supported the assertions attributed to the confidential witnesses in the Consolidated Amended Complaint and the First Amended Consolidated Complaint.  Class Counsel have submitted the sworn affidavits of investigators

---

[13]  These witnesses, identified as Confidential Witnesses #1, 3, 4, 5, and 6 in the First Amended Complaint were Johnny Irizarry, Donna Loverin, Warren Toole, Michael Blevins, and Mark Meek, respectively.  Confidential Witness #2, Barbara Halprin, did not disavow or recant the assertions attributed to her in the complaints.

working for Class Counsel who conducted interviews with the confidential

witnesses and the attorneys who supervised the investigation and drafted the

complaints.  (D.E. 703–10.)  An investigator from Labaton has appended to her

affidavit summary charts of investigator notes and memoranda from interviews

with the confidential witnesses, which she attests are correct and were made at

the time of or shortly following the interviews and which substantially

corroborate the confidential witnesses' assertions.  (D.E. 703-1.)  The attorneys

who drafted the complaints attest to their involvement in and supervision of the

investigation; and they attest that they used the investigator notes and

memoranda in drafting the complaints.  (D.E. 704, 705, 707, 710.)

The Court first finds that the type of inquiry undertaken by Class Counsel

with respect to the confidential witnesses was not unreasonable under the

circumstances.  Defendants make much of the fact that Class Counsel did not

personally undertake to interview the confidential witnesses but rather, relied

on the detailed notes and memoranda provided by their investigators who

conducted the interviews.  Defendants cite to a leading case from the Court of

Appeals for the Third Circuit for the proposition that "Rule 11 imposes a non-

delegable duty upon the signing attorney to conduct his own independent

analysis of the facts and law which form the basis of a pleading or motion." *Garr*

*v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994).

Defendants' conclusory reliance on this snippet is unavailing.  The *Garr*

court is clear that an attorney has a non-delegable duty to *analyze* the facts and

law that support a pleading or motion, not necessarily to personally *gather* those facts. *Id.* at 1280 (noting that attorneys could have satisfied Rule 11 obligation by reviewing factual sources obtained from another attorney). And importantly, Defendants' brief citation blatantly disregards the following discussion in *Garr*: "A signer's obligation personally to comply with the requirements of Rule 11 clearly does not preclude the signer from any reliance on information from other persons." *Id.* at 1278.

Here, Class Counsel attests that investigators at their law firms conducted the interviews with confidential witnesses; they also attest, however, that Class Counsel supervised the investigative efforts, provided the investigators with proposed points of inquiry, and reviewed the notes and memoranda prepared by the investigators during and after the interviews. (D.E. 704 ¶¶ 5, 11–15; D.E. 705 ¶ 7; D.E. 707 ¶¶ 4, 5; D.E. 709 ¶ 2; D.E. 710 ¶¶ 3, 5, 7.) And several of the various attorneys involved in drafting the complaints attest to the analysis they undertook of the facts and law, based in part on the information provided by their investigators. (D.E. 705 ¶¶ 9–11, 14; D.E. 707 ¶¶ 4, 6; D.E. 710 ¶¶ 4, 7, 8.) Accordingly, there is no indication on this record that, because their investigators conducted interviews of witnesses, Class Counsel impermissibly delegated the requisite inquiry or analysis of the facts and law.[14]

---

[14] Defendants also argue that, after the Court dismissed the Consolidated Amended Complaint based, in part, on the lack of information regarding the confidential witnesses' positions at BankAtlantic, Class Counsel violated Rule 11(b) by including the same confidential witness assertions in the First Amended

18

*See Garr*, 22 F.3d at 1277–80.

The Court further finds that the deposition testimony of the confidential witnesses, insofar as it contradicts or disavows some of the assertions attributed to those witnesses in the Consolidated Amended Complaint and First Amended Consolidated Complaint, does not, without more, warrant a finding that Class Counsel violated Rule 11(b). Whether the confidential witnesses initially made the statements attributed to them in the complaints is essentially a credibility question. In this context, Rule 11 sanctions are not appropriate. *In re JDS Uniphase Corp. Sec.* Litig., 2008 WL 753758, at *3 (N.D. Cal. Mar. 19, 2008); The *Wu Group v. Synopsys, Inc.*, 2005 WL 1926626, at *13 (N.D. Cal. Aug. 10, 2005); *Harding Univ. v. Consulting Servs. Group*, 48 F. Supp. 2d 765, 769 (N.D. Ill. Mar. 10, 1999) (finding no Rule 11 violation where witness who provided factual basis for claim later recanted).

Moreover, that a witness subsequently testifies in a manner that

---

Consolidated Complaint. Defendants argue that, because Class Counsel was unable to conduct follow-up interviews with some of the witnesses following the dismissal of the Consolidated Amended Complaint, the inclusion of such assertions in the later filed complaint was sanctionable.

Class Counsel makes clear, however, in their affidavits, that their investigators obtained the information regarding the confidential witnesses' positions at BankAtlantic, which was added to the First Amended Consolidated Complaint, in their initial interviews with those witnesses. (D.E. 704 ¶¶ 8, 18; D.E. 705 ¶ 10.) Counsel chose not to include that information in the Consolidated Amended Complaint to protect the confidentiality of the witnesses. (D.E. 704 ¶¶ 7, 8; D.E. 705 ¶¶ 6, 7.) Class Counsel, thus, did not fail to make a reasonable inquiry solely as a result of their inability to conduct subsequent interviews with some of the confidential witnesses.

