**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 07-61542-CIV-UNGARO/BANDSTRA**

IN RE BANKATLANTIC BANCORP,
INC. SECURITIES LITIGATION

**CLASS COUNSEL'S RESPONSE CONCERNING INDIVIDUAL SANCTIONS**

LABATON SUCHAROW LLP
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives
and the Class and Lead Counsel for Lead-
Plaintiff State-Boston Retirement System*

FOWLER WHITE BURNETT P.A.
Ronald D. Shindler
Florida Bar No. 781703
Scott A. Eichhorn
Florida Bar No. 17666
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9222
Facsimile: (305) 789-9201
rshindler@fowler-white.com
seichhorn@fowler-white.com
*Liaison Counsel for Class Representatives and
the Class and for Lead Plaintiff State-Boston
Retirement System*

KESSLER TOPAZ
MELTZER & CHECK LLP
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives
and the Class*

This brief is submitted pursuant to the Court's August 2, 2011 Sanctions Order (the "Order") (DE 734 at 46).  Class Counsel respectfully submits that no attorney should be personally sanctioned.  Each individual complied with Rule 11(b)(3) and conducted a reasonable inquiry with respect to the matters assigned to him or her.  The error the Court found relating to Ms. Loverin reflected the understanding of the investigator who conducted the Loverin interviews and who consistently advised the lawyers that Ms. Loverin was in BankAtlantic's credit department from 1996-2006.  That the Court has concluded that an error occurred does not mean any individual attorney acted sanctionably.  At worst, the process failed.[1]

In addition, the Defendants' Motion for Sanctions (DE 698), which the Court granted in part, sought sanctions only against the plaintiffs' law firms, not against individual attorneys.[2]  Individual lawyers were not put on notice by the motion that they were personally at risk.

Nor does the Private Securities Litigation Reform Act ("PSLRA") require sanctions on individual lawyers.  The PSLRA mandates sanctions for an "attorney" who has "violated any requirement of Rule 11(b)."  15 U.S.C. § 78u-4(c)(2).  "Attorney" necessarily has the same meaning in the PSLRA as it has in Rule 11, because only an "attorney," as that word is used in Rule 11, can "violate ... Rule 11(b)."  It is clear that "attorney" within Rule 11(b) includes law firms because Rule 11(b) states that that only an "attorney" (or party) can violate the Rule, yet Rule 11(c)(1) provides for sanctioning a "law firm ... that violated the rule."  Therefore, "attorney" under Rule 11—and, by incorporation, the PSLRA—necessarily includes law firms.[3]

This was an extremely complex case.  The attorneys responsibly divided up assignments to avoid duplication, as they are expected to do.[4]  Court-appointed Lead Counsel Labaton

---

[1]  This brief is limited to the question of the imposition of sanctions on individual lawyers, pursuant to the Court's direction.  While Class Counsel respectfully disagrees that sanctions are warranted, if sanctions are to be imposed, they should be imposed at the firm level only.

[2]  Defendants "move[d] for sanctions against the class representatives ... and their counsel, Labaton Sucharow LLP and Barroway Topaz Kessler Meltzer & Check, LLP" (DE 698 at 1).

[3]  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 149, 155 (2d Cir. 2009) (affirming PSLRA sanctions against two law firms).  This interpretation is also consistent with the Eleventh Circuit's construction of 28 U.S.C. § 1927, which authorizes sanctioning only an "attorney" (or "other person admitted to conduct cases").  The Circuit ruled that "§ 1927 applies to law firms" in *Smith v. Grand Bank & Trust*, 193 F. App'x 833, 838 (11th Cir. 2006).

[4]  *See, e.g.,* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (4th) § 10.22 (2004) ("Counsel designated by the court also assume a responsibility to the court and an obligation to act fairly, efficiently, and economically"); 3 Conte & Newberg, NEWBERG ON CLASS ACTIONS at 383-384 (4th ed. Supp. 2010) (lead counsel is to "supervise and coordinate" the conduct of the plaintiffs' case; resulting benefits include "elimination of duplication").