19

contradicts statements attributed to him in a pleading is not sufficient to establish that counsel failed to make a reasonable inquiry with respect to that witness. *See In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices and Prods. Liab. Litig.*, 268 F.R.D. 509, 518 (S.D.N.Y. 2010) (mere fact that confidential sources testified in manner contradictory to statements attributed to them in complaint was insufficient to support finding that plaintiffs acted in objectively unreasonable manner). Such discrepancies may be attributed to a witness's changing memory or, in the case of a whistleblowing confidential witness, the desire to remain in a former employer's good graces once the protection of confidentiality has been removed. *Id.*; *In re Dynex Capital, Inc. Sec. Litig.*, Case No. 05-1897, D.E. 107 (S.D.N.Y. Apr. 29, 2011).

Here, in fact, one recanting confidential witnesses expressed concern regarding possible legal action by Alan Levan in retaliation for her cooperation with Class Counsel. (App'x Ex. C, pp. 43, 55–56.) And the depositions of the confidential witnesses cited in the First Amended Consolidated Complaint were taken approximately two years after Class Counsel and their investigators initially interviewed them. (*See* App'x Exs. F–K; D.E. 703.) Under these circumstances, discrepancies—even major discrepancies—between the witnesses' initial statements and their subsequent testimony do not, on their own, demonstrate that the witnesses did not initially make the statements attributed to them.

Thus, without more than competing declarations and deposition

20

testimony—which is all that is available with respect to five of the six confidential witnesses—the Court simply cannot determine that Class Counsel failed to make a reasonable inquiry or that the assertions attributed to the confidential witnesses lacked evidentiary support and were, thus, factually frivolous, at the time the complaints were filed.[15]

As noted, with respect to one confidential witness, a more complete record is available for the Court's review; Labaton investigator Amy Greenbaum recorded the several telephone interviews she conducted with Confidential Witness #3, Donna Loverin, the transcripts of which have been provided to the Court.  (App'x Ex. C.)

Plaintiffs asserted in the First Amended Consolidated Complaint that Loverin "worked in [BankAtlantic's] Credit Department as an analyst and underwriter prior to and during relevant portions of the Class Period."[16]  (D.E. 80 ¶ 66.)  The assertions attributed to Loverin included: BankAtlantic's Credit Department performed very weak due diligence in underwriting during portions

---

[15] Defendants' contention that Class Counsel failed to make a reasonable inquiry is based on the assumption that, had Counsel personally interviewed the confidential witnesses prior to filing the complaints, the witnesses would have given statements consistent with their later deposition testimony.  This assumption, however, is not grounded in evidence and does not address the reasons the witnesses' testimony could change after the passage of two years and after the shield of confidentiality was no longer in place.

[16] In the Consolidated Amended Complaint, Plaintiffs alleged—less specifically—that Confidential Witness #3 was "a former employee with specific and detailed knowledge about the Bank's [commercial real estate] lending practices and underwriting procedures during the Class Period."  (D.E. 51 ¶ 62.)

of the class period; as early as 2004, Loverin observed that BankAtlantic was heading for trouble due to its risky lending practices; Loverin told Jeff Mindling (Chief Credit Officer at BankAtlantic) five or ten times a day that the quality of some loans in BankAtlantic's portfolio were not sound; that the Defendants knew about problems in BankAtlantic's commercial real estate portfolio; with respect to the large loan losses announced in the third quarter of 2007, that "there's no way these loans just all coincidentally imploded in 4 months"; that certain of BankAtlantic's loans were risky because they were plagued with a number of "construction related issues"; that Defendants were aware of the risks associated with various commercial real estate loans due to problems BankAtlantic had experienced with such loans in the past.  (D.E. 80 ¶¶ 66, 100, 101, 102, 103.)

The transcripts of Greenbaum's interviews with Loverin largely substantiate the assertions attributed to Loverin in the First Amended Consolidated Complaint; however, this is not entirely so.  (*See* App'x Ex. C.) Class Counsel represented in the First Amended Consolidated Complaint that Loverin "worked in the Credit Department as an analyst and underwriter prior to and during relevant portions of the Class Period."  (D.E. 80 ¶ 66.)  And at the start of her initial interview with Greenbaum, Loverin, in fact, stated "I worked in the credit department and we serviced both corporate banking and small business."  (App'x Ex. C, p. 1.)  In subsequent statements, however, Loverin clarifies that she left the credit department to work in the small business

22

division years before the start of the class period.  Loverin stated:

> That was, let me see, it must have been back in 2000, 2001....  So that's when I was transferred out of the credit department.  Jeff [Mindling] was moved out of the credit department to take over small business, to clean it up.  And he pulled me over there with him.

(App'x Ex. C, p. 7.)  And at several other points during the interviews, Loverin indicated that, at the times relevant to this action, she worked in BankAtlantic's small business division.  (*See, e.g.*, App'x Ex. C, pp. 14, 29.)

The activities of BankAtlantic's small business division are unrelated to the facts and claims at issue in this action.  Though Loverin's statements throughout her interviews demonstrate that she had some knowledge of the conduct alleged in the First Amended Consolidated Complaint, that she actually worked in the small business division for years prior to and during the class period undercuts the reliability of the factual assertions attributed to Loverin, insofar as her proximity to the offending conduct may have been more distant than was represented.