Sucharow LLP ("Labaton") took primary responsibility for drafting the Consolidated Amended Complaint ("CAC") and the First Amended Consolidated Complaint ("FACC"), and drafted the allegations relating to Loverin's position.[5]   Lawyers at KTMC neither drafted, added, nor commented on the allegations regarding Loverin's position that were included in the CAC or FACC.  As a result, no lawyers at KTMC should be sanctioned, nor should the law firm itself, as a result of the error the Court found relating to Loverin's position.[6]

Labaton Senior Lead Investigator Amy Greenbaum conducted the Loverin interviews (5/16/11 Greenbaum Decl. ¶¶3, 7-8) (DE 703).  As her Declaration reflects, she honestly understood that Ms. Loverin's "title was Analyst and Underwriter, [and] that she was employed in the credit department which serviced both small business and corporate lending" (id. ¶8).[7] The Court has found this to be in error (Order at 23 ("Loverin did not work in BankAtlantic's credit department for years prior to or during the class period")), but this is what Ms. Greenbaum honestly, if mistakenly, understood and consistently told the lawyers at Labaton drafting the CAC and FACC who relied on her:

- On April 3, 2008, at 6:01 p.m., Ms. Greenbaum emailed Labaton associates Stocker and Hallowell (then Richardson):  "I just had a fantastic call with a former [employee] from BA, Senior Credit Analyst, Donna Loverin" (Exh. A).[8]

- On April 5, 2008, at 10:26 a.m., Ms. Greenbaum emailed Mr. Stocker and Ms. Hallowell "about ½ of the transcript from yesterday's [sic] call with Loverin.  Loverin talks about her knowledge of commercial loans.  Loverin did work mostly on small business loans but she was also involved in commercial lending as well.  It was all one big department at

---

[5]   Of the Labaton lawyers identified in Defendants' brief at 1 n.2 and 2:  (1) the following had no role in drafting or commenting on drafts of either the CAC or FACC:  Mark Arisohn, Mindy Dolgoff, Alan Ellman, Joseph Fonti, Andrei Rado; (2) Jonathan Gardner had no such role in respect of the CAC; and (3) Michael Stocker and Christopher Keller had no such role in respect of the FACC.  Serena Hallowell was a junior associate at the time.  Mark Arisohn and Mindy Dolgoff were not assigned to the case until well after the filing of the CAC and the FACC.  Ronald Shindler did not become local counsel until well after the filing of the CAC and the FACC.  We agree with Defendants that local counsel, Jonathan L. Alpert, should not be subject to sanctions.

[6]   Of the KTMC attorneys identified in Defendants' brief at 1 n.2 and 2, Benjamin Hinerfeld, Matthew Mustokoff and Mark Danek were not assigned to the case until well after the filing of the CAC and the FACC.

[7]   Emphasis is added to quotes throughout this brief unless otherwise indicated.

[8]   Exhibits are contained in the accompanying Appendix of Exhibits in Support of Class Counsel's Response Concerning Individual Sanctions, unless otherwise indicated.

BA and she seemed to be Jeff Mindling['s] right hand woman" (Exh. B).  The lawyers thereafter read the Loverin interview transcript with this background and understanding.

- Lawyers reviewed the Loverin transcript (*see*, *e.g.*, DE 704 at ¶5; DE 710 at ¶3).  The Loverin transcript includes some corroboration for Ms. Greenbaum's understanding of the relationship between small business and the credit department.  Ms. Loverin first states she was "an analyst and also an underwriter" who "worked in the credit department and we serviced both corporate banking and small business" (DE 255 at Exh. C thereto, at 1).  She later states that, after she was transferred to small business, she still was involved in underwriting the larger deals:  "And then of course, when I went over to the small business side we still underwrote the larger deals, anything over a million, even on the small business side we would underwrite for the credit side to be taken in." (*Id.* 14.)

- On April 20, 2008, at 8:30 p.m., Mr. Stocker emailed Ms. Greenbaum the then-current draft of the complaint with the request:  "Amy, I'd like you to take a look at the CW statements we make in the complaint and make sure that we have it right" (Exh. C).  Ms. Hallowell and Labaton Of Counsel Paul Scarlato received this email.  (As drafting was incomplete, Stocker invited Greenbaum to a meeting of the lawyers working on the complaint the next morning (*id.*), which was the day before the CAC was filed (DE 51)).