The Court, thus, finds that Class Counsel's inclusion of the assertions attributed to Loverin in the Consolidated Amended Complaint and the First Amended Consolidated Complaint violated Rule 11(b)(3).  Because Loverin did not work in BankAtlantic's credit department for years prior to or during the class period, the factual contentions attributed to Loverin lacked adequate evidentiary support, and a reasonable inquiry by counsel would have revealed as much.  *See Worldwide Primates,* 87 F.3d at 1254.

In sum, with respect to Class Counsel's use of confidential witnesses, the Court finds that Class Counsel violated Rule 11(b) solely with respect to those statements and assertions attributed to Confidential Witness #3, Donna Loverin, in the Consolidated Amended Complaint and the First Amended Consolidated Complaint.

b.    *Plaintiffs' Section 20A Claims*

Defendants contend that Class Counsel violated Rule 11 by including in the First Amended Consolidated Complaint a claim of insider trading against Alan Levan and Abdo, a claim Defendants argue was objectively frivolous as a matter of fact and law.  Defendants argue that the undersigned, in her Order dismissing the Consolidated Amended Complaint, "expressly rejected the [insider trading] claim on factual grounds;" Defendants cite to language in that Order noting that Alan Levan and Abdo exercised stock options that resulted in a net increase in their Bancorp holdings during the class period.  (D.E. 698, p. 17.)  Accordingly, Defendants argue, Class Counsel's inclusion of the same claim in the First Amended Consolidated Complaint was objectively frivolous and warrants the imposition of sanctions.

Section 20A of the Exchange Act makes unlawful insider trading and creates a private right of action for any person who trades contemporaneously in the subject security.  Specifically, § 20A  provides that "any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic

24

information shall be liable ... to any person, who contemporaneously with the purchase or sale" of the subject security has purchased or sold the same. § 78t–1(a).

Though Defendants contend that the insider trading claim was both legally and factually frivolous, they do not allege that Class Counsel misrepresented any facts relating to this claim, and the Court is aware of none.[17] Essentially, Defendants contend that the § 20A claim in the First Amended Consolidated Complaint was legally frivolous as a result of the Court's dismissal of the claim in the Consolidated Amended Complaint and because Class Counsel knew that Alan Levan and Abdo exercised stock options during the class period that resulted in a net increase of their respective Bancorp holdings.

Defendants misrepresent—or at least misunderstand—the Court's findings in the Order dismissing the Consolidated Amended Complaint.  In that Order, the Court dismissed Plaintiffs' Rule 10b-5 claims due to their failure to plead scienter with the requisite particularity.  (*See* D.E. 70.)  In reaching this conclusion, the Court noted that Alan Levan's and Abdo's purchases and sales of Bancorp stock, which resulted in a net increase in their holdings over the course of the class period, were not inherently suspicious, and thus, did not "carry a strong inference of scienter," which is required to support a Rule 10b-5 claim.

---

[17]  Plaintiffs alleged that Alan Levan and Abdo made numerous sales of Bancorp stock during the class period.  A table in each complaint included specific information regarding the date of each trade, the number of shares sold, and the price per share for each sale.  (D.E. 51 ¶ 208; D.E. 80 ¶ 231.)

(D.E. 70, p. 29.)

In dismissing the § 20A claim from the Consolidated Amended Complaint, however, the Court did not "expressly [reject] the claim on factual grounds" as Defendants now contend. Rather, the Court dismissed the insider trading claim on the basis that such a claim requires the adequate pleading of a predicate violation; because Plaintiffs failed to do so, their § 20A claim also, of necessity, failed. (D.E. 70, p. 38); *see Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783 (11th Cir. 2010) ("a plaintiff must first plead a violation of the Securities Exchange Act or its rules before pursuing [S]ection 20A insider trading claims"). The Court's finding in the Order on Motion to Dismiss, thus, did not reject the insider trading claim on factual grounds and did not render objectively frivolous the inclusion of such a claim in the First Amended Consolidated Complaint.

The Court is also unpersuaded that the insider trading claim against Alan Levan and Abdo was legally frivolous solely due to those Defendants' increased holdings of Bancorp stock. A § 20A claim may lie based on a defendant's single purchase or sale, so long as the defendant was in possession of material, nonpublic information at the time of the trade and the plaintiff traded contemporaneously. *See* § 78t–1. Thus, an insider trading claim under § 20A is in no way incompatible with a net increase in a defendant's holdings of the subject security over a protracted period. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 144 (S.D.N.Y. 1999) ("retaining substantial holdings

26

and purchasing or otherwise obtaining shares during the Class period do not vitiate insider trading liability").  Accordingly, Class Counsel's inclusion of a § 20A claim in the First Amended Consolidated Complaint was not objectively frivolous and did not violate Rule 11(b).

### c.     *Claims Based on Loan Loss Reserves and Accounting Fraud*

Defendants argue, with respect to the Rule 10b-5 claims—and by extension the § 20(a) claims—premised on inaccurate loan loss reserves and consequent accounting fraud, that Class Counsel failed to make a reasonable inquiry.  Defendants argue that "no confidential witness was in a position to know anything about loan loss reserves," and, accordingly, these claims were factually frivolous.  (D.E. 698, pp. 17–18.)  Though Defendants focus their Motion on Class Counsel's inclusion of these claims in the First Amended Consolidated Complaint alone, the Court considers whether the inclusion of such claims in either the Consolidated Amended Complaint or the First Amended Consolidated Complaint violated Rule 11(b).