- Ms. Greenbaum confirmed at 8:37 p.m. on April 20 that she would make sure that the allegations about the CWs in the CAC were correct (Exh. C:  "Will do").

- During preparation of the opposition to defendants' motion to dismiss the CAC, on June 30, 2008, at 2:10 p.m., Ms. Greenbaum emailed to Ms. Hallowell and Mr. Scarlato a chart setting forth the names, titles, duties and dates of employment of the BankAtlantic confidential witnesses (the "CW Chart").  The CW Chart identifies Ms. Loverin as "Analyst & Underwriter in Credit Department" and described her duties from 1996-2006 as:  "Worked in the credit department; servicing both corporate banking and small business" (Exh. D).

- On July 15, 2008, at 11:55 a.m., six days before the opposition brief was filed, Ms. Greenbaum emailed to Ms. Hallowell an updated version of the CW Chart.  The information relating to Ms. Loverin was never changed (Exh. E).

- On December 12, 2008, the date the Court entered its order dismissing the CAC, at 2:16 p.m., Ms. Greenbaum emailed the CW Chart to Mr. Scarlato in advance of a 2:30

3

meeting of Labaton lawyers that he was dialing into (Exh. F).

- IT records from Labaton show that Ms. Greenbaum also printed out 4 copies of the CW Chart at 2:14 p.m., shortly before the 2:30 meeting that was to be attended in person by Greenbaum and 3 Labaton lawyers, including Hallowell and Gardner (Exhs. F and G).

- On December 16, 2008, at 10:41 a.m., Ms. Greenbaum emailed the CW Chart to investigators at KTMC, sending another copy to Messrs. Gardner and Scarlato and Ms. Hallowell.  Again, the information relating to Ms. Loverin never changed (Exh. H).

- On January 9, 2009, at 5:23 p.m., Ms. Hallowell emailed Ms. Greenbaum "to <u>make sure that you think the additional CW allegations are accurate</u>, per your most recent conversations with Halprin."  Gardner and Scarlato were copied (Exh. I).

- On January 11, 2009, the night before the FACC was filed, Ms. Greenbaum emailed Ms. Hallowell with some factual corrections to the FACC, stating:  "<u>I just finished reviewing the complaint.  The CW statements look good</u>.... <u>I really appreciate the descriptions. They are detailed but I think will still protect their identities</u>."  Messrs. Gardner and Scarlato were copied on this email (Exh. J).

As Ms. Greenbaum was a seasoned investigator who had interviewed Ms. Loverin extensively, it was reasonable for the lawyers drafting the pleadings to rely on her.  The Court has found that, with the exception of the description of Loverin's position, the transcripts of the Greenbaum/Loverin interviews substantiate the assertions attributed to Loverin (Order at 22). These lawyers reasonably relied on Greenbaum's understanding of Loverin's role and knowledge, and on her assurance that she would— and did—fact check all CW allegations.[9]

The allegation in the CAC that Loverin was "a former employee with specific and detailed knowledge about the Bank's CRE lending practices and underwriting procedures during the Class Period" (¶62) is true.  It was reasonably corroborated by the fact that Loverin's interviews on the subject extended to 58 pages and by observations she reported from others in a position to know about commercial real estate loans—Roberta Camm of Loan Review and analyst Rita Gore (DE 255 at Exh. C thereto, at 7-8, 12, 14), *inter alia*.  Allegations in a complaint may be based on information and belief—as the allegations of the CAC and FACC

---

[9] It is well settled that a lawyer may justifiably rely on an investigator for purposes of making a reasonable Rule 11 inquiry.  *See*, *e.g.*, *In re Air Disaster at Lockerbie, Scotland*, 144 F.R.D. 613, 616-17 (E.D.N.Y. 1992); *Beckett v. Maine Med. Ctr.,* No. CIV. 98-93-P-C, 1999 WL 1995210, at *2 (D. Me. Jan. 25, 1999).

were—and hearsay information is a permissible basis for pleadings.[10]