In both the Consolidated Amended Complaint and the First Amended Consolidated Complaint, Plaintiffs essentially alleged that BankAtlantic failed to properly reserve for loan losses as the loans in its commercial real estate portfolio began to deteriorate.  By failing to properly account for loan losses, according to Plaintiff, Bancorp misrepresented that its financial statements complied with Generally Accepted Accounting Principles (GAAP).  (D.E. 51 ¶¶

94–116; D.E. 80 ¶¶ 109–33.)

Class Counsel did not seek to include these claims in the Proposed Second Amended Complaint, the filing of which the Court denied. (*See* D.E. 242.) And, on Defendants' motion, the Court granted summary judgment in favor of Defendants on these claims after Plaintiffs conceded that they did not have sufficient evidence to pursue them. (D.E. 411.)

Though Defendants contend that no confidential witness was in a position to know about loan loss reserves, they point to no evidence in support of that contention, and the record, in fact, belies the contention. The great bulk of the factual assertions concerning the loan loss reserves were attributed to Confidential Witness #2, later identified as Barbara Halprin. (*See, e.g.*, D.E. 51 ¶¶ 68, 104; D.E. 80 ¶¶ 76, 109, 119–21.) Halprin was a senior vice president of loan servicing and operations at BankAtlantic from 2001 through March 2007. (App'x Ex. G, p. 15.) Quoted excerpts of investigator notes and memoranda from Halprin's interviews with Labaton investigators reflect that Halprin told investigators that BankAtlantic recharacterized loans to avoid reserving for losses and that she was aware of such practices because she would pull files for review by BankAtlantic's chief credit officer who would often speak to Alan Levan in her presence.[18] (D.E. 703-1, p. 15.)

---

[18] As noted above, Amy Greenbaum, an investigator who worked for Labaton and who conducted these interviews, attests that the information in the summary charts and quoted excerpts accurately reflect her interview notes and memoranda, taken at the time of or shortly following the interviews she conducted with Halprin

At her deposition, Defendants vigorously challenged Halprin regarding her personal knowledge of and involvement in the calculation of BankAtlantic's loan loss reserves. (*See* App'x Ex. G.) Halprin maintained, however, that her position at BankAtlantic required knowledge of and participation in the process of reserving for loan losses. When asked whether she had ever been involved in creating reserves for problem assets, Halprin answered:

> I have been involved in through [*sic*] the majority of my career in working with accounting to properly identify the loans, and to categorize them for reserve calculations for risk management, for concentration, for financial comments, and statements, and I'm very closely involved in that.

(*Id.* p. 76.) And, when further pressed, Halprin maintained that she was involved in the process of evaluating proper loan classifications for individual loans and in the process of evaluating what an appropriate reserve would be. (*Id.* p. 103.)

In addition to the information Halprin provided, in preparing the complaints, Class Counsel engaged an accounting expert to review BankAtlantic's loan losses. Michael Stocker, an attorney for Labaton, attests that, before filing the Consolidated Amended Complaint, he consulted with an accounting expert who evaluated BankAtlantic's loan loss reserves during the class period on the basis of publicly available information. (D.E. 706 ¶ 5.) Based in part on the expert's analysis, including a review of BankAtlantic's loan loss

---

and the other confidential witnesses. (D.E. 703 ¶ 16.)

29

reserves as a percentage of non-accrual loans, Class Counsel chose to include claims based on an understatement of loan loss reserves in the Consolidated Amended Complaint and First Amended Consolidated Complaint.  (*Id.* ¶¶ 6–8.)

On this record, the Court does not find that the claims based on inaccurate loan loss reserves and accounting fraud were objectively, factually frivolous due to Class Counsel's failure to make a reasonable inquiry.  Class Counsel attests that they received information regarding the inaccuracy of the reserves from a witness who claimed personal knowledge of the reserve process and that they engaged an accounting expert who evaluated and supported the claims.  This inquiry, though not exhaustive, was reasonable.  *Cf. Worldwide Primates*, 87 F.3d at 1254 (attorney failed to make reasonable inquiry by failing to question client regarding claim and failing to obtain or examine any data in support of claim).

And though the factual basis for these claims may not have been strong enough to prevail, that is not the relevant inquiry when conducting a Rule 11 review.  Under Rule 11, a claim is factually frivolous only when it is supported by no evidence or only by "patently frivolous" evidence.  *See Davis v. Carl*, 906 F.2d at 535–37.  Here, some evidence that was not patently frivolous supported the Rule 10b-5 and § 20(a) claims that were premised on loan loss reserves and accounting fraud.  Sanctions, thus, are not warranted on this basis.

### d.    *Loss Causation*

Defendants argue that all the remaining claims in the First Amended

Consolidated Complaint were objectively frivolous because a reasonable inquiry would have revealed that Bancorp's "reported losses were caused by the impact of the housing market collapse on the very loans where the risk was plainly identified." (D.E. 698, p. 19.) Defendants contend that a series of simple comparisons would have revealed that Bancorp's losses were the result of non-fraud related, market-driven forces. Thus, Defendants contend, loss causation was obviously lacking, and a reasonably competent attorney would have concluded that Plaintiffs' Rule 10b-5 claims—and thus, necessarily the § 20(a) derivative claims—had no reasonable chance of success as a result.[19]

Defendants' arguments over-simplify the matter. While the undersigned ultimately found that Plaintiffs did not adduce sufficient evidence to establish loss causation as a matter of law, Plaintiffs' ultimate failure does not, as a result, prove that their claims were frivolous.