The Court has found that the words "and during" in ¶66 of the FACC were erroneous. That information came from Ms. Greenbaum, who understood "[i]t was all one big department at BA" (Exh. B) and so advised the Labaton attorneys (Exhs. A, D-H).  They in turn could see corroboration in the transcripts[11] and in the CW Chart, relied on Greenbaum to review the CW allegations for accuracy (Exhs. C, I-J).  Despite the mandatory language of the PSLRA, not every inadvertent error requires a sanction, and surely not an individual sanction.[12]  In this Circuit, Rule 11 sanctions are appropriate only where "the plaintiff has absolutely no evidence to support its allegations," [13] not where the evidence is "merely weak."[14]

The PSLRA was enacted "to encourage plaintiffs' lawyers to pursue valid claims" and "to curtail the filing of abusive lawsuits" (S. Rep. 104-98, at 4, 13).  Those goals were achieved in this case.  The jury verdict of liability demonstrates a valid basis for Rule 11 purposes.

Justice Stevens observed in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 413 (1990), that the most precious asset of an attorney is his or her professional reputation.  No individual sanctions are warranted or required under the PSLRA.

---

[10] *See, e.g., Highfields Capital Mgmt., LP v. Doe*, No. C 04-00176 MISC MMC (WDB), 2005 U.S. Dist. LEXIS 29680 (N.D. Cal. May 31, 2005) ("There is no qualifier in front of the phrase 'evidentiary support'..... Rule 11 simply does not require relatively strong or substantial evidentiary support"); *Bowers v. Am. Heart Ass'n*, 513 F. Supp. 2d 1364, 1368 (N.D. Ga. 2007) (finding amendment of complaint not futile:  "This Court has found no case (and Defendants have cited none) requiring that a plaintiff submit admissible evidence or reduce otherwise inadmissible hearsay to an admissible form when filing a motion to amend a complaint").

[11] DE 255 at Exh. C thereto, at 1(Loverin states she "worked in the credit department and we serviced both corporate banking and small business")

[12] *See, e.g.*, *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 449, 451 (7th Cir. 1993) (decided under the 1983 mandatory version of Rule 11:  "Although MCS' factual error was admittedly a serious one..., the error was inadvertent and therefore not sanctionable" where it did not result from an inadequate prefiling investigation but merely incorrectly reflected that investigation; "[i]nadvertent factual errors will occurs…. Rule 11 is not directed to isolated factual errors that do not undermine a party's legal theory").  Note defendants' inadvertent error in asserting that Christopher Keller signed the FACC (DE 737 at 2).

[13] *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995).

[14] *Davis v. Carl*, 906 F.2d 533, 536-37 (11th Cir. 1990).

5

Date: August 30, 2011                        Respectfully submitted,

/s/ Mark S. Arisohn
Mark S. Arisohn, admitted *pro hac vice*
Serena Hallowell, admitted *pro hac vice*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Class Counsel for Class Representatives*
*and the Class and Lead Counsel for Lead*
*Plaintiff State-Boston Retirement System*

/s/ Andrew L. Zivitz
Andrew L. Zivitz, admitted *pro hac vice*
Matthew L. Mustokoff, admitted *pro hac vice*
Mark S. Danek, admitted *pro hac vice*
KESSLER TOPAZ
MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Class Counsel for Class Representatives*
*and the Class*

6

FOWLER WHITE BURNETT P.A.
Ronald D. Shindler,
Florida Bar No. 781703
Scott A. Eichhorn
Florida Bar No. 17666
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
rshindler@fowler-white.com
seichhorn@fowler-white.com

*Liaison Counsel for Class Representatives and the Class and for Lead Plaintiff State-Boston Retirement System*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Scott A. Eichhorn
Scott A. Eichhorn

## SERVICE LIST

Adam M. Schachter
Eugene E. Stearns
Gordon M. Mead, Jr.
Stearns Weaver Miller
Weissler Alhadeff & Sitterson, P.A.
150 W. Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305)789-3400
Facsimile: (305) 789-3395
aschachter@stearnsweaver.com
estearns@stearnsweaver.com
gmead@sternsweaver.com