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." § 78j(b). In turn, Rule 10b-5 makes it unlawful for any person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of

---

[19] Though Defendants' Motion addresses only the First Amended Complaint, the Court considers whether the remaining claims in both the Consolidated Amended Complaint and First Amended Consolidated Complaint were objectively frivolous for the reasons Defendants raise regarding loss causation.

the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

Courts have long recognized the implicit private right of action created by § 10(b) and Rule 10b-5, "which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (citations omitted). For cases involving publicly traded securities and purchases or sales in a public securities markets, the elements of the action include: (1) *a material misrepresentation (or omission)*; (2) *scienter*, *i.e.*, a wrongful state of mind; (3) *a connection with the purchase or sale of a security*; (4) *reliance*, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (5) *economic loss*; and (6) *loss causation*, *i.e.*, a causal connection between the material misrepresentation and the loss. *Id.* at 341–42 (citations omitted).

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted). In order to prove loss causation in a fraud-on-the-market case, a plaintiff must show: (i) that the fraudulently concealed truth was revealed to the market and (ii) that the revelation caused, at least in substantial part, a decline in the market-price of the security. *See Dura*, 544 U.S. at 342–345; *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448–49 (11th Cir. 1997).

As evidenced by the Court's Order on Motion for Judgment as a Matter of Law, loss causation in the context of a Rule 10b-5 claim concerning a publicly traded security is an evolving and complex area of law. (*See* D.E. 695.) The testimony of an expert and the use of an event study, multiple regression analysis, and other highly technical evidence are generally—though perhaps not always—required to prove loss causation. *See, e.g.*, *Archdiocese of Milwaukee Supporting Fund, Inc. v. Haliburton Co.*, 597 F.3d 330, 341 (5th Cir. 2010) ("This showing of loss causation is a 'rigorous process' and requires both expert testimony and analytical research or an event study that demonstrates a linkage between the *culpable* disclosure and the stock-price movement.") (citations omitted).

Plaintiffs' loss causation allegations were premised, in part, on publicly available information. Specifically, Plaintiffs alleged that Bancorp's stock price immediately and significantly declined following Bancorp's disclosure of negative information, some of which was allegedly previously concealed. The timing and magnitude of these declines, Plaintiffs argued in both the Consolidated Amended Complaint and the First Amended Consolidated Complaint, indicated that the losses were due to company-specific facts related to the allegedly fraudulent prior concealment of material information. (*See* D.E. 51 ¶ 214; D.E. 80 ¶ 237.)

Further, in preparing the Consolidated Amended Complaint, Class Counsel engaged Candace Preston, a partner at a financial analysis firm to assess the loss causation issues involved in Plaintiffs' claims. (D.E. 706 ¶ 2.)

Class Counsel asked Preston to evaluate the statistical significance of the declines in Bancorp's share price on the dates relevant to the action. (*Id.* ¶ 3.) Preston advised Class Counsel that the share price declines on those dates were statistically significant and most likely were the result of a "company-specific event." (*Id.* ¶ 4.)

On this record, the Court finds that the loss causation allegations supporting Plaintiffs' Rule 10b-5 and § 20(a) claims were neither legally nor factually objectively frivolous. The factual support for the loss causation allegations, though ultimately insufficient to establish loss causation, was not patently frivolous. *See Davis*, 906 F.2d at 537. *Cf. In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 34–36 (D. Conn. 2010) (finding claims factually frivolous when timing of facts alleged actually negated claim).

Further, the law was not so clearly established in Defendants' favor as to render Plaintiffs' Rule 10b-5 claim legally frivolous with respect to loss causation. A reasonably competent attorney could have concluded that the revelations by Bancorp officers during the class period of previously undisclosed information regarding BankAtlantic's loan portfolios caused, at least in substantial part, the decline in Bancorp's stock price.[20] *See Davis*, 906 F.2d at

---

[20] The Court notes that the pre-filing inquiry Class Counsel undertook with respect to loss causation was significantly more rigorous and sophisticated than the one Defendants now claim would have sufficed. Even prior to filing the Consolidated Amended Complaint, Class Counsel engaged an expert who attempted to disaggregate the non-fraud-related factors impacting Bancorp's share price on the dates in question.

538. The Court found that Plaintiffs ultimately failed to prove loss causation not because the loss was actually caused by a declining Florida real estate market, but due to Plaintiffs' failure to disaggregate the effect on Bancorp's share price of company-specific information that the Jury ultimately found was unrelated to the fraud. (*See* D.E. 695.) The Court has repeatedly rejected—and continues to reject—Defendants' contention that Plaintiffs' claims were frivolous from the start because Bancorp's losses were obviously and solely caused by market effects.

Also with respect to loss causation, Defendants argue the claim that the partial disclosure of the alleged fraud in April 2007 caused Bancorp's stock price to decline was objectively frivolous. Defendants contend that the stock price decline that took place on April 26, 2007—which Plaintiffs alleged was caused by the partial disclosure of the fraud—"was little different than the rate of price decline [of Bancorp stock] on many days that both preceded and followed it." (D.E. 698, p. 20.) The share price decline on that date, according to Defendants, must have been caused by the forces that precipitated the declines on surrounding dates, namely the deteriorating Florida economy, rather than any fraud-related cause. The Court is unpersuaded.

Plaintiffs' allegation of a fraud-related decline on April 26, 2007 was not precluded by a contemporaneous, general decline in the Florida economy or the Florida real estate market, as Defendants contend. When a stock price decline that is allegedly caused by the revelation of a fraud coincides with a market-

35

wide phenomenon that causes similar losses, the likelihood that the loss was caused by the fraud, rather than the market, decreases. *See Lentell*, 396 F.3d at 174 (quotations and citation omitted). Thus, the coincidence of the alleged partial disclosure with a general decline in the Florida economy did not render Plaintiffs' claim unwinnable, though it made their success less likely. The allegation, nonetheless, might have succeeded, had Plaintiffs adequately disaggregated the non-fraud effects on the share price from those caused by the revelation of the fraud. Thus, the allegation of a fraud-related loss on April 26, 2007 was not legally frivolous merely because the loss coincided with a falling market that drove Bancorp's share price down on other dates.

Moreover, the allegation of a partial disclosure on April 26, 2007 was not factually frivolous. As noted above, in drafting this allegation, Class Counsel relied, in part, on Preston's analysis; after conducting her analysis, Preston concluded that the April 26, 2007 price decline was statistically significant and that only a 1 percent chance existed that Bancorp's 5.3 percent share price decline on April 26, 2007 was "not associated with a company-specific event." (D.E. 706 ¶ 4.) Thus, the allegation that the share price decline on April 26, 2007 was the result of a partial disclosure of the fraud was supported by facts that were not patently frivolous.

### e. *Alan Levan's July 25, 2007 Statements*

Defendants briefly argue that "Plaintiffs' claim that Alan Levan's July 25, 2007 statements were false as a matter of law is sanctionable because it ignores

his actual words as well as the massive volume of other, contemporaneous public disclosures by Bancorp and Alan Levan." (D.E. 698, p. 19.)  Defendants incorporate by reference their briefing on this issue submitted in opposition to Plaintiffs' Motion for Partial Summary Judgment and in Defendants' post-trial motions.

The Court, too, incorporates by reference its previous orders concerning this issue.  The Court granted summary judgment in favor of Plaintiffs on this very narrow issue and conditionally denied Defendants' Motion for New Trial on this basis.  (D.E. 411; D.E. 695.)  Non-frivolous evidence supported Plaintiffs' argument regarding the falsity of the statements in question, and a reasonable attorney in Class Counsel's position could have believed that their Motion for Partial Summary Judgment had a reasonable chance of success.  Sanctions are not warranted on this basis.[21]

---

[21]  In their Reply, Defendants raise the additional argument that Plaintiffs' "claims arising out of Alan Levan's four comments during the July 2007 conference call" were sanctionable because Class Counsel should have known that they could not prove damages with respect to these statements.  (D.E. 713, pp. 9–10.)  The Court notes, however, that Plaintiffs' Motion for Partial Summary Judgment, which appears to be the offending document according to Defendants' Motion for Sanctions, dealt only with the falsity of the statements, not with the issue of damages.  The possible failure of the damages claim connected to these statements, thus, did not render frivolous Plaintiffs' Motion for Partial Summary Judgment.

Nonetheless, even were the Court to more broadly construe Defendants' Motion for Sanctions to include an argument that the claims in the Consolidated Amended Complaint and First Amended Consolidated Complaint connected to the July 2007 statements were frivolous, sanctions still would not be warranted.  The Court set forth above the reasons that Plaintiffs' claims were not frivolous as a general matter with respect to loss causation.  The same reasoning applies to Plaintiffs' claims arising out of Alan Levan's July 2007 statements.  That Plaintiffs

37

### f.   *Sanctions Against Class Counsel*

Having addressed whether Class Counsel violated Rule 11(b), the Court now turns to the appropriate sanction to be imposed.  As discussed above, the Reform Act constrains the discretion of the Court in an important regard.  Outside the context of private securities litigation, upon a finding "that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c) (emphasis added).  Pursuant to the mandatory sanctions review provision of the Reform Act, however, if the court finds that a party or attorney violated any requirement of Rule 11(b), "the court *shall* impose sanctions on such party or attorney."  § 78u–4(c)(2).  *Thompson*, 610 F.3d at 636. The Reform Act also establishes a presumption that the appropriate sanction "for [the] substantial failure of any complaint to comply with any requirement of Rule 11(b) ... is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." § 78u–4(c)(3); *Morris*, 448 F.3d at 278 ("A Rule 11(b) violation in a complaint is only severe enough to activate the full attorney fees and expenses presumption if the violation makes the complaint as a whole a 'substantial failure' under Rule 11(b).").

The Court finds that, though Class Counsel violated Rule 11(b) with respect to the inclusion in the Consolidated Amended Complaint and the First

---

did not ultimately prevail on this point does not render their claims factually or legally frivolous.

Amended Consolidated Complaint of some of Loverin's statements, as detailed above, this violation did not amount to a substantial failure of those pleadings to comply with Rule 11(b).  Loverin's assertions, as a whole, constituted only a small fraction of the factual allegations contained in the complaints; Plaintiffs cited Loverin as a source of information in only 5 paragraphs of the 93-page Consolidated Amended Complaint and 5 paragraphs of the 98-page First Amended Consolidated Complaint.  (*See* D.E. 51 ¶¶ 62, 85, 86, 87, 88; D.E. 80 ¶¶ 66, 100, 101, 102, 103.)

Importantly, the undersigned notes that she did not rely upon the offending portions of the First Amended Consolidated Complaint in denying Defendants' Motion to Dismiss.  In the Order on Motion to Dismiss, the Court specifically cited to sixteen paragraphs of the First Amended Consolidated Complaint that included information purportedly provided by confidential witnesses.  (*See* D.E. 94, pp. 4–7.)  Only one of the cited paragraphs included an assertion attributed to Loverin; that paragraph, however, also contained a similar and more detailed assertion by Halprin, the confidential witness who did not recant or dispute the assertions attributed to her.  (D.E. 94, p. 4) (citing ¶ 103 of the First Amended Consolidated Complaint).  Accordingly, the inclusion in the First Amended Consolidated Complaint of assertions attributed to Loverin did not affect the Court's denial of Defendants' Motion to Dismiss and did not transmute the complaint as a whole into a "substantial failure" under Rule 11(b).  *See Morris*, 448 F.3d at 282.

39

Because Class Counsel's Rule 11(b) violation did not result in the substantial failure of the First Amended Consolidated Complaint to comply with Rule 11(b), the Court finds that the Reform Act's presumption in favor of awarding full attorneys' fees and other expenses incurred in the action is not triggered. *See id.* at 278. Thus, while the Court must impose some sanction, the particular sanction to be imposed is that which the Court finds to be appropriate pursuant to Rule 11(c).[22] *Id.* at 284 ("[W]hen the district court has found Rule 11(b) violations but the sanctions proponent fails to qualify for the [Reform] Act's presumed sanctions award, the court should select the sanction it deems appropriate under Rule 11.").

The Court finds that, under the present circumstances, the appropriate sanction to be imposed against Class Counsel as a result of their Rule 11(b) violation is the award to Defendants of the reasonable attorneys' fees and other expenses they incurred in deposing Loverin and one-tenth of the reasonable attorneys' fees and costs incurred in the preparing and filing of the instant

---

[22] The Reform Act does not expressly address what sanctions are appropriate in the instant situation, namely when the court finds a Rule 11(b) violation but the presumptive award of full attorneys' fees does not apply. In *Morris*, however, the Court of Appeals for the Fourth Circuit noted that the Reform Act does "expressly provide a rule for [the] closely related situation" that arises when the sanctions opponent successfully rebuts the presumption regarding the award amount specified by the Reform Act. *Morris*, 448 F.3d at 284. In such situations, the court must then award "the sanctions that the court deems appropriate under Rule 11." *Id.* (citing § 78u–4(c)(3)(C)).

Motion for Sanctions.[23]  As provided below, the Court will separately determine the specific amount of this award and against whom it shall be imposed.

### 3.    *Class Representatives*

In the preamble to their Motion for Sanctions, Defendants move the Court for sanctions against both Class Counsel and the Class Representatives.  (D.E. 698, p. 1.)  However, the substance of the Motion concerns only the conduct of Class Counsel.  In their Reply, however, Defendants maintain that sanctions against the Class Representatives are warranted.  Defendants note that, in pursuing appointment as lead plaintiffs and class certification, Class Counsel argued that the Class Representatives were sophisticated investors who could adequately supervise counsel; accordingly, Defendants contend, the Class Representatives "should be held accountable as such."  (D.E. 713.)

Defendants are correct that, although typically imposed against an attorney, sanctions may be imposed pursuant to Rule 11 against a party that is neither an attorney nor a signer of the pleadings.  *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).  Moreover, the mandatory sanctions review required under the Reform Act provides that the court must make "findings regarding compliance by *each party* and each attorney representing any party with each

---

[23]  Defendants' arguments concerning Class Counsel's improper use of Loverin's testimony constitute approximately one-tenth of the instant Motion. Additionally, in the First Amended Consolidated Complaint, Class Counsel attributed factual assertions to Loverin in five of approximately forty paragraphs that included confidential witness allegations, though other confidential witnesses were cited in some of those paragraphs.

requirement of Rule 11(b)...." § 78u–4(c) (emphasis added). The Court, thus, examines whether sanctions should be imposed against the Class Representatives.

Sanctions against a represented party are warranted when the party knew or should have known that the allegations contained in the complaint were frivolous. *See Worldwide Primates*, 26 F.3d at 1093. Generally, sanctions against a client are appropriate only when the client misrepresents facts in the pleadings. *Byrne*, 261 F.3d at 1118. When a requested sanction is based on the contention that a pleading or motion was legally frivolous, however, the imposition of sanctions against a client is inappropriate. *Id.* (citing *Schrag v. Simpson*, 141 F.3d 1185 (10th Cir. 1998) (noting that "such legal matters as the frivolousness of a claim or the impropriety of a discovery request, which are peculiarly [within] the province of lawyers, would not, without specific findings implicating knowing participation, support Rule 11 sanctions against a party") (citation and quotation omitted)). A client may also be subject to sanctions when it is clear that he is the mastermind behind a frivolous case. *Byrne*, 261 F.3d at 1118 (citing *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991)).

The Court finds that sanctions are not warranted against the Class Representatives. The Class Representatives, as institutional investors, were shareholders of Bancorp stock. Unlike plaintiffs who are more intimately involved in formulating claims, these Plaintiffs did not have personal knowledge

42

of the Defendants' allegedly fraudulent actions that formed the basis for Plaintiffs' claims. Rather, the factual allegations that supported the pleadings—and with which Defendants take issue in the instant Motion—were the result of Class Counsel's investigations. Thus, there is no basis for the Court to find that the Class Representatives actively or knowingly misrepresented facts in the pleadings. Likewise, no support exists in the record to suggest that the Class Representatives knowingly participated in pursuing any legally frivolous claim. Accordingly, the Court finds that the Class Representatives did not violate Rule 11(b) and, thus, the Court will not impose sanctions against the Class Representatives. *See Byrne*, 261 F.3d at 1118.

### 4. *Defendants and Their Counsel*

In their Response to the Motion for Sanctions, Plaintiffs argue that Defense Counsel, in filing the instant Motion, themselves violate Rule 11. Plaintiffs contend that Defense Counsel's arguments are baseless and misrepresent the record. Moreover, Plaintiffs argue that Defense Counsel, either knowingly or recklessly, made misrepresentations to the Court during trial regarding the disclosures made by other banks. (D.E. 701, pp. 19–20.)

Though Plaintiffs correctly state that a motion for sanctions is, itself, subject to the provisions of Rule 11, Plaintiffs' request is not a proper Rule 11 motion. Pursuant to Rule 11(c)(2), "a motion for sanctions must be made separately from any other motion." Additionally, Rule 11(c) sets forth a pre-filing notice requirement, requiring that the motion "be served under Rule 5, but

it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service...." Plaintiffs' request for sanctions against Defense Counsel, which is included at the end of their Response to Defendants' Motion, does not comply with these requirements. On this basis, Plaintiffs' request that the Court impose sanctions against Defense Counsel, premised on Defendants' Motion for Sanctions and on representations made to the Court during trial, is denied. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (reversing district court's imposition of sanctions, based particularly on the failure of moving party to comply with Rule 11's procedural and pre-filing notice requirements).

However, pursuant to the mandatory sanctions review required by the Reform Act, the Court has a duty to make findings regarding the compliance of each party and each attorney with each requirement of Rule 11(b) as to any responsive pleading or dispositive motion. § 78u–4(c)(1). Thus, despite the inadequacy of Plaintiffs' request, the Court has an independent duty to review those filings for Rule 11 violations by Defendants and Defense Counsel.

Upon such a review, the Court finds that the record does not evidence a violation of Rule 11(b) by either Defendants or their counsel. Sanctions against Defendants and Defense Counsel, thus, are not warranted.

## B. *Motion for Oral Argument and Evidentiary Hearing*

Defendants have requested that the Court conduct an evidentiary hearing

and entertain oral argument with respect to the issues raised in their Motion for Sanctions.  (D.E. 699.)

The Reform Act's provision for mandatory sanctions review does not require that the reviewing court conduct an evidentiary hearing.  *See* 78u–4(c). With respect to the procedure to be followed in conducting the sanctions review, the Reform Act provides only that, "[p]rior to making a finding that any party or attorney has violated Rule 11 ... the court shall give such party or attorney notice and an opportunity to respond." § 78u–4(c)(2).  The Court provided adequate notice to the parties of the sanctions review required under the Reform Act in its Order on Motion for Judgment as a Matter of Law and provided an adequate opportunity for the parties to file motions for sanctions.  (D.E. 695, p. 112.)  Moreover, upon Defendants' filing of the instant Motion for Sanctions, Plaintiffs had the opportunity to respond to the allegations contained therein and did so, providing both argument and evidentiary support.  (*See* D.E. 701–710.)

The Court further notes that neither an evidentiary hearing nor oral argument is required under the circumstances of this case.  The parties have fully briefed the arguable bases for sanctions and have provided the Court the sworn declarations and deposition testimony of the individuals with knowledge pertinent to the resolution of the sanctions review.  The live testimony of such individuals would not aid the Court in conducting the required analysis.

For these reasons, the Court finds that neither oral argument nor an

evidentiary hearing is required to resolve Defendants' Motion for Sanctions or the more inclusive sanctions review required under the Reform Act.

### IV. Conclusion

For the reasons stated above, it is

ORDERED AND ADJUDGED that Defendants' Motion for Sanctions (D.E. 698) is GRANTED IN PART: Class Counsel shall pay to Defendants the reasonable attorneys' fees and other expenses incurred in deposing Loverin and one-tenth of the reasonable attorneys' fees and costs incurred in the preparing and filing of the instant Motion for Sanctions. It is further

ORDERED AND ADJUDGED that Defendants shall file a brief, not to exceed five pages in length, no later than August 19, 2011, detailing which individual attorneys among Class Counsel should be held jointly and severally liable for this sanction. Should Class Counsel so choose, they may file a responsive brief, also of no more than five pages, within fourteen days after the date of Defendants' filing. It is further

ORDERED AND ADJUDGED that Defendants shall submit a fee petition for the amount of attorneys' fees Class Counsel is required to pay no later than August 19, 2011. The petition must set forth the information described in and otherwise comply with Local Rule 7.3(a)(3)–(7). Plaintiffs shall file any response thereto no later than fourteen days following Defendants' filing. It is further

ORDERED AND ADJUDGED that Defendants' Request for Oral Argument and Evidentiary Hearing on Motion for Sanctions (D.E. 699) is

DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 2d day of

August, 2011.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of record